AO 241
(Rev. 01/15)                                                                                                    Page 2

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | **FILED** EASTERN DISTRICT | |
|---|---|---|
| Name (under which you were convicted): RARDEEP SINGH | AUG 08 2022 | Docket or Case No.: C090494/ C095575 |
| Place of Confinement : CTF SOLEDAD STATE PRISON | CLERK, U.S. DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA BY _____ DEPUTY CLERK | Prisoner No.: G-21899 |
| Petitioner (include the name under which you were convicted) PARDEEP SINGH | v. | Respondent (authorized person having custody of petitioner) WARDEN DEPARTMENT OF CORRECTIONS |
| The Attorney General of the State of: CALIFORNIA | | |

PETITION 2:22 - CV 1411        DMC HC

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   SAN JOAQUIN SUPERIOR COURT, STOCKTON CALIFORNIA

   _____

   _____

   (b) Criminal docket or case number (if you know):    S259387(C090494

2. (a) Date of the judgment of conviction (if you know):    3-13-2008

   (b) Date of sentencing:    N/A

3. Length of sentence:    199 years plus 7 life sentences

4. In this case, were you convicted on more than one count or of more than one crime?    ☒ Yes    ☐ No

5. Identify all crimes of which you were convicted and sentenced in this case:

   7-COUNTS ATTEMPT MURDER

   1-COUNT ENHANCEMENT USE OF A FIRE ARM

   6-COUNTS ENHANCEMENTS G.B.I.

   1-COUNT DISCHARGING OF A FIRE ARM

   _____

   _____

6. (a) What was your plea? (Check one)

   ☒ (1)    Not guilty    ☐ (3)    Nolo contendere (no contest)

   ☐ (2)    Guilty    ☐ (4)    Insanity plea

AO 241
(Rev. 01/15)

Page 3

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? N/A

_____

_____

_____

_____

_____

(c) If you went to trial, what kind of trial did you have? (Check one)

☒ Jury ☐ Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes ☒ No

8. Did you appeal from the judgment of conviction?

☒ Yes ☐ No

9. If you did appeal, answer the following:

(a) Name of court: THIRD APPELLATE COURT

(b) Docket or case number (if you know): SAME AS ABOVE

(c) Result: DENIED

(d) Date of result (if you know): N/A

(e) Citation to the case (if you know): N/A

(f) Grounds raised: _____

_____

_____

_____

_____

_____

_____

(g) Did you seek further review by a higher state court? ☒ Yes ☐ No

If yes, answer the following:

(1) Name of court: CALIFORNIA SUPREME COURT

(2) Docket or case number (if you know): SAME AS ABOVE

(3) Result: DENIED

(4) Date of result (if you know): N/A

AO 241
(Rev. 01/15)

(5) Citation to the case (if you know):   N/A

(6) Grounds raised:

(h) Did you file a petition for certiorari in the United States Supreme Court?   ☒ Yes   ☐ No

If yes, answer the following:

(1) Docket or case number (if you know):   SAME AS ABOVE

(2) Result:   DENIED

(3) Date of result (if you know):   N/A

(4) Citation to the case (if you know):   N/A

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?   ☒ Yes   ☐ No

11. If your answer to Question 10 was "Yes," give the following information:

(a)   (1) Name of court:   SAN JOAQUIN COUNTY SUPERIOR COURT

(2) Docket or case number (if you know):   S259387(C090494

(3) Date of filing (if you know):   2019

(4) Nature of the proceeding:   HABEAS CORPUS

(5) Grounds raised:   ACTUAL INNOCENCE

I.A.C. OF TRIAL COUNSEL

SIGNIFICANTLY ENHANCED SENTENCED

DENIED CROSS-SECTION OF PETITIONERS COUNTY

EXCESSIVE RESTITUTION WITHOUT HEARING

INSUFFICIENT EVIDENCE AT TRIAL

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☒ No

(7) Result:   DENIED

(8) Date of result (if you know):   2019

AO 241
(Rev. 01/15)

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court:   THIRD APPELLATE COURT

(2) Docket or case number (if you know):   SAME AS ABOVE

(3) Date of filing (if you know):   2019

(4) Nature of the proceeding:   SAME AS ABOVE

(5) Grounds raised:   SAME AS ABOVE

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☒ No

(7) Result:   DENIED

(8) Date of result (if you know):

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court:   CALIFORNIA SUPREME COURT

(2) Docket or case number (if you know):   SAME AS ABOVE

(3) Date of filing (if you know):   2019

(4) Nature of the proceeding:   PETITION FOR REVIEW

(5) Grounds raised:   SAME AS ABOVE

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☒ Yes    ☐ No

(7) Result:    GRANTED EVIDENTIARY HEARING

(8) Date of result (if you know):    JANUARY 2020

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:    ☒ Yes    ☐ No

(2) Second petition:    ☒ Yes    ☐ No

(3) Third petition:    ☒ Yes    ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

12.   For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

GROUND ONE:    (PLEASE SEE ATTACHED PAGES)

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground One, explain why:

_____

_____

_____

_____

_____

_____

_____

GROUND ONE: PETITIONER CLAIMS ACTUAL INNOCENCE :
MISCARRIAGE OF JUSTICE :
INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL:
INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL:

Supporting facts:

Petitioner was subjected to "THREE" different trial before fin-
ally being convicted for a crime Petitioners has always claimed
his "Innocence". Petitioner further contends that his State App-
ointed Counsel, was not only ineffective prior to the start of
trial, Petitioner also contends that trial counsel openly dis-
played professional negligence prior to and at trial, violating
Petitioners Constitutional Right to a fair jury trial. Counsel
failed to inform Petitioners trial Judge, at the start of trial,
that counsel had on going health issues causing counsel to take
medications for including,. prior to trial, pain medication, which
is ineffective assistance of counsel. Furthermore, just prior to
the start of Petitioners trial, counsel substained from a accid-
ent, a broken arm, bruises on his body, and a lassiration on
counsels face, which was present throughout Petitioners trial and
which, caused Petitioners trial to be delayed for almost (1)month
giving counsel the opportunity to recover a little bit from his
injuries, before continuing on with Petitioners trial. Here, it
can not be said beyond a reasonable doubt that, Counsels accident
along with counsels injuries and health issues, did not effect
counsels performance and his ability, prior to trial, to adequate
prepare, conduct a adequate investigation into Petitioners case,
outside of Petitioners case records from his prior (TWO) trials
Petitioner already had, or, a adequate interview investigation
into alibi and credibility witnesses. Counsels ineffective
assistance can clearly be seen in a e-mail counsel sent to the
Petitioner (TWO)months after Petitioner had already been found
guilty and sentenced to State Prison, concerning some type of
feud between counsel, the Prosecution, and the trial Judge, con-
cerning counsels ability in obtaining defense subpeonas prior to
the start of trial.(See Exhibit A.) Even though counsel already
knew, prior to trial, concerning a major and serious(see attach)

Supporting cases, rules, or other authority:

From day one, Petitioner has always claimed that he is innocent
of the shootings(SCHLUP v. DELO),513 U.S. 298, 115 S,ct.851,130
Led.808, and to continue to deprive Petitioner the fair opport-
unity to prove his innocence, is a miscarriage of justice(HERRERA
v. COLLINS), 506,U.S.390,404,405-113 S.ct.853 Led.2d 203. Petit-
ioner nor his trial counsel, could for see, prior to trial, coun-
sels accident nor, should Petitioner have to suffer because of
counsels ineffective assistance. Counsels inadequate investig-
ation, interviewing and, preparation, prior to trail, simply can

1  developing issue that could clearly effect the outcome of Petitioners trial,
2  counsel chose not to share this vital information with the Petitioner or, with
3  his family, until well after Petitioner had been found guilty and sentenced to
4  to prison. "Subpeona Power", is at the heart of a great defense for trial and,
5  not to have that key componet in your arsonal at trial, "IS" the difference
6  between a defendent being found "Guilty" or not "Guilty", at the end of trial.
7  Counsels situation prior to trial, clearly played a factor in Petitioners jury
8  being denied the opportunity of hearing one of Petitioners key witnesses
9  testimony concerning, He seen the real shooters face and it was not the Petit-
10  ioner.(See Exhibit B.) Here, it clearly can not be said that, Counsels accident
11  and health issues prior to trial, did not affect counsels proformance and his
12  ability, to conduct an adequate invetsigation of petitioners case, outside of
13  Petitioners case files, or, an adequate interview process, of the several
14  potential defense witnesses, who claimed back then before trial, and, still to
15  this very day, were ready and are still ready to, testify on Petitioners behalf
16  that Petitioner is "Innocent" of the alleged crime and, they (The Community)
17  knows who the real shooter is and the  politics be hind it.(See Exhibit C.)
18  Counsels negligence prior to trial for simply failing to just pick up a tele-
19  phone and, interviewing them, to just see if their testimony of the alleged
20  incident, could even help establish his clients honesty, credibility, or evev
21  help establish Petitoners alibi, not just for Petitoners defense and Petitioner
22  jury, Counsel has a professional code of conduct to follow and a loyal duty to
23  Petiitioner to interview those potential defense witness, which was a "Must"
24  and for counsel not to simply interveiw them, is ineffective assistance of
25  trial counsel. At trial, the weight in which, credibility is attached to a
26  defendent, "IS" the difference between a "Innocent" or "Guilty" verdict.
27  Finally, Petitioner has always, since day one, and before Petitioners (1st) and
28  (2nd) trial, and , still to this very day, Petitoners has always claimed that

1   he was "Innocent" of the alleged shootings, and, atleast in this
2   matter thats now before this Honorable Court, Petitioners trial
3   counsel clearly rendered ineffective assistance of counsel prior
4   to the start of Petitioners trial. Counsels failure to simply
5   pick up a phone, and interview the countless potential defense
6   witness, throughout Petitioners Sikh Community, that even came
7   forward prior to trial, that claimed they were ready and willing
8   to testify on petitioners behalf. Such witnesses like the ones
9   that Petitioner submitted in this Writ Of Habeas Corpus, along
10   with several other witnesses that continue to send Petitioner
11   "affidavits" to this very day, claiming petitioner is innocent of
12   the alleged shootings, Just as the Petitioner has always said he
13   was, is ineffective assistance of counsel. Petitioner had a jury
14   trial, therefore, Petitioner need not actually prove his innocene
15   but rather, only create reasonable doubt which, Petitioner was
16   deprived that. Finally, to continue to allow an innocent man as
17   Petitioner is, to continue to sit in prison for a crime he did
18   not commit, is a clear case of miscarriage of justice. Petitioner
19   was subjected to "Three" different trials, before finally being
20   convicted of a crime he did not commit. Here, clearly can not be
21   said beyond a reasonable doubt that, there is not a higher
22   probability that a innocent man has been convicted and, not to
23   atleast grant Petitioners case for an evidentry hearing on Peti-
24   tioners claim of ineffective assistance of counsel, prior to the
25   start of trial, actual innocence claim, along giving this Honor-
26   able Court and Justice, the opportunity to conduct their own
27   interviews of the numerous witnesses that have already and still
28   continue to send Petitioner "Affidavits" to this very day, And,

1   after this Honorable Court and Justice, have the opportunity to

2   to here the testimony from the numerous witnesses that have

3   already provided "Affidavits" for Petitioners Writ of Habeas

4   Corpus, along with several other "Affidavits" Petitioner continue

5   to receive from other members from Petitioners community, in help

6   ing to prove Petitioners "Innocence", and if this Honorable Court

7   and Justice still believes after giving these witnesses a chance.

8   to finally speak after all these years, concerning Petitioners

9   "Innocence" and, who the real shooter was and, the motive that

10  was behind the shootings and if this court still believes that

11  said testimony would not have had an effect on atleast "ONE"

12  Jurors opinion concerning Petitioners "Innocence or Guilt" then

13  so be it. But, if this Honorable Court and Justice does believe

14  Petitioners Constitutional Rights were violated, as Petitioner

15  now Prays for, then Grant Petitioners request for an evidentry

16  Hearing, appointment of counsel, and any other appropriate relief

17  that this Honorable Court and Justice, feels appropriate for this

18  matter thats now before you.   Thank You.

19

20  ------------------------------------------------------------------

21                        (SUPPORTING CASE LAW)

22                              (SEE)

23                      (ATTACHED PAGE 1,2,3,)

24

25

26

27

28

(4)

1  not be overlooked or, claimed a harmless error. It is clearly

2  present, atleast in Petitioners case, Counsels accident in which,

3  left counsel, with injuries, that were clearly visible throughout

4  Petitioners trial, clearly play a roll in counsels performance,

5  prior to the start of Petitioners trial. A miscarriage of justice

6  is reversible probable, that a result more favorable to the appe-

7  aling party would have been reached, absent the error of trial

8  counsel(PEOPLE v. CALLAHAN),74Cal.App.4th356,363,87Cal.Rptr.2d838

9  843(1999) Citing (PEOPLE v. WATSON),46 CAL.2d818,836,299 P.2d 243

10  254(1956) "It can not be said that",had Petitioners jurors been

11  given the opportunity to hear testimony, not just from the numer-

12  ous witnesses that have submitted "Affidavits", but also the test

13  imony of Petitioners "Eye Witness", that clearly said Petitioner

14  was the shooter, would not have change atleast "One" Jurors

15  opinion concerning Petitioners "Innocence", as in Petitioners two

16  prior trials. Petitioners I.A.C. claim would be moot had counsel

17  interviewed those numerous potential defense witnesses, then,

18  claimed counsel chose not to use them, stating they may have hurt

19  Petitioners case or counsels trial strategy. Thats not what coun-

20  sel did, counsel neglected his duty to, just pick up a phone and

21  simply interview them or investigate the their credibility. Thats

22  ineffective assistance of trial counsel. Finally, Petitioner

23  claims that his Appellate Attorney rendered I.A.C. by failing to

24  include in Petitioners Direct Appeal, these grounds for relief

25  petitioner is bringing to this Honorable Court now and, several

26  other possible post conviction grounds for relief, that Petition-

27  ers Appellate Attorney failed to submit, that only the Assistance

28  of a Professional and skilled Appointed Counsel can bring forword

1  Petitioner has demonstrated in his Habeas Corpus Petition that
2  his claim(s) of I.A.C. of trial and appellate counsel were sub-
3  stantial material claims and Petitioner was clearly prejusted.
4  trial and appellate counsel were ineffective under(Strickland v.
5  Washington),466U.S.i.e.,Substantial material prejudicial claims:
6  In short, while  2254(i) precludes Petitioner from relying on the
7  ineffective of his postconviction(habeas corpus) attorney as a
8  "ground for relief," it does not stop Petitioner from using it to
9  establish "cause."(Holland v.Florida),(2010)560U.S.631,130S.ct.
10 2549,2563,177L.ed.2d130. Not only did Petitioners appellate coun-
11 sel abandon several vital postconviction grounds for relief, that
12 clearly should have been raised in Petitioners direct appeal,
13
14      now forcing Petitioner to file pro se habeas corpus to
15 getreief and/or exhaust the claims so the claims would not be
16 abandoned, waived or forfeited. I.A.C. appellate counsel claim by
17 their nature can only be brought on habeas corpus collateral
18 review, since they do not manifest themselves until the state app
19 ellate process is complete. It is not the gravity of the attorney
20 error that matters, but that it constitutes a violation of Petit-
21 ioners right to effective assistance of appellate counsel,so that
22 the error must be seen as an external factor. Under (Evitts v.
23 Lucey),(1985)469U.S.387,396,105S.ct.830.836,83L.ed2d821,held that
24 this right encompasses a right to effective assistance of counsel
25 for all criminal defendants in (501U.S.756) their first appeal as
26 of right.Therefore, Petitioner now submits his claims, actual
27 Innocence, miscarriage of justice, I.A.C. of trial counsel, and,
28 I.A.c. of appellate counsel, and prays for this Honorable Court

1  to grant Petitioner an "ORDER to show CAUSE", an Evidentry Hear-

2  ing on, Petitioners claim of I.A.C. on trial counsel, for failing

3  to conduct interviews of several potential defense witnesses, and

4  in which, Petitioner has submitted several "Affidavits" in his

5  habeas corpus, that clearly could have played a huge roll in a

6  not guilty verdict or, a hungjury (9-not guilty, 3-guilty,)as was

7  in Petitioners last trial, Appoint Petitioner Counsel, and, any

8  other appropriate relief that this Honorable Court deems best for

9  Petitioner.

18  (DATE: _08-04-2022_

21  SINCERELY, PARDEEP SINGH

22  x _Pardeep Singh_

23  (PETITIONER IN-PRO-PER)



## John Schick

From:         Robert Martinelli [Robert.Martinelli@sjcda.org]
Sent:         Monday, February 25, 2008 9:05 AM
To:           John C. Schick
Subject:      RE: Amritpal Sub

John,

I understand your frustration, but I am not responsible for it.   EC 1238 does not allow you to bring that type of hearsay into evidence. I have a job to do, just like you. Insisting that the rules are followed is a two street, fairness and a fair opportunity to cross examine is too.

With regard to the Judge failing to issue the warrant, I never said he did. As a courtesy to you, I forwarded a message from the clerk in D24 that said they are trying to issue the warrants for Amritpal Parents, but they need descriptions of them.


Robert Martinelli
Deputy District Attorney
(209) 953-7595

>>> "John C. Schick" <jcschick@earthlink.net> 02/24/08 3:05 PM >>>
Robert,
This sounds like a catch 22 and yet another insurmountable hurdle that we
are expected to overcome while trying to do this case in court. I don't
have the foggiest idea what this person looks like. I don't think anybody
does. I have never heard a judge fail to issue a bench warrant because there
is no description. I admit to a large amount of frustration over this
process. I don't mean to vent at you since this requirement is not yours.
But I am sure you can see where I am coming from, especially since I did not
have any role in the prior subpena process. I think John Casenave did a
good job, but there seem to be lots of bits and pieces standing out there.

I propose an alternative plan. We keep working on the warrant. But I ask
that we be allowed to call JJ Reyes and ask him if he received a description
from a witness(the Kid) that is in accord with Amrit Pal's words to him.The
entire nature of the description would be read to the jury. As I read
section 1238 of the evidence code, which you used to your advantage, this
would allow us to proceed in that manner. We can then get the information
before the jury that a person at the scene gave a description that is
completely at odds with what these two defendants look like. We can then
argue this fact to the jury, from your vantage point and ours.

John Schick

-----Original Message-----
From: Robert Martinelli [mailto:Robert.Martinelli@sjcda.org]
Sent: Sunday, February 24, 2008 11:36 AM
To: jcschick@earthlink.net
Subject: RE: Amritpal Sub


John,
D24 Clerk called me on Friday afternoon around 415p. I did not get message
until today.The Courts are trying to issue the warrants for Amritpal
Parents, but they need descriptions of them. Talk to court clerk on Monday.

Robert Martinelli



1  son to testify to matters involving the community.

2  What is known is that the preliminary hearing was continued from time to time. The

3
4  direct examination of Amrit Pal Singh took place on February 22, 2007. During the

5  examination, the answers showed a young man who was bright and able to articulate what

6  he had seen. It should be noted from the transcript of that hearing, that Amrit Pal Singh was

7  under the control of the prosecutor's office. The transcript notes on page 158 that when Mr.

8  Casenave announced that he was calling Amrit Pal, the court asked if anyone was objecting.

9  Significantly, no one, including the prosecutor did. Then the very next statement in the

10
11  transcript is that of Mr. Martinelli, the prosecutor. He indicates that, "He's outside. I'm

12  prepared to get him." There follows a dialogue in which the prosecutor asks that the

13  defense investigator NOT be allowed to be in court. The court denied this request. The aunt

14  of the young man was permitted to be in court while he testified. It should also be noted that

15  at the top of his testimony, John Casenave indicated that a primary reason for the testimony

16  was to preserve it for future use.

17  The court then gave him a rundown on why he was in court and what he was to do.

18
19  The young man never indicated that he had any trouble understanding the words of the

20  court; he freely took the oath to tell the truth and began to testify. During his direct

21  examination, he recalled being at the tournament during the day of May 14, 2006. He also

22  recalled going to the Sansar restaurant and having dinner. After the dinner, he noted that

23  several persons were outside. He then gave an account of what he had seen when the

24  shooting took place. His description of the shooter was consistent with what he had said

25
26  when he was interviewed at the time of the shooting. Most significantly, his description did

27  NOT in any way match that of the two defendants who have been tried and convicted in this

28  case. If this court had taken but a mere five to ten minutes more of its time to complete the

3

examination, the testimony would have been preserved and could have been used at a later time.

On May 23, 2007, when it became apparent that the young man was not ever going to show up, the prosecutor asked the court to strike his testimony. Over objection by the defense counsel, this was done. (Exhibit C, transcript of ruling on May 23, 2007) Defense counsel noted at the time of objection that the prosecutor had the opportunity to speak to the young man before he came to court that day and that Detective Reyes had done a very detailed interview at the time of the incident, an interview that was done without anyone from the defense team present.

Following a holding order, the matter was sent out for trial in August of 2007, before the Hon. Charlotte Orcutt. Following a trial that lasted over three weeks, the jury was unable to return a verdict and a mistrial was declared. Conversations with jurors following the trial were very revealing. The count had been 9 votes for not guilty and only 3 votes for guilty. As the declaration of Jay Childs (Exhibit K) indicates, the jury indicated that they did not believe a thing John Gill testified to. In fact they were afraid of him and the henchman who always accompanied him and sat in court during the trial. At one time, this fear was made known in a conversation between the court and the jury. Apparently these henchman would be seen using cell phones at all breaks to communicate with others as to what was happening and who said what during the trial.

During the trial, there was testimony taken from Detective JJ Reyes out of the presence of the jury regarding the statement of Amrit Pal Singh. This testimony is reflected in a transcript, which is attached and labeled as Exhibit D

The matter was then set to go to trial in November of 2007. At that time it was assigned to the Honorable Bernard Garber. During *in limine* proceedings, new information

4

1    DUE PROCESSS BY NOT ALLOWING THE DEFENSE TO

2    INTRODUCE EVIDENCE OF A SHOOTING IN WOODLAND ON

3    NOVEMBER 4, 2007.

4

5    III.    THE PROSECUTOR COMMITTED PROSESCUTORIAL

6    MISCONDUCT IN VIOLATION OF BOTH THE STATE AND

7    FEDERAL CONSTITUTIN AL GUARANTEES OF DUE PROCESS BY

8    ARGUING FACTS HE KNEW NOT TO BE TRUE AND BY IMPEDING

9    THE SEARCH FOR TRUTH, WHICH IS THE DUTYOF A

10    GOVERNMENT PROSECUTOR.

11

12    **AMRIT PAL SINGH AS A WITNESS.** The testimony of Amrit Pal Singh was

13    absolutely crucial to the defense of this case. Anyone who looks at the basic facts can see

14    that the young man was a very astute observer of details on the night of the shooting. He

15    could tell details that no one else saw. He was also, significantly, the first witness from

16    whom the police took a formal recorded statement. The description of the person he saw

17    shooting could not in any way be either Kulwant Gadri or Pardeep Singh.

18

19    On the contrary, the description he gave of a young man with a chinstrap moustache

20    matches exactly the persona of Aman Dhami, who was seen in an interview on Channel 13

21    and whose likeness has been photographed from that video and is attached as Exhibit N.

22    During the initial phase of the criminal investigation in this matter, Amrit Pal Singh was the

23    very first witness spoken to. No one in law enforcement expressed any concern about his

24    ability to recollect and tell what he saw. The interview was not terminated for failure to

25    communicate or the like.

26

27    When the second preliminary hearing was held in February of 2007, the defense

28    called him as a witness. He came to court, but as noted above, was under the control of the

11



भारत गणराज्य REPUBLIC OF INDIA

| प्रकार /Type | राष्ट्रीय कोड /Country Code | पासपोर्ट नं. /Passport No. |
|---|---|---|
| | IND | E 3403124 |

उपनाम /Surname
SINGH

दिये गये नाम /Given Names
PARDEEP

| राष्ट्रीयता /Nationality | लिंग /Sex | जन्मतिथि /Date of Birth |
|---|---|---|
| INDIAN | MALE | 08 JUNE 1970 |

जन्म स्थान /Place of Birth
BUDHI AND (HOSHIARPUR)

जारी करने का स्थान /Place of Issue
CGI SAN FRANCISCO

| जारी करने की तिथि /Date of Issue | समाप्ति की तिथि /Date of Expiry |
|---|---|
| JAN 14 2004 | 13 JULY 2004 |

*(handwritten, left margin)* Note: Long Beard Petitioner had during trial

*(handwritten signature)* Pardeep Singh



Balvinder Singh Johal
118 Timberland Dr.
Cordele, GA 31015

To whom it may concern:

This letter is to support Pardeep Singh that has been convicted of a crime that he did not commit. I Balvinder Singh Johal would like to testify that Pardeep Singh has been falsely convicted of this crime.

I was in California a few times after the incident; while I was there I met Raghbir Singh Shergill, which is the Uncle of one of the Key Eye Witness of the incident that occurred in May 2006. The Key Eye Witness is the nephew of Raghbir Singh Shergill; the parents of the eye witness would not let him testify for the fear of his life. Raghbir Singh Shergill stated to me that he knows Pardeep Singh is innocent of the shooting that occurred that night. Raghbir told me that what happen to Pardeep was not right, but he does not want to get into trouble for giving testimony during the trial.  Raghbir told me that John Gill gave false testimony because he did not want to look bad, or hurt his reputation in Northern Punjabi and Sikh community because he is well known. John Gill knows that Pardeep Singh is innocent of the crime that was committed, he just wanted to keep his reputation clean, and he wanted to show off his power, but the talk of the community is that John Gill is aware of the real shooters. I also want to mention that Pardeep Singh was supporting the same team that John Gill was supporting so there was no problem between them because of the tournament but I want to make it clear that half of the committee that organized the tournament supported John Gill and other half was against John Gill, the people that supported John Gill they invited him as chief guest and when he showed up on stage the other half of the committee got off the stage because John Gill  started to show off his power and took over the stage and that is what lead to the  shooting that took place later that day and the people that were involved in the shooting were deported to India. The actual gunman of this case is SuKhwinder Singh (Bobby) and Surinber Singh (Happy). Surinder Singh had fought earlier that day at the Indian Kabaddi Touroment which futher led to his best friend, Sukhwinder Singh supporting him into the shooting.

Please revisit the case and provide justice to the accused, Pardeep Singh that has been incarcerated for 13 years now. He is innocent of the crime.

Thank you,

*Balvinder Singh Johal*

Balvinder Singh Johal

To Whom It May Concern:

Please accept this letter as a formal request for some support and aid in regards for
the  incarcerated and falsely accused, Pardeep Singh. I, Kuldip Singh Aujla, would like to testify
that  Pardeep Singh has falsely been convicted.

 I came to California in the Summer of 2014 for a kabaddi tournament because I am an athlete
and well known Kabaddi Player and to visit my brother-in-law's family, Pardeep Singh. When I
came to visit, I met up with Satwinder Singh Gill (Nickname John Gill), one of the key eye
witnesses in the incident that occurred in May of 2006. Gill  confirmed in person that he agrees
and knows that Pardeep Singh is innocent and was not behind  the shooting that occurred that
night. Satwinder Singh Gill (nickname John Gill) stated to me that he knows what happened to
Pardeep isn't justifiable, but he does not want to be punished for giving a false testimony during
the trials. He claimed that he can't help by giving a testimony because that would put him in
deep  trouble with the law.

John Gill provided these false testimonies because he did not want his ego, pride, and
reputation  to be hurt in front of the Northern Punjabi and Sikh community because he is a well-
known  figure. Gill knows that Pardeep Singh did not commit any crimes, but gave false
testimonies to  keep his reputation clean because he wanted to show off how influential and
powerful he is. He  repeatedly plays the card, that he is not aware of the real shooters, but
everyone in the  community knows that he is aware of the real shooters.

 I would like further support to revisit this case and provide justice to the falsely accused who
has  been incarcerated for 13 years.

Thank you,

Kuldip Singh  780 978 1084

8650 117 Ave  Grande Prairie , Alberta Canada T8X0H3

**I MAKE THIS DECLARATION** conscientiously believing it to
be true and knowing that it is of the same force and effect
as if made under oath and by virtue of the *Canada
Evidence Act.*

**DECLARED BEFORE ME at  )**
**Grande Prairie, Alberta,   )**
this ∠ day of  MAY  )
20 19 .                         )
                                     )

**Notary Public in and for the**
**Province of Alberta.**

AMANDA J. REIMER, Notary Public
My Appointment Expires December 31, 20 2 0
#180, 10130 – 99 Avenue
Grande Prairie, AB  T8V 2V4
(780) 505–1187
www.grandeprairienotarypublic.ca

To Whom It May Concern:

Please accept this letter as a formal request for some support and aid in regards for

my incarcerated and falsely accused brother-in-law, Pardeep Singh. I, Mandeep Kaur, would

like to testify that my brother-in-law has falsely been convicted. I am aware that my brother-in-

law is innocent because he has repeatedly explained he is not the shooter behind this incident

that took over 13 years ago. I would like further support to revisit this case and provide justice to

the falsely accused who has been incarcerated for almost 13 years this upcoming May.


Thank you,

Mandeep Kaur Bains  780-512-1014

8650 117 Grande Prairie Alberta Canada T8X0H3


**I MAKE THIS DECLARATION** conscientiously believing it to
be true and knowing that it is of the same force and effect
as if made under oath and by virtue of the *Canada
Evidence Act.*

**DECLARED BEFORE ME at )**
**Grande Prairie, Alberta,  )**
this _2_ day of _MAY_  )
20_19_.                        )
                                  )

Notary Public in and for the
Province of Alberta.

AMANDA J. REIMER, Notary Public
My Appointment Expires December 31, 20_20_
#180, 10130 - 99 Avenue
Grande Prairie, AB  T8V 2V4
(780) 505-1187
www.grandeprairienotarypublic.ca

To Whom It May Concern:

Please accept this letter as a formal request for some support and aid in regards for my incarcerated and falsely accused husband, Pardeep Singh. My husband has falsely been convicted of seven counts of attempted premeditated murder and one count of shooting from a vehicle, and sustained enhancements for firearm use and great bodily injury. Additionally, my husband was sentenced an aggregated term of 170 years to life plus life with the possibility of parole which is a clear and concise violation of the Eighth Amendment in the United States of America Constitution.

I am writing this letter to provide a testimony that my husband was falsely accused of these charges. The actual gunmen of this case is Sukhwinder Singh (Bobby) because Surinder Singh (Happy) had fought earlier that day at the Punjabi Kabaddi tournament. This further led to his long time best friend from his childhood, Bobby, shooting later on in the day because Happy was heavily beaten up for arguing and fighting at the Punjabi Kabaddi Tournament.

The entire Northern California Sikh and Punjabi community is aware that these individuals are behind the shootings that occurred in May 2006 and not my husband, Pardeep Singh. We, my family and I, would like further support to revisit this case and provide justice to the falsely accused who has been incarcerated for almost 13 years this upcoming May.

Thank you,

*Kaur*

Ramandeep Kaur
2155 Pisa Circle, Stockton, CA 95206
209-817-7399

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**          GOVERNMENT CODE § 8202

☑ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], not Notary)

1 _____

2 _____

3 _____

4 _____

5 _____

6 _____

    *Signature of Document Signer No. 1*      *Signature of Document Signer No. 2 (if any)*

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California

County of _San Joaquin_

BRANDON HALLIDAY
Notary Public – California
San Joaquin County
Commission # 2226164
My Comm. Expires Dec 22, 2021

*Place Notary Seal and/or Stamp Above*

Subscribed and sworn to (or affirmed) before me

on this __7th__ day of __May__, 20_19_,
by   *Date*     *Month*     *Year*

(1) ____RAMANDEEP KAUR____

(and 2) _____ ),
        *Name(s) of Signer(s)*

proved to me on the basis of satisfactory evidence to
be the person(s) who appeared before me.

Signature _____
       *Signature of Notary Public*

---

**——— OPTIONAL ———**

*Completing this information can deter alteration of the document or
fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: ____AFFIDAVIT____

Document Date: ____MAY 7 2019____          Number of Pages: _2 w/ JURAT_

Signer(s) Other Than Named Above: ____NA____

---

©2017 National Notary Association

On Behalf of Pardeep Singh:

Please accept this letter as a formal request for some support and aid in regards for my incarcerated and falsely accused son-in-law, Pardeep Singh.

In the summer of 2014, my son-in-law, Kuldip Singh, and I went to visit Satwinder Gill, also known as John Gill. John Gill agreed to meet with us one-on-one. During this in person meeting, John Gill established the truth that he is aware that Pardeep Singh is innocent and was falsely framed into these accusations and charges. Gill stated that he would want to take back his false testimony that he had given within the trials, but fears if he were to tell the court he lied during the trials he will be punished. Gill is also aware of who the real shooters are, but constantly denies that he knows who did the shooting.

John Gill provided these false testimonies because he is well-known in the Northern California Sikh and Punjabi community. He has a high ego and reputation which he wanted to keep intact and show off to the community that he has the ability to influence and persuade the entire case by providing false testimonies.

I would like further support to revisit this case and provide justice to the falsely accused who has been incarcerated for 13 years.

Thank you,

Swaran Singh Khaira
2155 Pisa Circle, Stockton, CA 95206
209-624-3042

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**          GOVERNMENT CODE § 8202

☑ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], not Notary)

1. _____

2. _____

3. _____

4. _____

5. _____

6. _____

_Signature of Document Signer No. 1_          _Signature of Document Signer No. 2 (if any)_

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _San Joaquin_

BRANDON HALLIDAY
Notary Public – California
San Joaquin County
Commission # 2228164
My Comm. Expires Dec 22, 2021

_Place Notary Seal and/or Stamp Above_

Subscribed and sworn to (or affirmed) before me

on this _7th_ day of _May_ , 20 _19_ ,
by     Date          Month          Year

(1) _Summan Singh Khaira_

(and 2) _____ ),
_Name(s) of Signer(s)_

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _____
_Signature of Notary Public_

──────── **OPTIONAL** ────────

_Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document._

**Description of Attached Document**

Title or Type of Document: _AFFIDAVIT_

Document Date: _May 7, 2019_ Number of Pages: _2 w/ Jurat_

Signer(s) Other Than Named Above: _NA_

©2017 National Notary Association

# Affidavit

On Behalf of Pardeep Singh:

Please accept this letter as a formal request for some support and aid in regards for my incarcerated and falsely accused son-in-law, Pardeep Singh.

When I was provided the information regarding what happened in May of 2006, I was in disbelief and utter amount of shock, and still am 13 years later. My son-in-law, Pardeep Singh, is not able to commit such charges based off how he is. Pardeep is a softhearted, genuine, caring, and generous individual as a husband, father, brother, son, and son-in-law and to the rest of his entire family. His personality and characteristics do not match the charges and accusations he has been falsely convicted of.

I would like further support to revisit this case and provide justice to the falsely accused who has been incarcerated for 13 years.

Thank you,

Narinder Kaur

Narinder Kaur
2155 Pisa Circle, Stockton, CA 95206
209-624-3042

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**          GOVERNMENT CODE § 8202

☑ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], not Notary)

1 _____
2 _____
3 _____
4 _____
5 _____
6 _____

    *Signature of Document Signer No. 1*          *Signature of Document Signer No. 2 (if any)*

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of *San Jeaquin*

Subscribed and sworn to (or affirmed) before me

on this _7th_ day of _MAY_, 20_19_,
    *Date*      *Month*    *Year*

by

(1) _NARINDER KAUR_

(and (2) _____ ),
                      *Name(s) of Signer(s)*

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

```
BRANDON HALLIDAY
Notary Public – California
San Joaquin County
Commission # 2226164
My Comm. Expires Dec 22, 2021
```

Signature _____
                *Signature of Notary Public*

*Place Notary Seal and/or Stamp Above*

──────────────── OPTIONAL ────────────────

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _AFFIDAVIT_

Document Date: _MAY 7, 2019_          Number of Pages: _2 w/ JURAT_

Signer(s) Other Than Named Above: _NA_

©2017 National Notary Association

To Whom it May Concern,

Please accept this letter as a formal request for some support and aid in regards for the incarcerated and falsely accused Pardeep Singh. I, Amarjit Singh testify that Pardeep Singh is innocent, falsely convicted. Pardeep Singh and I worked together in the 90s and he is a nice, friendly guy, always willing to help. He always participated in our temple in Stockton, CA. I am willing to testify that Pardeep Singh was not the convicted shooter. The entire Sikh community in Northern California is well aware that Pardeep Singh is innocent.

Thank You,

Amarjit Singh
8534 Glacier Point Dr.
Stockton, CA 95212
(209) 954-2881    *Amarjit Singl*

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of __San Joaquin__
Subscribed and sworn to (or affirmed) before me on this __16__ day
of __May__, 20__19__, by __AMARJI Singh__

_____, proved to me on the basis
of satisfactory evidence to be the person(s) who appeared before me.

Signature _____ (Seal)



KAREN A. SCHEFLO
Notary Public – California
San Joaquin County
Commission # 2206578
My Comm. Expires Aug 16, 2021

May 5, 2019

To: Honorable judge

**RE: Pardeep Singh**

Please accept this letter as my humble request to Honorable Judge in the regards of falsely accused Pardeep Singh. From the very beginning I knew my nephew, Pardeep Singh is innocent and I still strongly believe he is innocent. He was wrongly accused and convicted.

Pardeep has always supported me in adverse times. He stood by us in times of need. He had always offered his help and support to people of Sikh Community. He was known to be someone who spoke calmly and listened. He always supported his community in a positive way. The crime, for which he is accused and convicted of is totally out of his character. He would never harm anyone in any way. He spoke to his elderly with much respect.

Sikh Community is very well aware that he is been wrongly convicted. He is like a son to me. I would like you to please consider my humble request for his parole hearing.

Thank you,

Manjit Kaur Hothi
1943 Norfolk Drive
Lodi, CA 95242
(209) 663-2093

SEE ATTACHED NOTARY FORM

# JURAT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of San Joaquin

Subscribed and sworn to (or affirmed) before me on this 6th day of May,

20 19 by Manjit Kaur Hothi,

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _____ (Seal)

G. K. WALIA
Notary Public - California
San Joaquin County
Commission # 2269876
My Comm. Expires Jan 2, 2023

## OPTIONAL INFORMATION

DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

_____
Additional information

## INSTRUCTIONS

The wording of all Jurats completed in California after January 1, 2015 must be in the form as set forth within this Jurat. There are no exceptions. If a Jurat to be completed does not follow this form, the notary must correct the verbiage by using a jurat stamp containing the correct wording or attaching a separate jurat form such as this one with does contain the proper wording. In addition, the notary must require an oath or affirmation from the document signer regarding the truthfulness of the contents of the document. The document must be signed AFTER the oath or affirmation. If the document was previously signed, it must be re-signed in front of the notary public during the jurat process.

- State and county information must be the state and county where the document signer(s) personally appeared before the notary public.
- Date of notarization must be the date the signer(s) personally appeared which must also be the same date the jurat process is completed.
- Print the name(s) of the document signer(s) who personally appear at the time of notarization.
- Signature of the notary public must match the signature on file with the office of the county clerk.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different jurat form.
  - ❖ Additional information is not required but could help to ensure this jurat is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
- Securely attach this document to the signed document with a staple.

May 5, 2019


To: Honorable Judge

**RE: Pardeep Singh**

Please accept this letter as my humble request to Honorable Judge in the regards of falsely accused Pardeep Singh. From the very beginning I knew my cousin brother, Pardeep Singh is innocent and I still strongly believe he is innocent. He was wrongly accused and convicted.

Growing up, I have seen him as a responsible family man who took care of everyone around him. He always supported his community in a positive way. The crime, for which he is accused and convicted of is totally out of his character. He would never harm anyone in any way. He is a very soft spoken person who would not even raise his voice in front of his elders.

Everyone in our Sikh Community know that he was wrongly convicted. It becomes emotionally very difficult sometimes knowing that he is innocent and is convicted of this crime he didn't commit, and can't come home and be part of our lives.

I would like you to please consider my humble request for his parole hearing.

Thank you kindly,

*Kiranjit C Hothi*

SEE ATTACHED NOTARY FORM

Kiranjit Kaur Hothi
1943 Norfolk Drive
Lodi, CA 95242
(209) 747-9154

# JURAT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of San Joaquin

Subscribed and sworn to (or affirmed) before me on this 6th day of May,

20 19 by Kiranjit Kaur Hothi,

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____
Signature                    (Seal)

**G. K. WALIA**
Notary Public - California
San Joaquin County
Commission # 2269876
My Comm. Expires Jan 2, 2023

---

## OPTIONAL INFORMATION

DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

_____
Additional information

## INSTRUCTIONS

*The wording of all Jurats completed in California after January 1, 2015 must be in the form as set forth within this Jurat. There are no exceptions. If a Jurat to be completed does not follow this form, the notary must correct the verbiage by using a jurat stamp containing the correct wording or attaching a separate jurat form such as this one with does contain the proper wording. In addition, the notary must require an oath or affirmation from the document signer regarding the truthfulness of the contents of the document. The document must be signed AFTER the oath or affirmation. If the document was previously signed, it must be re-signed in front of the notary public during the jurat process.*

- State and county information must be the state and county where the document signer(s) personally appeared before the notary public.
- Date of notarization must be the date the signer(s) personally appeared which must also be the same date the jurat process is completed.
- Print the name(s) of the document signer(s) who personally appear at the time of notarization.
- Signature of the notary public must match the signature on file with the office of the county clerk.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different jurat form.
  - ❖ Additional information is not required but could help to ensure this jurat is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
- Securely attach this document to the signed document with a staple.

2015 Version www.NotaryClasses.com 800-873-9865

To Whom It May Concern:

Please accept this affidavit as a formal request formal request for some support and aid in regards for the incarcerated and falsely accused, Pardeep Singh. I, Bhupinder Singh, would like to testify that Pardeep Singh has falsely been convicted. I am willing to provide a testimony that Pardeep Singh was not the shooter. The entire Northern California Sikh and Punjabi community is well aware that Pardeep Singh is innocent.

Thank you,
Bhupinder Singh
1821 Gordon Verner Circle
Stockton, California 95206
(209) 762-6460

5/08/19

PLEASE
SEE ATTACHED
ACKNOWLEDGEMENT/JURAT

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**          **CIVIL CODE § 1189**

████████████████████████████████████████████████████████████████████

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of California            )

County of San Joaquin          )

On __5-8-19__ before me, Kevin Byrd Notary Public, personally appeared

_____ *Bhupinder Singh* _____

_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**KEVIN BYRD**
**COMM. #2140018**
**Notary Public – California**
**San Joaquin County**
**My Comm. Expires Feb. 8, 2020**

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

*Signature of Notary Public*

            *Place Notary Seal Above*

————————————————— *OPTIONAL* —————————————————

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: __Letter__ _____ Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____          Signer's Name: _____
Corporate Officer — Title(s): _____          Corporate Officer — Title(s): _____
Partner — ☐ Limited  ☐ General          Partner — ☐ Limited  ☐ General
Individual    ☐ Attorney in Fact          Individual    ☐ Attorney in Fact
☐ Trustee    ☐ Guardian or Conservator          ☐ Trustee    ☐ Guardian or Conservator
☐ Other:_____          ☐ Other: _____
☐                                          ☐
Signer Is Representing:_____          Signer Is Representing: _____
☐                                          ☐

████████████████████████████████████████████████████████████████████

To Whom It May Concern:

Please accept this affidavit as a formal request formal request for some support and aid in regards for the incarcerated and falsely accused, Pardeep Singh. I, Mandip Kaur, would like to testify that Pardeep Singh has falsely been convicted. I am willing to provide a testimony that Pardeep Singh was not the shooter. The entire Northern California Sikh and Punjabi community is well aware that Pardeep Singh is innocent.

Thank you,
Mandip Kaur
1821 Gordon Verner Circle
Stockton, California 95206
(209) 610-0853

5/8/19

PLEASE
SEE ATTACHED
ACKNOWLEDGEMENT/JURAT

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**　　　　　　　**CIVIL CODE § 1189**

---

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of California　　　　　　　　　　　　　)
County of San Joaquin　　　　　　　　　　　)

On _5-8-19_ before me, Kevin Byrd Notary Public, personally appeared

_Mandip Kaur_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
　　　　　　　　　*Signature of Notary Public*

**N BYRD**
COMM. #2140018
Notary Public - California
San Joaquin County
My Comm. Expires Feb. 8, 2020

**KEVIN BYRD**
COMM. #2140018
Notary Public - California
San Joaquin County
My Comm. Expires Feb. 8, 2020

　　　　*Place Notary Seal Above*

------------ *OPTIONAL* ------------

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _letter_ _____  Document Date: _____
Number of Pages: _____  Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____　Signer's Name: _____
Corporate Officer — Title(s): _____　Corporate Officer — Title(s): _____
Partner — ☐ Limited ☐ General　　　　　　　Partner — ☐ Limited ☐ General
Individual　☐ Attorney in Fact　　　　　　　Individual　☐ Attorney in Fact
Trustee　☐ Guardian or Conservator　　　　Trustee　☐ Guardian or Conservator
☐ Other: _____　☐ Other: _____
☐ Signer Is Representing: _____　☐ Signer Is Representing: _____
☐　　　　　　　　　　　　　　　　　　　　☐

Affidavit of Title

To Whom It May Concern,

Please accept this letter as a formal request for some support and aid in regards for the incarcerated and falsely accused, Pardeep Singh. I, Amrit Kaur Sanghera, would like to testify that Pardeep Singh has falsely been convicted. According to the conversations I have had and overheard amongst community members I believe Pardeep Singh is innocent. I am willing to provide a testimony that Pardeep Singh was not the shooter and was falsely accused of being the shooter. The entire Northern California Sikh and Punjabi community is also well aware that Pardeep Singh is innocent. I would really appreciate your understanding and consideration for reviewing Pardeep Singh's case.

Thank You,
Amrit Kaur Sanghera
1744 Venice Circle
Stockton, CA 95206
(209)982-9950

Amrit K Sanghera     5-7-2019



# WELLS FARGO

# Jurat Certificate   California only

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of SAN JOAQUIN

Subscribed and sworn to (or affirmed) before me on this _____ 7th

day of May , 20 19, by Amrit Kaur Sanghera

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

*Place Seal Here*

Signature _____

GABRIELA ESPINOSA ANAYA
COMM. #2115272
NOTARY PUBLIC - CALIFORNIA
SAN JOAQUIN COUNTY
My Commission Expires 6/13/19

## Description of Attached Document

Type or Title of Document

Affidavit Of Title

Document Date                    Number of Pages

05.07.2019                       1

Signer(s) Other Than Named Above

N/A

To Whom It May Concern:

Please accept this letter as a formal request for some support and aid in regards for my incarcerated and falsely accused brother-in-law, Pardeep Singh.

For as long as I have known my brother-in-law for, he has always been a charismatic, affectionate, sincere, and honest man. The accusations that he has been falsely charged of, do not correlate to his personality and characteristics one bit. I strongly have a firm belief that my brother-in-law is innocent. He has been falsely accused and convicted of these charges.

I would like you to please consider this as a request in some support of aid regarding his case.

Thank you,

Sukhjit Kaur KHALSA
1560 Crestwood Avenue
Manteca, CA, 95336
(209)640-3159

Please see
attachment for
Notary of sig.

*This certificate is attached to a* \_\_\_1\_\_\_ *page document dealing with/entitled* TO WhOM IT MAY CONCERN *and dated* 5/10/19 .

## California ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of San Joaquin

On 5/10/2019 _____ before me,

Angelina R. Gutierrez _____ *(here insert name and title of the officer)*,

personally appeared Sukhjit Kaur Khalsa who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

ANGELINA R. GUTIERREZ
COMM.# 2262901
NOTARY PUBLIC - CALIFORNIA
SAN JOAQUIN COUNTY
My Comm. Expires Oct. 18, 2022

Signature _____ (Seal)

Printed 02-18

Affidavit of Support

# To whom it may concern

Support

Please accept this letter as a formal request for some ~~sport~~ and aid in regards for the incarcerated and falsely accused, Pardeep Singh. I, Jaljit Singh, want to testify that Pardeep Singh has wrongly been convicted from the best I have heard. I have talked to his family, Friends and other community members about him according to everyone I have spoken to, he is innocent, and he was not involved in the crime. The entire Northern California Sikh and Punjabi Communities are well aware that Pardeep Singh is innocent.

Thank you

Jaljit Singh

4215 Zeally LN
Stockton, CA 95206

05/09/2019

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of San Joaquin

Subscribed and sworn to (or affirmed) before me on this ____9____ day

of ___May___, 20_19, by __Jaljit Singh__

_____, proved to me on the basis

of satisfactory evidence to be the person(s) who appeared before me.

Signature ___Margarete Madewell___ (Seal)

MARGARET EVON MADEWELL
COMM. #2150606
NOTARY PUBLIC - CALIFORNIA
SAN JOAQUIN COUNTY
My Commission Expires 4/26/2020

## Affidavit

To Whom It May Concern:

Please accept this letter as a formal request for some support and aid in regards for the incarcerated and falsely accused, Pardeep Singh. I, Parminder Kaur, would like to testify that Pardeep Singh has falsely been convicted. I am willing to provide a testimony that Pardeep Singh was not the shooter.

I have heard from many individuals in our community that Pardeep Singh has been accused for a crime that he did not commit. Consequently, the entire Northern California Sikh and Punjabi community is well aware that Pardeep Singh is innocent.

I would like to humbly request for further support to revisit this case and provide justice to the falsely accused who has been incarcerated.

Thank you,

Parminder Kaur
2528 Knollwood Lane, Stockton, CA 95206
209-234-7286

See Attached
Notarial Certificate

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ San Joaquin _____ )

On __May 15, 2019__ before me, __America Kimberly Andrade, Notary Public__
(insert name and title of the officer)

personally appeared _____ Parminder Kaur _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____   (Seal)

# Affidavit OF TITLE

To Whom It May Concern:

Please accept this letter as a formal request for some support and aid in regards for the incarcerated and falsely accused, Pardeep Singh. I, Rajinderpal Singh, would like to testify that Pardeep Singh has falsely been convicted. I am willing to provide a testimony that Pardeep Singh was not the shooter.

I have heard from many individuals in our community that Pardeep Singh has been accused for a crime that he did not commit. Consequently, the entire Northern California Sikh and Punjabi community is well aware that Pardeep Singh is innocent. In addition, I have known Pardeep Singh on a personal basis and the accusations he has been falsely convicted of do not align with his personality because Singh is a warm-hearted family man who would never harm anyone.

I would like to humbly request for further support to revisit this case and provide justice to the falsely accused who has been incarcerated.

Thank you,

Rajinderpal Singh
2058 Universal Drive, Stockton, CA 95206
209-406-0867

5/15/19

See Attached



**WELLS FARGO**

# All-purpose Acknowledgment  California only

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _San Joaquin_

On _5/15/2019_ before me, _Margaret Evon Madewell_  _Notary Public_ (here insert name and title of the officer),

personally appeared _Rajinder Pal Singh_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

MARGARET EVON MADEWELL
COMM. #2160608
NOTARY PUBLIC · CALIFORNIA
SAN JOAQUIN COUNTY
My Commission Expires 4/26/2020

Notary Seal

WITNESS my hand
and official seal.

Signature _Margaret E Madewell_

**For Bank Purposes Only**

Description of Attached Document

Type or Title of Document _Affidavit of Title_

Document Date _5/15/2019_                    Number of Pages _1_

Signer(s) Other Than Named Above _N/A_



FO01-000DSG5350CA-01

## Affidavit of Title

On Behalf of Pardeep Singh,

Please accept this letter as a formal request for some support and aid in regards for the
incarcerated and falsely accused, Pardeep Singh. I, Satwinder Kaur, would like to testify that
Pardeep Singh has falsely been convicted. I am willing to provide a testimony that Pardeep Singh
was not the shooter and was falsely accused of being the shooter. The entire Northern California
Sikh and Punjabi community is also well aware that Pardeep Singh is innocent. I would really
appreciate your understanding and consideration for reviewing Pardeep Singh's case.

Thank You,

Satwinder Kaur

2058 Universal Dr.

Stockton, CA 95206

5-18-19

See Attached



**WELLS FARGO**

# All-purpose Acknowledgment  California only

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _San Joaquin_

On _5/15/2019_ before me, _Margaret Evon Madewell_ _notary public_ (here insert name and title of the officer),

personally appeared _Satwinder Kaur_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

MARGARET EVON MADEWELL
COMM. #2150906
NOTARY PUBLIC - CALIFORNIA
SAN JOAQUIN COUNTY
My Commission Expires 4/28/2020

Notary Seal

WITNESS my hand
and official seal.

Signature _Margaret C Madewell_

**For Bank Purposes Only**

Description of Attached Document

Type or Title of Document _Affidavit of Title_

Document Date _5/15/2019_          Number of Pages _1_

Signer(s) Other Than Named Above _n/A_



FO01-000DSG5350CA-01

To Whom It May Concern:

Please accept this letter as a formal request for some support and aid in regards for the incarcerated and falsely accused, Pardeep Singh. I, Jot Jupinder Singh, would like to testify that Pardeep Singh has falsely been convicted. I am willing to provide a testimony that Pardeep Singh was not the shooter.

I have heard from many individuals in our community that Pardeep Singh has been accused for a crime that he did not commit. Consequently, the entire Northern California Sikh and Punjabi community is well aware that Pardeep Singh is innocent. In addition, I have known Pardeep Singh on a personal basis and the accusations he has been falsely convicted of do not align with his personality because Singh is a warm-hearted family man who would never harm anyone. I would like to humbly request for further support to revisit this case and provide justice to the falsely accused who has been incarcerated.

Thank you,
Jot Jupinder Singh
2528 Knollwood Lane, Stockton, CA 95206
209-234-7286

**See Attached Notarial Certificate**

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of California                    )

County of ___San Joaquin___    )

On __May 9, 2019__ before me, ___Alexanderia J. Jenkins, Notary Public___,

*Date*                                    *Here Insert Name and Title of the Officer*

personally appeared _____

_____

*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> ALEXANDERIA J. JENKINS
> NOTARY PUBLIC - CALIFORNIA
> COMMISSION # 2190542
> SAN JOAQUIN COUNTY
> My Comm. Exp. May 11, 2021

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

*Signature of Notary Public*

*Place Notary Seal Above*

──────────────── **OPTIONAL** ────────────────

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____            Signer's Name: _____
☐ Corporate Officer — Title(s): _____        ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General                  ☐ Partner — ☐ Limited  ☐ General
☐ Individual      ☐ Attorney in Fact               ☐ Individual      ☐ Attorney in Fact
☐ Trustee         ☐ Guardian or Conservator        ☐ Trustee         ☐ Guardian or Conservator
☐ Other: _____                   ☐ Other: _____
Signer Is Representing: _____             Signer Is Representing: _____

©2015 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

Taljit Singh
241 E. French Camp Road
French Camp, CA 95231
Phone: 209-992.-1070

May 20, 2019

Dear Sir or Madam,

This is a formal request for Pardeep Singh's case be revisited due to him being falsely convicted and
incarcerated.

I have known him personally for over fifteen years and he is not capable of this crime. He has always
been caring, willing to help others and the community.  The Sikh community also believes Pardeeep has
been accused of crime that he did not commit. I am willing to provide a testimony that Pardeep Singh
did not commit the crime.

Thank you for your attention to this matter. I look forward to your reconsideration. If I can provide any
additional information, please contact me.

Sincerely,

Taljit Singh

GURPREET KAUR PHAGURA
COMM. # 2131221
NOTARY PUBLIC - CALIFORNIA
SAN JOAQUIN COUNTY
COMM. EXPIRES OCT. 23, 2019

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )

COUNTY OF _San Joaquin_ )

On _05-22-2019_ before me, _Gurpreet K. Phagura – NOTARY PUBLIC_
　　　DATE　　　　　　　INSERT NAME, TITLE OF OFFICER – E.G., "JANE DOE, NOTARY PUBLIC

personally appeared, _Taljit Singh_ ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (SEAL)
NOTARY PUBLIC SIGNATURE

GURPREET KAUR PHAGURA
COMM. # 2131221
NOTARY PUBLIC - CALIFORNIA
SAN JOAQUIN COUNTY
COMM. EXPIRES OCT. 23, 2019

━━━━━━━ OPTIONAL INFORMATION ━━━━━━━

THIS OPTIONAL INFORMATION SECTION IS NOT REQUIRED BY LAW BUT MAY BE BENEFICIAL TO PERSONS RELYING ON THIS NOTARIZED DOCUMENT.

TITLE OR TYPE OF DOCUMENT _Letter_

DATE OF DOCUMENT _05-20-2019_    NUMBER OF PAGES _____

SIGNERS(S) OTHER THAN NAMED ABOVE _____

SIGNER'S NAME _____    SIGNER'S NAME _____

| RIGHT THUMBPRINT | RIGHT THUMBPRINT |
| --- | --- |
| | |

To Whom It May Concern:

Please accept this letter as a formal request for some support and aid in regards for my incarcerated and falsely accused father, Pardeep Singh. I, Jasdeep Kaur Hothi, the daughter of Pardeep Singh, would like to testify that my father has falsely been convicted of seven counts of attempted premeditated murder and one count of shooting from a vehicle, and sustained enhancements for firearm use and great bodily injury. Additionally, my father was sentenced an aggregated term of 170 years to life plus life with the possibility of parole which is a clear and concise violation of the Eighth Amendment in the United States of America Constitution.

The entire Northern California Sikh/Punjabi community is aware that these individuals are behind the shootings that occurred in May 2006 and not my father, Pardeep Singh. Consequently, I have heard time after time from the elders in my community that my father is in fact innocent because the actual criminals are still living their everyday life without having justice properly served to the real culprits. We, my family and I, would like further support to revisit this case and provide justice to the falsely accused who has been incarcerated for almost 13 years this upcoming May.

Thank you,

Jasdeep Hothi
2155 Pisa Circle, Stockton, CA 95206
209-817-7050



A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _Yolo_
Subscribed and sworn to (or affirmed) before me on this _3_ day
of _June_ , 20_19_, by _Jasdeep Hothi_ , proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _Laura C_ (Seal)

LAURA CHRISTENSEN
Notary Public – California
Yolo County
Commission # 2231340
My Comm. Expires Mar 15, 2022

To Whom it May Concern:

      Growing up I never really knew about father much, as he was incarcerated in 2006. At that time, I was just a young toddler at the age of 3. Growing up my mother would always take me and my siblings to the county jail to talk to my father to visiting him in prison for family visits. I always found my father very influencing and smart, because at a young age my father was a smart and brilliant man with such uniqueness. He would always encourage other to make smarter decisions than what was wrong. He always taught me the right way of life as well making life decisions. With my father's such great influences I able and capable of doing things that I wasn't like receiving straight A's in elementary, staying in the top 30 of class of high school, playing sports like soccer, basketball, and volleyball, join the local police department to be a police cadet, and as well as finishing my Associate's degree in high school. With all these great achievements and accomplishments, I just stop and think how would ever be here were I am at now. Until I figured out it was the smart and brilliant man that made these decisions for me who I now till this day I call my Father.

       -   Sincerely, Karanvir Hothi
         2155 Pissa Circle
         Stockton, CA, 95206

To Whom It May Concern,

I am Pardeep Singh's third child, Harvir Kaur Hothi. My father went to prison in 2006 and I was born in 2006. I was only 3 and a half months old. Ever since then, I have been visiting him. My father is a very quiet, loving, and caring man. My dad loves my siblings and I very much. He is very wise and respectful. He is also very humble. I miss him so much and wish he could be with me.

My mother struggles as a single mother. She does everything she can for my siblings and I. I want to help my mom as I get older. Life without my dad is very tough. I really do miss him and want him to be with me. My dad is innocent and I request you to look at his case please.

Thank you,

Harvir Kaur Hothi
2155 Pissa Circle
Stockton, CA 95206

To Whom It May Concern:

Please accept this letter as a formal request for some support and aid in regards for my incarcerated and falsely accused first cousin, Pardeep Singh.

I have known Pardeep since our childhood age. When I first heard the accusations that were being put on Pardeep, I could not believe any bit of it, and I still do not believe any of it. My cousin has always been the joyful, humorous, loveable, compassionate, and charismatic with family and friends, and is still to this day very much like that.

My cousin has completely been falsely convicted of these charges and I am willing to testify that he is not the culprit in this case. Please consider this letter as a request of assistance regarding his case.

Thank you,

Narinder Singh  CHOHAN
1560 Crestwood Avenue
Manteca, CA, 95336
/20916-0-3159

X perinders chehu   5-21-19

Notary Seal on attached document


**WELLS FARGO**

# Jurat Certificate   California only

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _____San  Juaquin_____

Subscribed and sworn to (or affirmed) before me on this _____5ᵗʰ_____

day of __May____, 20_19_, by ____Narinder  Singh  Chohan_____

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

*Place Seal Here*                      Signature _____

EVER A. REYES-AREVALO
COMM. #2117549
NOTARY PUBLIC - CALIFORNIA
STANISLAUS COUNTY
My Commission Expires 06/28/2019

## Description of Attached Document

Type or Title of Document
| ____Typed  Letter_____

Document Date                          Number of Pages
| ___5/21/2019_____         |   |

Signer(s) Other Than Named Above
| _____none_____

Affidavit of Title

To Whom it May Concern,

I, Gurbinder Mangat, humbley write this letter for the support and aid of the falsely accused, Pardeep Singh. I believe Pardeep has been falsely convicted and jailed for a crime he did not commit. It is common knowledge amongst the Sikh community conversations that Pardeep Singh is innocent and was falsely accused. I am willing to provide a testimony that Pardeep Singh was not the shooter and was falsely accused of being the shooter. Members of the Northern California Sikh and Punjabi community who know of Pardeep Singh and the events that led to his false conviction are well aware that Pardeep Singh is an innocent man. He is a well respected and family oriented person. I would appreciate if Pardeep Singh's case is considered for review.

Thank you,

Gurbinder Mangat

130 Fleurette Lane,

Lathrop, CA 95330

(408) 355-5700

PLEASE
SEE ATTACHED
ACKNOWLEDGEMENT/JURAT

CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT                                                CIVIL CODE § 1189

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California                                    )

County of San Joaquin                                  )

On 1-11-2020 before me, Kevin Byrd Notary Public, personally appeared

## Gurbinder Mangat

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

KEVIN BYRD
COMM. #2140018
Notary Public - California
San Joaquin County
My Comm. Expires Feb. 8, 2020

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

Signature of Notary Public

Place Notary Seal Above

——————————————— OPTIONAL ———————————————

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: Letter of Support _____ Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
Corporate Officer — Title(s): _____
Partner — ☐ Limited ☐ General
Individual   ☐ Attorney in Fact
☐ Trustee   ☐ Guardian or Conservator
☐ Other:_____
☐
Signer Is Representing:_____
☐

Signer's Name: _____
Corporate Officer — Title(s): _____
Partner — ☐ Limited ☐ General
Individual   ☐ Attorney in Fact
☐ Trustee   ☐ Guardian or Conservator
Other: _____
☐
Signer Is Representing: _____
☐

Davinder Singh Johal
118 Timberland Drive
Cordele, GA 31015

To whom it may concern:

This is in support of Pardeep Singh that has been convicted of a serious crime that he did not commit.

I'm the brother of Balvinder Johal and Balvinder and Pardeep Singh were best friends growing up.  I've heard my brother talking about this case and I've heard things on the news media. I stand behind my brother and Pardeep Singh on his innocence. I will testify on behave of Pardeep Singh  on his innocence. My brother Balvinder Johal told me he met with Raghbir Shergill and they had a conversation about the shooting and he told my brother that Pardeep Singh use to work for him (Raghbir Shergill) back in 1994-1995 and that he knows that Pardeep Signh is innocent. The key eye witness is the nephew of Raghbir Shergill, but his parents would not let him testify for fear of his life. Balvinder said that Raghbir Shergill knew that Pardeep was innocent of the shooting but did not want to get into trouble for giving testimony of fear it may ruin his reputation and power with his community.  I also know Pardeep Singh myself and I know is not capable of this crime. I know his family, very well, 3 kids are being raised by his wife alone and its hard on her they need their father.

Please reopen this case, a man's life is depending on this, Pardeep Singh has Benn incarcerated for 13 years already, when he did not commit a crime.

Thank you,

Davinder Singh

notary

## Ground 2

Significantly enhanced sentences, multiple life sentences, imposed in an illegal manner, violates petitioner's constitutional rights.

## Supporting Facts

Based on facts determined by Judge, not Jury, petitioner contends, violated petitioners constitutional rights. Petitioner's trial Judge, enhancing petitioners sentences significantly, imposing multiple life sentences with the possibility of parole, denied petitioner's Juror's the opportunity to weigh, mitigate and, deliberate on all of the facts and circumstances for themselves, to determine if petitioner deserved enhanced sentences along with multiple life sentences. (Apprendi)(2000) one's constitutional right to a Jury trial, can never be taken lightly, do to the severity of punishment, that may result if one is found guilty. Petitioner's Juror's, may have indeed, found petitioner guilty of the alleged crime but, it can not beside beyond a reasonable doubt  that, all of petitioner's Juror's would have reached the same conclusion, in warranting petitioner with enhanced sentences along with multiple life sentences. Any facts that increase the penalty for a crime beyond the prescribed statutory maximum must be submitted to a Jury, and proven beyond a reasonable doubt. (Flubacher)(2018) therefore, petitioner's extended term sentences were imposed in an illegal manner.

## Support Cases

In a recent Supreme Court of Hawaii, in ruling that a criminal defendant's enhanced sentence violated the U.S. Constitution (Flubacher vs. State, 414 p.3d 161 (HAW 2018) has come on board with the U.S. Supreme Court's decision in (Apprendi v. New Jersey, 530 U.S. 466 (2000) The court put an end to the Court's almost two decades of interpretive contortions, in which it tried mightily to avoid. (Apprendi). The question, as stated in Apprendi and now better understood by the Hawaii Supreme Court, is "one not of form, but of effect-does the required finding expose the defendant to a greater punishment than that authorized by the Jury's guilty verdict?" it does, and the application of the extended term sentencing scheme to petitioner violates the principles of Apprendi. In Apprendi, the U.S. Supreme Court held that "[o]ther that the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum, must be submitted to a Jury, and proven beyond a reasonable doubt". Therefore, petitioner respectfully request this Honorable Court to stay petitioner's life sentences, remand for resentencing and or , grant petitioner relief this honorable Court deems appropriate for this matter. Thank you.

HC-001

**Ground 3**

Sixth Amendment entitled petitioner to a venire drawn of the entire county.

**Supporting Facts**

Petitioner argues, that his right to a Jury Panel drawn from a fair representative cross-section of the community is abridged, by the Jury selection procedures in San Joaquin County. Petitioner also contends that, Stockton California is the first county in the United States, to open a Sikh Temple, dated back to the early 1900's in which, San Joaquin County has a high number of Panjabi families but, petitioner did not have even one Panjabi member in the Jury selection or on petitioner's Jury panel, violating petitioner's right to trail by a Jury drawn from a representative cross-section of petitioner's community guaranteed equally and independently, by the sixth amendment. Furthermore, petitioners contends that their Sikh Temple is only located one mile away from the San Joaquin County courthouse where petitioner was tried and convicted by a Jury that was not of petitioner's piers.

**Support Cases**

It is well settled that no litigant has the right to a Jury that mirrors the demographic composition of the population, or necessarily includes members of his own group, or indeed is composed of any particular individuals. (People v. Wheeler) supra 22 Cal.3d at p. 277. What the representative cross-section requirement does mean, however, is that litigant" is constitutionally entitled to petit Jury that is as near approximation of the ideal cross-section of the community as the process of random permits" (People v. Wheeler) supra, 22 Cal.3d at p. 277. A cross-section of petitioner's community is guaranteed equally and independently by the sixth amendment to the federal constitution. (Taylor v. Louisiana) (1975) 418 U.S. 522, 530 [42 L.Ed.2d 690, 95 s.ct 692] and by article 1, section 16 of the California constitution. There is statewide evidence that peremptory challenge process of jury selection in trials are racially biased. The Equal protection clause of the U.S. constitution helps to protect this inherent racial bias that prevents a defendant from being judged by a cross-section of his or her community and makes those excluded from the jury pool more cynical about the justice system. Finally, petitioner expresses the notion that there are, several Panjabi speaking families, in a five mile radius of the San Joaquin County courthouse but, still, petitioner was deprived of his sixth amendment right to a jury of one's piers or , at least to have one Panjabi speaking member, to participate in petitioners trial. Therefore petitioner respectfully request for this Honorable Court to grant petitioner with the proper relief that this court believes is right. Thank you.

HC-001

**Ground 4**

Excessive restitution fine without first conducting a restitution hearing.

**Supporting Facts**

Petitioner contends that the trial court imposed an excessive restitution fine of $54,000 dollars, without first, conducting a restitution hearing to adequately determining the amount one must be able to pay. Petitioner also believes that the trial court failed to take into consideration that, petitioner is a father with three children, house payment, car payment, food and electricity bills, among other financial responsibilities. Furthermore, petitioner contends, that he was at no time, ever given any type of restitution calculation methods or any other restitution documents. Petitioner respectfully request that his restitution be stayed until, petitioner is able to obtain post conviction relief and that his restitution, while incarcerated be rest at the base minimum allowed by law at $200.00 dollars allowing petitioner's family the opportunity to purchase the much needed items at home, along with having the opportunity in helping purchase the many needed items that the department of corrections do not supply petitioner or other inmates with. Such items as vitamins, deodorant, shampoo and several other body hygiene (see exhibit A) one needs in helping to maintain ones health and cleanliness while incarcerated. Thank you.

**Support Cases**

Restitution was intended to compensate actual loss, not to provide a windfall for the state (U.S. v. Chappelone, 183 Cal. App. 4th 1159 2010). Here in this present matter, petitioner's trial court failed to provide petitioner with a restitution hearing at petitioners sentencing to actually calculate the proper amount of restitution and failed to provide a clear statement of restitution calculation method (people v. Jones. 187 Cal. App. 4th 418 (Cal. App. 3rd district 2010). Petitioner is also entitled to a hearing before a judge to dispute the amount ones ability to pay. California penal code 1204.4 (j): People v. Walker. 53 Cal. 3rd 1013. Economic situations must also be considered, U.S. v. Rodriguez.229 F.3rd 842(9th cir. 2000) Not only is petitioner being charged with restitution, so is petitioner's family. California's department of corrections, collects 55 percent of all inmates wages for restitution and, they also take 55 percent of

inmates family earnings, that they send their loved ones that are incarcerated to help purchase items that the Department of Corrections do not supply inmates with. Under, Hughey v. U.S. 495 U.S. 41 (1990) the court held; restitution was not envisioned or intended to cause the defendant's family to bear the burden of paying a loved ones restitution because they have great earning ability. It was to punish the defendants, not their families and otherwise restitution would be to punish innocent citizens for conduct in which they took no part in. For the Department of Corrections to automatically decide for themselves, that any money value that is sent to an inmate is for a inmates restitution, is a clear abuse of the Department of Corrections discretion and authority. Therefore petitioner prays that this Honorable Court grants petitioners request that his restitution be reset to the base minimum of $200.00 dollars, only while petitioner is incarcerated. Thank you.



# CORRECTIONAL TRAINING FACILITY MONTHLY CANTEEN PRICE LIST

INMATE NAME:      CDC #      K-Kosher H-Halal      **APRIL 2019**

## STAMPS

| Item | Price |
|---|---|
| Forever Stamps | $0.55 |

## MISCELLANEOUS

| Item | Price |
|---|---|
| Mesh Shop Bag | $4.00 |
| Mirror | $2.00 |
| Finger Nail Clip | $0.40 |
| Tweezers Plastic | $0.65 |
| Mug 16 oz | $2.30 |
| Storage Bowl | $2.50 |
| Spoon | $0.40 |
| Soap Dish | $0.50 |
| Washcloth | $1.00 |
| Body Puff White | $1.00 |
| Cotton Swab | $1.00 |
| Shower Shoe | $1.40 |
| Sandals 10 or 13 | $6.75 |
| Sunglasses | $3.00 |
| Baseball Cap | $3.35 |
| Watch Cap Gray | $2.00 |
| Can Opener P38 | $0.50 |
| Toilet Paper | $0.90 |
| Ajax Dish Soap | $1.75 |
| Laundry Detergent | $1.75 |
| Rain Poncho | $2.50 |

## ELECTRICAL

| Item | Price |
|---|---|
| AA-4 PK | $1.60 |
| AAA-4 PK | $1.60 |
| Unserviceable batteries must be returned to the Canteen | |
| Earbud | $2.50 |
| Earbud extension | $2.50 |
| Coaxial Cable | $2.25 |
| Splitter | $2.25 |
| Splicer | $1.75 |

## STATIONARY

| Item | Price |
|---|---|
| Bus. Envelope | $0.03 |
| Man. Envelope | $0.15 |
| Writing Tablet | $0.90 |
| Photo Album | $3.30 |
| Pinochle Cards | $1.45 |
| Black Pens | $0.35 |
| Blue Pens | $0.35 |
| Pencil Sharpener | $0.70 |
| English Dictionary | $2.00 |
| [illegible] | $0.60 |
| Mothers Day Card | $0.60 |

## SHAVING

| Item | Price |
|---|---|
| Razor Disp. | $0.25 |
| Shave Gel 7 oz | $1.35 |
| Triple Shave Gold | $3.40 |
| Aftershave | $1.75 |

## CONTRACT ITEMS

### HAIR CARE

| Item | Price |
|---|---|
| Suave Shampoo | © $1.80 |
| Suave Conditioner | © $1.80 |
| Dandruff Shampoo | © $1.50 |
| Suave 2&1 | © $3.10 |
| Tres Brillantine | $1.50 |
| Murrays Pomade | $2.90 |
| Hair Gel | $1.50 |
| Bergamot 4oz | $1.35 |
| Palm Brush | $0.40 |
| Hair Brush | $1.45 |
| Do Rag | $2.25 |
| Hair-Ties | $2.30 |
| Hair Pick | $2.30 |

### DENTAL

| Item | Price |
|---|---|
| Toothbrush Med. | $0.85 |
| Toothbrush Soft | $0.85 |
| Toothbrush Cap | $0.15 |
| Dental Picks | $1.10 |
| Effergrip | $5.50 |
| Mouthwash | $2.35 |
| Denture Tablet | $2.35 |
| Colgate Clear | © $2.60 |
| A.Sensitive 4.3oz | © $3.90 |
| Colgate Max Fresh | © $3.65 |

### HEALTH CARE

| Item | Price |
|---|---|
| Aspirin | $1.60 |
| Lip Balm | $1.75 |
| Med Skin Cream | $1.20 |
| SF CD Black Cherry | $1.80 |
| SF CD Halls Mint | $3.00 |
| Muscle Rub 3 OZ | $3.40 |
| Petroleum Jelly | © $1.90 |
| Foot Powder | © $1.30 |
| Daily Vitamins | $2.80 |
| Vitamin C 500 mg | $4.00 |
| Vitamin B12 500mcg | $3.20 |

### BODY CARE

| Item | Price |
|---|---|
| Dial VPX Deodorant | © $1.30 |
| Clear Deodorant | © $2.70 |
| Speed Stick Gel | © $2.85 |
| Baby Powder | © $1.40 |
| Baby Oil 16oz | © $2.65 |
| Creamy Baby Oil | © $1.40 |
| Jergens Lotion | © $5.10 |
| Body Wash | © $2.95 |

### SOAPS

| Item | Price |
|---|---|
| Irish Spring Soap | © $0.70 |
| Jergens Soap | © $0.70 |
| Dial Vit E Soap | © $1.20 |

## BEVERAGES

| Item | © | K | Price |
|---|---|---|---|
| Pepsi | © | K | $0.55 |
| Cherry Pepsi | © | K | $0.55 |
| Mtn Dew High Voltag | © | K | $0.55 |
| Diet Pepsi | © | K | $0.55 |
| Bottled Water 20 oz | © | K | $0.80 |
| Instant Coffee 4oz | © | K | $0.90 |
| Freeze Dried 3oz | © | K | $1.35 |
| Decaf Folgers 8oz | © | K | $8.25 |
| Coffee Folgers 8oz | © | K | $8.00 |
| Coffee Creamer | © | K | $1.50 |
| Hazelnut Creamer | © | K | $3.60 |
| Hot Tea Bags | | K | $1.85 |
| Decaf Green Tea | | K | $4.50 |
| SF Hot Cocoa | | | $3.50 |
| Haw. Punch Polar Blast | | K | $0.25 |
| Haw. Punch LemonBerry | | K | $0.25 |

## CANNED/POUCH

| Item | © | H | K | Price |
|---|---|---|---|---|
| Tuna | © | H | K | $1.35 |
| Sardines | © | H | K | $0.90 |
| Oysters | © | | | $1.65 |
| Spam | © | | | $2.90 |
| Beef Stew | © | | | $1.75 |
| Menudo | © | | | $3.55 |
| Chunk Chicken | © | | | $1.30 |
| Baby Clams | © | | | $1.55 |
| Olives | © | | | $2.50 |
| Chili Beans Pouch | © | | | $1.50 |
| Shredded Beef Pouch | © | | | $4.30 |
| Mackerel in Pouch | © | H | K | $1.50 |

## CONDIMENTS

| Item | © | K | Price |
|---|---|---|---|
| Sriracha Sauce | | K | $3.30 |
| Sweet & Hot Sauce | | | $2.50 |
| Soy Sauce | © | | $0.80 |
| Mayonnaise 22oz | © | K | $3.25 |
| Sq Cheese Habenero | © | | $1.85 |
| Pepper Jack Cheese | © | | $1.05 |
| Velveeta | © | | $3.80 |
| Peanut Butter Crunch | © | K | $2.70 |
| Sugar Sub Pink | © | K | $1.25 |
| Sugar Sub Blue | © | K | $1.25 |
| Dill Pickle | © | K | $0.55 |
| Lemon Juice | © | K | $0.85 |
| Jalapeño's Sliced | © | K | $1.50 |
| Yellow Chiles | © | K | $1.60 |
| Crushed Peppers | © | K | $1.15 |
| Garlic Powder | © | K | $1.35 |
| Onion Minced | © | K | $1.15 |
| Salt & Pepper | © | K | $1.55 |

## CRACKERS

| Item | © | K | Price |
|---|---|---|---|
| Saltine Crackers | © | K | $1.60 |
| Cheese Crackers | © | K | $1.80 |

## CANDY BARS & BAGS

| Item | © | K | Price |
|---|---|---|---|
| Snickers Bar | © | K | $1.00 |
| Milky Way | © | K | $1.00 |
| Crunch Bar | © | K | $1.00 |
| Hershey W/ Almonds | © | K | $1.90 |
| S. F. Vanilla Caramel | © | | $1.10 |
| S. F. Jolly Ranchers | © | | $2.85 |
| Tootsie Rolls | © | | $0.02 |

## CHIPS

| Item | © | Price |
|---|---|---|
| BBQ Chips | © | $1.40 |
| Buffalo Wing Chips | © | $1.40 |
| Chili Corn Chips | © | $1.60 |
| Nacho 16oz | © | $2.10 |
| Pork Rinds | © | $1.90 |
| Butter Popcorn | © | $1.30 |
| Hot & Spicy Crunchie | © | $1.60 |
| Salsa Cup | | $1.20 |

## COOKIES & PASTRIES

| Item | © | K | Price |
|---|---|---|---|
| Strawberry Shortbread | © | K | $1.20 |
| Oatmeal Cookies | © | K | $1.05 |
| Duplex Crème | © | K | $1.60 |
| Bluberry Danish | | K | $1.00 |
| Grand Iced HoneyBun | | K | $1.00 |

## ICE CREAM

| Item | K | Price |
|---|---|---|
| Jolly Rancher Pop | K | $1.35 |
| Vanilla Nutty Cone | K | $1.20 |
| Bunny Tracks | K | $2.75 |
| Chocolate | K | $2.75 |
| Banana Split | K | $2.75 |

## OTHER FOODS

| Item | © | K | Price |
|---|---|---|---|
| Oatmeal - Cannister | © | K | $2.10 |
| White Rice | © | K | $0.95 |
| Brown Rice | © | K | $0.95 |
| Spicy Beans 12oz | © | K | $1.40 |
| Refried Beans 12oz | © | K | $1.40 |
| Macaroni & Cheese | © | K | $0.75 |
| Mixed Vegetables-Pouch | | | $1.50 |
| Flour Tortillas 10 in. | | K | $2.50 |
| Corn Tortillas | | K | $1.80 |
| Beef Sausage | | | $2.25 |
| Halal Sausage | | H | $3.00 |
| Chinese Sausage | | | $2.80 |
| Cereal-Raisin Bran | | K | $0.60 |
| Frosted Mini Spooner | | K | $3.60 |
| Buffalo Wing Pretzels | | K | $0.75 |
| Honey Peanuts | | K | $0.95 |

## RAMEN SOUP

| Item | © | Price |
|---|---|---|
| Chili | © | $0.25 |
| Cajun Chicken | © | $0.25 |
| Beef Low Sodium | © | $0.25 |
| Hearty Chicken (Cup) | © | $0.50 |
| Pic w/ Shrimp(Cup) | © | $0.50 |

**OTC MEDICATIONS ON BACKSIDE OF PRICE LIST**

GROUND (5)

INSUFFICIENT EVIDENCE PRESENTED AT TRIAL,
TO CONVICT PETITIONER BEYOND A REASONABLE
DOUBT/ AND INEFFECTIVE ASSISTANCE OF TRIAL
COUNSEL FOR FAILING TO RETAIN THE SERVICE
OF EXPERT TESTIMONY FOR REBUTTAL.

a. Supporting facts:

Petitioner contends that the Prosecution presented insufficient
evidence at trial, to find Petitioner guilty beyond a reasonable
doubt. During Petitioners trial, the Prosecution presented noth-
ing more then speculation concerning Petitioners guilt and, three
witnesses, whos testimony continued to change, the closer trial
became, concerning whether Petitioner was the "Driver" of the
alleged vehicle, that the Police seized, or, if Petitioner was
the alleged "Shooter", riding in the backseat on the passenger-
side of the vehicle. What it came down to at trial was, The pro-
secution presenting nothing more then speculation and, three
witnesses with inconstant testimonys concerning the alleged shoot
ings. At Petitioners trial, The Prosecution presented no "Gun",
no "Gun Residue", on either Petitioners hands, arms, face, not
even any on Petitioners clothing. And furthermore, not even the
Police who seized and search the alleged vehicle, of the alleged
"Shooting", and in which Petitioner was accused of "Driving"then
accused of beinging the alleged "Shooter", in the backseat, not
only did the Police not find "Any fingerprints from Petitioner or
his co-defendent in the vehicle, neither the Police or Prosecut-
ion, presented "any Gun Residue", at trial, or "Anything else
that tied Petitioner of committing a crime at all. Had Petitoners
trial counsel retained the service of "Expert Testimony for the
defense, at trial, said "Expert Testimony", could have possibly
helped to shine light on the fact that, the reason the Prosecu-
tion found nothing that tied Petitioner to the alleged crime was,
because Petitioner did not committit. Finally, Had counsel retaied
Phone expert, said expert may have been able to help clear up the
confusion concerning Petitioner being at home at the time of the
alleged shooting, and having to call his home phone from cellph-
one, to transfer homeline back to normal home phone. Petitoners
phoneline was used for Petitioners trucking company dispatch.

b. Supporting cases, rules, or other authority:

During Petitioners criminal trial, the Prosecution presented noth
ing more than speculation of Petitioners involvement in the all-
eged shootings and three eye witnesses with inconstant statements
of the alleged shooter(Santamaria v. Horsley)133F.3d1242(9th cir.
1998) Petitioner was accused of first, driving the alleged vehi-
cle, then accused of being the shooter riding in the backseat of
the alleged vehicle firing multiple shots out of the window. But,
at trial, the Prosecution presented no "GUN", no "GUN RESIDUE",
evidence on Petitioner, or, on or in the alleged vehicle, and in

which the "Police", seized and searched. The Prosecution even
failed to find any "Fingerprints", from the Petitioner in the
alleged vehicle or, anywere else. The Prosecution did not present
at Petitioners trial, "Any Type", of physical evidence, or, "Any"
other type of evidence, other then a "theory and "Speculation,
that Petitioner even committed a crime ate all. In (Price v.
vincent)538U.S.634,155L.ed.2d877,123S.ct.1848(2003) rather then
reinstate the jurys guilty verdict, the Hawwii Supreme Court,
reversed it on the grounds that it was not supported by sufficient
ent evidence. Here, the Prosecution clearly failed to present at
Petitioners trial, sufficient evidence to meet its burden of
persuasion or, to convict Petitioner beyond a reasonable doubt.
Also, Petitioners trial counsel was ineffective prior to trial by
failing to retain the services of "Expert Testimony", for the
rebuttal of the Prosecutions "Expert" during Petitioners trial.
Furthermore, it was apparent during Petitioners trial,had counsel
retained the services of expert witness, said expert could have
testifyed, clearing up the confusion over Petitioner trully being
at home at the time the alleged shooting took place, which Petit-
ioner was claiming, and the reason Petitioner called his home-
phone from his cellphone to switch his homephone back to normal
phone line. As Petitioners trial Judge confirmed during Petitio-
ners second trial.(Please see Petitioners 2nd trial transcripts)
Trial counsel was not trained in the field of "Expert Phone"
witness and was unable to refute what the Prosecutions "expert"
was allowed to tell Petitioners jury, leaving Petitioners jurors
to believe that experts testimony. Even though Counsel knew that
the Prosecution planed to present expert testimony at trial,
counsel still failed to retain or interview any experts for the
defense at trial. Counsels actions are ineffective. therefore,
Petitioner contends that "Insufficient Evidence" was presented at
trial, to convict Petitioner beyond a reasonable doubt and Petit-
ioners trial counsel was "Ineffective" for failing to retain the
services of "Expert Testimony", for rebuttal at trial. Finally,
Petitioner prays for this Honorable Court to grant Petitioner
the relief this Honorable deems best for this matter thats now
at hand. Thank You.

HC-001

GROUNDS FOR RELIEF

**Ground 6** State briefly the ground on which you base your claim for relief. For example, "The trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page 4. For additional grounds, make copies of page 4 and number the additional grounds in order.)*

"INADEQUATE FACT-FINDING PROCEDURE, DENIED THE FUNDALMENTAL
FAIRNESS UNDER 28 U.S.C. 2254(a)(d)(2), PETITIONER PREJUDICED
BY AN ABUSE OF DISCREATION.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts on which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel, you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is, *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*.

Petitioner contends that he was Prejuiced at Petitioners 2021,
Evidentiary Hearing, by an inadequate fact finding procedure, An
abuse of discreation and, Petitioner was denied the fundalmental
fairness under 2254(a)(d)(2). Petitioner further contends that the
trial Justice, who held Petitioners hearing,failed to adequately
read through all of Petitioners numerious court records, resulting
from three different trials, which can clearly be seen in his
denial after Petitioners hearing, which undermined the fundalmental
fairness procedure under 2254(a)(d)(2). Also Petitioner will show
in this petition that the prosecuting attorneys only witness for
this hearin,Mr.John Gill,"Once Again" provided "Perjured Testimony"
while under "Oath", on atleast four different occasions.

(Please See Attached Pages)

b. Supporting documents:

Attach declarations, relevant records, transcripts, or other documents supporting your claim. (See *People v. Duvall* (1995) 9 Cal. 4th 464, 474.)

c. Supporting cases, rules, or other authority *(optional)*:

(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)

1. during Petitioners hearing, along with numerous inconsistant
2. statements and, Petitioners evidentiary haring counsel,rendered
3. I.A.C. prior to the start of Petitioners hearing, by failing to
4. talk to, interview or, present at Petitioners hearing, one
5. Mr.Amrit Pal Singh, a "Crucial" defense witness to this case.
6. Petitioner further contends that he will also show in this petition,
7. through facts, testimony, and evidence,thats in the court record,
8. not only was Petitioner deprived relief after Petitioners hearing,
9. Petitioners hearing was "Doomed to Fail" after returning back to
10. San Joaquin County, and can be seen in the events that transpired
11. prior to the start of Petitioners hearing. Such issues as one of
12. respondants responces Petitioners trial counsel noted during
13. Petitioners hearing,(pg.156 lines 23 thru28/ pg.157 line 1, see
14. transcript) The respondant indicated in one of our motions that,
15. "All she does is habeas petitions, thats all she does". Counsels
16. replyed with saying, "It is nearly unbelievable to me that there
17. are that many habeas petitions in one county". "It's disturbing".
18. "I come from a county with many more people". The respondants
19. only responded saying; "Ojection your honor,whats the relevance".
20. Petitioner contends that he was wrongly convicted and sentenced
21. for a crime in which Petitioner did not commit or take any part
22. in. Petitioner contends that back in December 2019, the
23. California Supreme Court, agreed that Petitioner did in fact,
24. present a "Prima Facie Case for relief" on Petitioners grounds
25. of "Actual Innoncence and I.A.C. of trial counsel".(See Exhibit A.)
26. Than on February 11,2020, the California Supreme Court, granted
27. Petitioners "Order To Show Cause".(See Exhibit B.) The respondants
28. written responce was to be filed to this matter by March 12,2020.

1. On March 6,2020, the respondents were granted there first (60)
2. day extention of time.(See Exhibit C.) Than on May 7,2020, the
3. respondants recived there second (60) day extention of time.(See
4. Exhibit D.) Petitioner in Pro-Per, filed an "Objection" motion
5. against the granting of a second (60) day extention do to this
6. being a "Actual Innocence" case, along with a motion requesting
7. for the appointment of counsel. On July 17,2020, both of Petitioners
8. motions were denied.(See Exhibit E.) Petitioner contends that this
9. was the first time becoming aware that Petitioner had already
10. been appointed counsel for this matter. Petitioner was shocked
11. because No Attorney from San Joaquin County, had tried to contact
12. Petitioner at all. On July 30,2020, Petitioner was notified by
13. the County Courthouse, that Petitioners court appointed counsel,
14. that never contacted Petitioner, was being relieved as Petitioners
15. counsel, do to an conflict of interest, caused by Ms.Lois
16. Keenan, working for the District Attorneys Office, when
17. Petitioners co-defendant was prosecuted. Also, the court was
18. notifying Petitioner, that the court just granted the respondants
19. their third (60) day extention of time request.(See Exhibit F.)
20. That extention now gave the respondants until September 4,2020,
21. to file their return to the California Supreme Courts February
22. 11,2020, ruling. Petitioner contends that at this point in
23. time, no court appointed attorneys have even tried contacting
24. Petitioner and Petitioner filing "Objection" motions in Pro-Per,
25. were being denied and Petitioner respectfully ask this Honorable
26. Courthouse to review Petitioners "Incoming/ Outgoing" prison
27. legalmail, Petitioner contends that you will see that , at "No-
28. Time" did any of the two appointed counsels, from the San Joaquin

1. County Public Defendaers Office, contact Petitioner(See Exhibit G.)
2. At this point, Petitioner felt that his case was being treated
3. unfairly. While motion after motion for extention of time, for
4. the respondants were getting granted, and this being and "Actual
5. Innoncene Case", no attorney from San Joaquin County Public
6. Defenders Office, was "Objecting" the extenition motions or, speaking
7. out for Petitioner. Furthermore, Petitioner contends that the
8. respondants  investigation/ interview process, was completed by
9. early July 2020, for this case and, it was rumored that Ms.Uskov,
10. respondant for Petitioners case, was out due to "Maternity"
11. leave.(See exhibit H.) And to top it all off, the Honorable
12. Justice, Ms.Elizabeth Humphreys, the same Justice that made the
13. first ruling on Petitioners petition, back in 2019, and who knew
14. Petitioners case, was now unsure if she would be staying in
15. Petitioners case or, turning it over to another Justice, that did not
16. know anything about Petitioners case, The Honorable Justice, Ms.
17. Humphreys, excussed herself out of Petitioners case. At this
18. point, Petitioner and his family had no other choice but to
19. retain the services of an outside attorney, from Sacremento Ca,
20. that would give Petitioner the best fighting chance, to prove
21. Petitioners "Innoncence". Finally, Petitioner is challenging the
22. substance of Petitioners evidentiary hearing and the Superior
23. Court Justices, denial for relief, which was contary to clearly
24. established Federal Law, under § 2254(a)(d), and in which, the
25. Superior Courts denial, was not supported by Substantial evidence
26. including "Newly" discovered evidence and impeachment testimony,
27. thats now in the court record, and in which the superior Court
28. Justice, gave no weight to. Petitioner would like to Respectfully

1. reminds the Honorable Justices of this Honorable Courthouse, that
2. the Honorable California Supreme Court, not only stated in part;
3. Petitioner has presented an "Prima Facie Case for Relief" on
4. Petitioners contentions of "Actual Innocence Claim" and Petitioners
5. I.A.C. claim, which Petitioner contends, was the basis for the
6. granting of Petitioners O.S.C. Petitioner contends that the Superior
7. Court Justice, in one sense,changed the California Supreme Courts
8. ruling, by simply refusing to see or review Petitioners case, for
9. what it truly is. An "Actual Innocence Case" and it can be seen
10. in the opening statement   of the Justices denial, where he states
11. in part; "and even though it's not a claim of actual innocence,
12. in effect you're saying I'm innocent. I didn't do this. And
13. certainly if that were the case, I would not want you to spend
14. another second in custody".)(See Justices ruling transcript, pg.32
15. lines 2thru 4) Petitioner further contends that, not only is this
16. an "Actual Innocence Case", it is also an "Materially Probative
17. False Evidence case, which the prosecutions only witness, Mr.Gill
18. not only provided false testimony prior to and at Petitioners
19. 2008 criminal trial, Mr.Gill once again Provided "Perjured Test-
20. imony and several inconsistant staements, which lead to the
21. discovery of "New" evidence, which alone should have been enough
22. for the granting of relief, due to this case boiling down to an
23. "Credibility Contest", and in which Petitioner contends that the
24. Superior Court Justice, in his denial agreed, Petitioner had infact,
25. established "Inconsistencies" during his hearing.(See Justices
26. denial transcripts Pg. 33 lines 20 &21.) Petitioner contends that
27. where newly discovered evidence is alleged in a hebaes corpus
28. application, and all relevant evidence and facts supporting Petitioners

1. contentions, Petitioner contends that he "must" be granted
2. a new evidentiary hearing, providing such evidence bears on Const-
3. itutionally of Petitoners detention.(28 U.S.C.A.§ 2243) Furthermore,
4. Petitioner contends that "however", a District Judge, is under no
5. obligation to grant Petitioner a new hearing in habeas corpus upon
6. frivolous or incredible allegations of newly discovered evidence.
7. (28 U.S.C.A.s 2243) Petitioner contends that he has presented a
8. colorable claim for relief and has supported his allegations with
9. documented evidence and tesimony, thats in the court record. And
10. even if all the relevant facts were presented in Petitioners State
11. hearing, it may be that the "Fact-Finding Procedure" that was
12. employed by the Superior Court Justice, was not adequate for
13. reaching reasonable correct results. Petitioner contends that,
14. if the state Justice, has made serious errors(Respecting the claims
15. pressed in Petitioners habeas corpus) in such things as burden of
16. proof, a new hearing is required. Petitioner further contends
17. that, even where the procedure employed does not violate the
18. Constitution, if it appears to be serioulsy inadequate for the
19. ascertainment of the truth, it is the District Judge's duty to
20. disregard the states findings and take evidence anew. furthermore
21. Petitioner contends that there are procedural errors so grave, as
22. to require an appropriate "Order" directing the habeas applicants
23. release. Petitioner contends that, the switching of Justices just
24. prior to the start of Petitioners hearing, prejucied Petitioner,
25. because that switch did not allow the new Justice, the proper or
26. enough time to read the three diffrerent trials Petitioner had
27. along with all the documents surrounding Petitioners case, which
28. can clearly be seen in the Justices denial for relief where the

1. Justice states in part; "there was a link establiseded to them by

2. cell phone evidence and other evidence as well as a link estab-

3. lished at trial, by Mr. Singh to the owner of that vehical")(See

4. transcript Justices denial at Pg.44,lines 9 thru 11) Petitioner

5. contends that just those two statements used in denying Petit-

6. ioner relief, "Prejucied" Petitioner. Petitioner Respectfully

7. pointsout to this Honorable Courthouse that, Petitioners case is

8. an "Actual Innocence Case" which Petitioner has always claimed

9. that he took no part in and, the "Only" cell phone link that the

10. "Prosecution" was able to establish prior to and at Petitioners

11. 2008 criminal trial, was at that time, Petitioner did infact

12. own a cell phone. Which Petitioner states is not a crime.

13. Petitioner Respectfully pointsout that cell"phone records",

14. which is the "Only" thing the prosecution had concerning Petit-

15. ioner and, cell phone records "Can Not" place some one in the

16. vincidity or at a crime. Petitioner contends that "Cell Tower

17. Records" are what are needed to place some one in the vincidity

18. and or at a crime  and in which, the "Prosecution Failed" to

19. have of Petitioners. Therefore, it is impossible to establish

20. a cell phone link between Petitioner to this crime by using

21. "Cell Phone Records". Furthermore, Petitioner contends that

22. there is "No Where" in the "Police Report", the"Prosecutions

23. Investigation Records" or for that fact, the "Court records",

24. that showed or stated that Petitioner was the "owner of that

25. vehical", that the Justice, claimed Petitioner did, in his

26. reasons for denying Petitioner relief. Petitioner "Never Owned"

27. that vehical nor has Petitioner ever owned a BMW, in Petitioners

28. lifetime. Nevertheless Petitioner contends, these statements by

1. the hearing Justice are "Errors" that are now in the Court Record
2. which Petitioner contends that this case is "An Actual Innocence
3. Case" and, these errors cannot simply just be said to be a "Harmless"
4. error nor, could it be said beyound a reasonable doubt that,
5. these errors did "Not" play a roll in the Justices determination,
6. coming to the conclusion, to deny Petitioner relief, clearly
7. undermining the "Fact-Finding Procedure employed for Petitioners
8. evidentiary hearing, "Prejucied" Petitioner. Furthermore, Petitioner
9. pointsout that the Justice further states in his denial; "there
10. were atleast three other witnesses, that identified Mr.Singh as
11. the shooter".(See transcript Justices denial at Pg.44,line 6)
12. Petitioner Respectfully pointsout the "Credibility" through this
13. entire case, of not just Mr.Gill but, also the "Aggravating"
14. evidence of the other three witnesses who testified against
15. Petitioner, and who "Claimed" to have seen and identified Peti-
16. tioner as a shooter, and in which, all of their trial testimonys
17. were directly contrasted by their "Initial Statements" to the
18. "Police" the night of the shooting, "All" three witnesses were
19. "Impeached". Their repeated "Inconsistencies" through their
20. testimonys, only served to "Discredit Them", as "Reliable"
21. witnesses, leaving Mr.Gill as the prosecutions only witness.
22. Petitioners concerns "Must" be allowed to hold weight and, these
23. statements used in Petitioners denial for relief, nevertheless are
24. still "Grave Enough" to deprive Petitioner of his Constitutional
25. Right to a fair and full adequate evidentiary hearing, as a means
26. of finally determining all facts and evidence upon which Consti-
27. tutional rights depend. Petitioner contends that a District Court
28. sitting in habeas corpus, also clearly has the power to comple

1. production of the complete State Court Record. Petitioner further
2. contends, and of course, if because no record can be obtained,
3. the District Judge has no way of determing whether a full and
4. fair hearing which, resulted in findings of relevant facts was
5. vouchsafed, he must hold one. Petitioner also contends that this
6. Honorable Courthouse and its Justices, "must" review the weight
7. Petitioners "Newly Discovered Evidence", including "Perjured
8. Testimony" and "Inconsistant Statements" at Petitioners hearing
9. by Mr.Gill, "Must" be allowed to carrie, Towards Mr.Gills "Crediblity"
10. and tords Petitioners "Innocence", in determing if Petitioner
11. should be granted relief. Petitioner also contends that the
12. State Court Justice, made no specific findings, of how he resolved
13. the "Credibility" of Mr.Gill, in favor of Mr.Gill, nor did he
14. make any historical fact underlying its conclusion, that
15. Petitioners case was not "An Actual Innocence Case". Petitioner
16. would like to also Respectfully address a prior hearing to the
17. switching of Justices for this matter, the Honorable Ms.Humphreys
18. deprived Petitioner from being allowed to present additional
19. evidence to support Petitioners I.A.C. claim against his 2008,
20. criminal attorney, stating in part; "still the court concludes
21. the Petitioner could not"expand his claims beyound those alleged
22. in the petition and, made the basis of [the] court's Order to Show
23. Cause"(Id.[emphasis added].) The I.A.C. claims herein were not
24. made a basis of the Supreme Court's O.S.C.(See exhibit I.) First,
25. Petitioner would like to Respectfully give the definition of the
26. word "Basis"( "Something on which something else is established
27. or based".) Petitioner further contends that a hebeas corpus
28. proceeding is infact, "limited to the claims which the court

1. initially determined stated a "Prima Facie Case for Relief".( In
2. re Clark) 5 Cal.4th 750,781,fn.16(1993) The California Supreme
3. Court stated in part; Petitioner has presented a "Prima Facie
4. Case for Relief" on Petitioners "Actual Innocence Claim" and
5. Petitioners I.A.C. claim against his 2008, trial attorney. And
6. yes, Petitioner contends, his claims were not in the Supreme
7. Courts O.S.C., nevertheless, both of Petitioners claims were
8. infact apart of Petitioners ground one in Petitioners petition
9. and both claims were infact, the "basis" for the granting of
10. Petitioners O.S.C., which the California Supreme Court deter-
11. mined Presented a "Prima Facie Case for Relief".(in re Lawley,
12. 42 Cal.4th 1231,1248(2008). Therefore, Petitioner should have
13. been allowed to present additional testimonial and documentary
14. evidence relevant to disputed issues, so long as it did not
15. expand his claims beyond those alleged in Petitioners petition
16. and what was found to have presented a "Prima Facie Case for
17. Relief".( In re Lawley ).  Petitioner having alleged a claim which
18. if proven, would entitle Petitioner hebeas relief, where the facts
19. are in dispute,... and if Petitioner did not receive a full and
20. fair evidentiary hearing in State Court, either at the time of
21. trial or in a collateral proceeding", Petitioner has satified the
22. "Cause and Prejudice" test. Petitioner further contends that, the
23. question thats now before this Honorable Courthouse and its
24. Justice's, is whether Petitioner has presented a colorable claim
25. of Constitutional harm, in other words, whether these facts, if
26. proven true, may entitle Petitioner to relief. Finally, Petitioner
27. is still left wondering, how is it even possible, that a case were
28. not one pieace of physical evidence has been presented in this

1. case that, still to this day, has not even shown Petitioner
2. committed a crime. A case that was "Granted" an "Order to Show
3. Cause", which Petitioner contends is a "Huge Milestone" in itself
4. to even accomplish. A case that has "Boiled Down" to a "Credibility-
5. Contest" and, A case where "Inconsistant Statements" including,
6. more than one, "Prejured Testimony" by the "Prosecutions Star
7. and only witness", while "Under Oath", "Sitting" in a "Court of
8. Law", during an "Evidentiary Hearing", that was  Based Around"
9. the use of "Materially Probative False Evidence", and Petitioner
10. contends, that has "NO EFFECT", on Mr.Gills "Credibility"???...
11. ( 28 U.S.C. s 2254(d)(2)( Taylor, 366 F.3d at 1001)("Credibility"
12. based on "Documentary Testimony and Evidence in the record"( Watts
13. Vs. United States,841 F.2d 275,277( 9th Cir.(1998). Petitioner
14. since day one, has alway said that he was "Innocent" of this
14. crime and took no part in it. Petitoner "Respectfully asks the
15. Honorable Justices in this Honorable Courthouse, to please take note
16. of the court record and the "Numerious Affidavits", that has been
17. submitted in Petitioners defense and inwhich "several of Them"
18. claim the same thing, "that Mr.Gill told them he knows Petitioner
19. is Innocent".( Please see court record). And now just recently
20. at Petitioners 2021, hearing, "A 2019, Text Massage" from the
21. "Prosecutions" witness, Mr.Gill, written Kuldip Singh, one of
22. Petitioners defense witnesses at Petitioners hearing and, "One"
23. of the witnesses that the Honorable California Supreme Court,
24. "Based Petitioners Order to Show Cause Around", that stated in
25. part; "I'm going to--I'll help you. I know he's innocent, I'm
26. working on it, brother,sorry for the delay. I'll keep trying.
27. (See transrcipt Rebuttal argument by Ms.Mouzis Pg 29 lines 2 thru
28. 28). And after several attempts to deny writing that "Text Massage"

1. to Kuldip Singh, Mr.Gill admitted yes that might be me. Yeah,

2. yeah, it's probably me.(See Transcript John Gill) Petitioner

3. contends that "Text Massage" that Petitioners defense counsel

4. submitted into Petitioners hearing as "Newly Discovered Evidence"

5. that was "Clearly Physical Proof", that not only confirmed that

6. Mr.Gill "Did InFact" tell people that Petitoner was "Innocent"

7. and Mr.Gill "Did InFact" tell people that "He Would Help", it also

8. showed that Mr.Gill "Lied in Court" and while "Under Oath" knowingly

9. and intentionally, with reckless disregard for the "Truth". None of

10. Petitioners "Five" defense witnesses that chose to comeforward

11. to tell the "Truth" concerning Mr.Gills statements about Mr.Gill

12. knowing Petitioner is "Innocent". They did not give "Inconsistant

13. Statements" when questioned by the respondants or, for that fact,

14. they did not give "Prejured Tesimony" but, the State court Justice,

15. "Discredited All of Petitioners Five witness" claiming that all

16. Petitioners witnesses had either bias or a horse in the race.

17. (See Justices Denial) Petitioner further contends that the Justice

18. even discredited the "Three Witnesses" who do not even know

19. Petitioner or his family, and clearly, they do not have "Anything

20. to Gain" or can it be said, "that they have a horse in the race".

21. Aijt Grewal and Kuldip Grewal the Justice discredited them stating

22. in part; " they were involed in thier nephew having been arrested

23. charged with a crime. Mr.Gill I believe contended that they were

24. involved with hiding the BMW. But as far as thier testimony,

25. there's also bias. (See Justices denial Pg. 37 lines 1 thru 4)

26. Petitioner "Must Pointout" to the Honorable Justices of this

27. Court, that not only were "All Charges" droped against there

28. nephew, that was another "False Statement" by Mr.Gill, that the

1. state court Justice gave weight to, which Petitioner contends,

2. that a simple review of the police report, will show after looking

3. for the BMW for about two or three days, it was found parked

4. at the owners house. Furthermore, after a complete search of

5. that BMW, which "Clearly"Did Not Belong" to Petitioner, which the

6. Justice stated it did,(See Justices Denial) "Not One Pieace" of

7. physical evidence was found in that BMW, that pointed to Petitioner

8. "Not even One FingerPrint". Petitioner contends that the State

9. Courts Fact-Finding Procedure employed here in this case for the

10. determining the "Credibility" of Petitioners defense witnesses

11. including the witnesses that did not even know Petitioner, "Prejucied

12. Petitioner" and that denied Petitioner of his Constitutional Rights

13. to a fair evidentiary hearing. Petitioner contends that a "Rehearing

14. is Appropriate" if (1) the merits of factual dispute were not

15. resovled in the state hearing,(2) the state factual determination

16. is not fairly supported by the record as a whole,(3) the fact-

17. finding procedure employed by the state court was not adequate to

18. afford a full and fair hearing,(4) there is a substantial allegation

19. of newly discovered evidence, which Petitioner contends that the

20. Justice was "completely silent" about in his denial,(5) the

21. material facts were not adequately developed at the state court

22. hearing,( Townsend,375 U.S.at313,83 S.Ct.745.) A District Courts

23. decision to grant or deny an evidentiary hearing in a habeas corpus

24. proceeding is reviewed for an abuse of discreation,( Vigil Vs.

25. Azvaras, 298 F.3d 985,943(10th Cir.2002) Petitioner contends""An

26. abuse of discreation occurs when the state court bases its ruling

27. on an erroreous conclusion of law or relies on clearly erroreous

28. fact finding"( Kiowa Indian tribe of Okla Vs. Hoover, 150 F.3d

1. 1163,1165(10th Cir.1998) or when the courts decision is
2. arbitrary, capricious, or whimsical"(Cox Vs. Sandia Corp,914
3. F.2d 1124,1125(10th Cir.1991). Petitioner finally closes with
4. this, "The Primary Purpose of a habeas corpus proceeding is to
5. make certain that a "Innocent" Man or Woman, is not "Unjustly"
6. or "wrongly Imprisoned", for a crime He or She did not commit.
7. Here in Petitioners case, Petitioner has spent the last (16) years
8. in "Prison" for a crime he took "No Part In" or "Commit". Petitioner
9. contends that the State Court Justice, "reasoning" for "Discrediting"
10. not just one, but "All Five Defense Witness" was more than just
11. "Whimsical", it was a "Miscarriage of Justice". To give "Favor"
12. to a witness who not only gave "Inconsistant Statements" including
13. providing "Prejured Testimony", during a "Materially Probative
14. False Evidence Case", using the "Same Reasoning" that "You Just
15. Used" to "Discredit" all "Five Defense Witness", clearly makes no
16. sense what so ever.(Earp Vs. Ornoski, 431 F.3rd 1158,1169-70& n.8
17. (9th Cir.2005)("Credibility" Taylor,366 F.3rd at 1001)(Watts Vs.
18. United States,841 F.2d 275,277(9th Cir.1998)(Herrera Vs. Collins,
19. 506 U.S.390,404,113 S.Ct.853 L.ed.2d,203) Petitioner contends
20. that Mr.Grewal, one of Petitioners defense witnesses, during
21. Petitioners evidentiary hearing, could not have said it any better
22. when asked the "Vital Question", "Why would someone finally come-
23. forward to help Petitioner??....Mr.Grewal, replyed back with
24. this "Powerfull Statement"..."BECAUSE IT'S THE RIGHT THING TO DO.
25. WHAT HAPPEND WAS WRONG".(See hearing transcripts) Petitioner started
26. this petition off claiming that Petitioners evidentiary hearing
27. was "Doomed To Fail", after returning to San Joaquin County,
28. leaving Petitioner and his family members, wondering why would

1. a County that "Wrongly Convicted" Petitioner, who not only denied

2. Petitioner "Relief", not just "Once" but "Twice" before holding

3. a hearing were Petitioner is asking for "Relief", a "Third Time",

4. be exspected "To Do The Right Thing"???... Petitioner contends

5. that the"Magnitude" and the "Vital Importance" of the "Evidentiarty

6. Hearing", can not be taken lightly, because they can be seen as

7. the "Gateway" in determining if, a defendant may or may not, spend

8. the rest of their "Life In Prison", for a "Crime" he or she "Did

9. Not Do". Aspecially using words as; "As I consider the witnesses

10. and the main thing that the California Supreme Court granted an

11. evidentiary hearing was to have a judicial officer evaluate

12. witness credibility. "Thats not something that the California

13. Supreme Court can do". "It's not something the Third District

14. Court of Appeals can do, and that's "Frankly", why I would never

15. want to be an appellate judge, because I enjoy hearings and witness.

16. ( See Transcripts Pg. 32&33 lines 26 thru 28 & 1 thru 5) Furthermore,

17. words as; "Even if the Court, this Court or a higher Court,were

18. to find that "False Evidence" was presented, this petition "would

19. continue to fail", because there was not proof by a preponderance

20. of the evidence at this hearing, it would have been the type of

21. evidence that would have been material or probative on the issue

22. of guilt against Mr.Singh in,"That it would not have affected the

23. outcome of the trial".(See Transcripts Pg.43&44 lines 25 thru 28

24. & 1 thru 3) Petitioner contends that this case is infact "An Actual

25. Innoncence Case" were "Material Probative False Evidence" was used

26. to "Obtain" Petitioners conviction. Petitioner contends that the

27. "Key Words" in the State Courts denial for relief; "it's not a

28. claim of actual innocene"(Pg.32 lines 2&3)Prejuiced Petitioner.

1. Petitioner further contends that the Honorable California Supreme

2. Courts Justices, must not have believed Mr.Gills testimony just as

3. none of Petitioners jurors from all three of Petitioners trials,

4. did. And not only did this case present a "Prima Facie Case for

5. relief",( "Actual Innocence Calim" & I.A.C.) it was "Granted" an

6. "Order to Show Cause", on "Material Probative False Evidence",and

7. at Petitioners "Vital Evidentiary Hearing",were Petitioner contends

8. that the hearing Justice, not only failed to adequately read and

9. prepare for Petitioners hearing, the Justice also simply refused

10. to see Petitioners case for what it truly is, "An Actual Innocence

11. Case", and he simply refused to see that all of the "Inconsistant

12. Statements" and "Prejured Testimony", provided by Mr.Gill, during

13. Petitioners "Vital Evidentiary Hearing", clearly can not be said

14. beyond a reasonable doubt, "Would Not Have", created reasonable

15. doubt, in atleast "One" jurors opinion, concerning Petitoners

16. "Innocence"(Schlup Vs. Delo,513 U.S.298,115 S.Ct.851,130 Led.808)

17. "Aspecially", in a case were "Not One Pieace" of physical evidence

18. has "Never" been presented, that can even show Petitioner has

19. commited a "Crime" and a case thats clearly "Boiled Down" to a

20. "Credibility Contest". So the "Words" of the State Court Justice,

21. Petitioner contends, "That there was still other substantial

22. evidence and it would "Not Effect" the outcome at trial, "Is Meritless"..

23. Petitioner contends that "How" could that statement by the court

24. Justice,Pursuant to 1473(b)(1), a case that is "Based Around"

25. nothing more than "False Evidence", and "Once Again" "False

26. Evidence" is presented during a hearing, in a "Court of Law",

27. while "Under Oath", and to claim,  it would"Not Effect"the outcome

28. of a defendants trail???...would be a clear "Miscarriage of Justice".

1. (Herrera Vs. Collins,506 U.S.390.)Furthermore, Petitioner contends
2. that not just "Petitioner " but, Also "Petitioners Family Members",
3. had to "Suffer" through "Three" different "Aggravating Painfull"
4. trials, before the "Prosecution" and "Mr.Gill", could finally get
5. thier "Storys Straight", to convict Petitioner for a crime inwhich
6. Petitioner is trully "Innocent" of. And once again, Petitioner and
7. and his family suffered through another painful hearing, were
8. the prosecution presented "Nothing",...more than "Inconsistant and
9. Perjured Tesimony" from their "Only Witness" at Pititioners hearing,
10. who has clearly "Poisoned" his entire "Fruit Tree of Credibility".
11. Petitioner has suffered Constitutional Harm by an inadequate fact
12. finding procedure employed by the State Court Justice, to discredit
13. not just one but all five of Petitioners defense witnesses.
14. Petitioner contends that not only were all five witnesses "Credible"
15. prior to the start of Petitioners evidentiary hearing, thier
16. "Credibility" was just as strong in the beggining as it was at the
17. end of Petitioners hearing and, "Thier Testimony's", clearly
18. cannot be said beyond a reasonable doubt, that if Petitioners 2008
19. criminal trial jurors, had the opportunity to hear "Their Testimonys",
20. it would not have "Effected the Outcome" at Petitioners trial.
21. Therefore, Petitioner with the assistance from another inmate,
22. Respectfully submits Petitoners Habeas Corpus, challenging the State
23. Courts denial for relief at Petitoners 2021 evidentiary hearing,
24. contending that Petitioner was Prejuiced by an Inadequate Fact-
25. Finding Procedure, an Abuse of Discreation and Petitioner being
26. Denied the Fundalmental Fairness, under s 2254(a)(d)(2) "Praying"
27. that the Honorable Justices of this Honorable Courthouse, will
28. "Grant" Petitioner the Appointment of Counsel,"Grant" Petitioner

1. a "New Hearing", "Grant" Petitioner relief on Petitioners Prejuiced

2. Claim including Petitioners"Newly Discovered Evidence Claim" that

3. was produced during Petitioners 2021 hearing,( 2019 Text Message

4. between Mr.Gill and Kuldip Singh, one witness that the California

5. Supreme Court based Petitioners Order to Show Cause around), "Grant"

6. Petitioner relief from "Prejured Tesimony" provided by Mr.Gill at

7. Petitioners 2021 hearing and, anyother relief that the Honorable

8. Justices deem appropriate for this matter thats once again at hand

9. Thank You.

10.

11.

12.

13.

14.

15.

16.

17.

18.

19.

20.

21.

22.

23.

24.

25.

26.

27.

28.

Petitioner's Exhibit A.



APRIL BOELK
AUTOMATIC APPEALS SUPERVISOR

EARL WARREN BUILDING
350 McALLISTER STREET
SAN FRANCISCO, CA 94102
(415) 865-7000

## Supreme Court of California

JORGE E. NAVARRETE
CLERK AND EXECUTIVE OFFICER
OF THE SUPREME COURT

December 27, 2019

Michael Farrell
Senior Assistant Attorney General
P.O. Box 944255
Sacramento, CA 94244

Re: **S259387 (C090494) — In re Pardeep Singh on Habeas Corpus**

Dear Counsel:

The court has directed that I request an answer to the above referenced matter. The petition is enclosed as an email attachment. The answer is to be served upon petitioner and filed in this court on or before January 13, 2020. Petitioner will then have ten (10) days in which to serve and file a reply to the answer.

The answer should address the following issues: Whether as to the claims of actual innocence and ineffective assistance of trial counsel based on counsel's failure to call certain defense witnesses, petitioner has established a prima facie case for relief, such that this court should grant the petition for review, and transfer the matter to the Court of Appeal with instructions to issue an order to show cause. (Cal. Rules of Court, rules 8.500(b)(4), 8.528(d).)

Please be advised that the instant petition is a petition for review, and a ruling by the court is due on or before January 31, 2020. This request for an answer should be expedited by your office, and no request for extension of time is contemplated.

Very truly yours,

JORGE E. NAVARRETE
Clerk and
Executive Officer of the Supreme Court

By: J. Castillo, Senior Deputy Clerk

Enclosures
cc: Pardeep Singh, petitioner
Rec.

Petitioner's Exhibit B.

IN THE

# Court of Appeal of the State of California

**IN AND FOR THE**

**THIRD APPELLATE DISTRICT**

In re PARDEEP SINGH on Habeas Corpus.

C090494
San Joaquin County
No. STKCRFMISC20199294

## ORDER TO SHOW CAUSE

TO:   Ralph Diaz, Secretary of the Department of Corrections and Rehabilitation.

You are hereby ordered to show cause before the San Joaquin County Superior Court, to be heard when placed on calendar by that court, why relief should not be granted based on the use of materially probative false evidence as petitioner claims in ground 1, specifically as to the letters of Kuldip Singh and Swaran Singh Khaira.   (See Pen. Code, § 1473, subds. (a) & (b).)   The written return to this order to show cause is to be served and filed by March 12, 2020, or on such other date as determined by the superior court.

WITNESS THE HONORABLE VANCE W. RAYE, Presiding Justice of the Court of Appeal of the State of California, in and for the Third Appellate District.

Attest my hand and the seal of the court this 20th day of February 2020.

ANDREA K. WALLIN-ROHMANN
Clerk

By:   Jenna Swartzendruber
Deputy Clerk

Petitioner's Exhibit C.

1   TORI VERBER SALAZAR (SBN 213636)
2   District Attorney of San Joaquin County
    Anastasya Uskov
3   Deputy District Attorney
    222 E. Weber Avenue
4   Stockton, CA 95202
5   Telephone: (209) 468-2400
    Fax: (209)465-0371
6
7   Attorneys for the People

8   **THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**
    **COUNTY OF SAN JOAQUIN**
9

10

11  **THE PEOPLE OF THE STATE OF**
    **CALIFORNIA,**
12
                                        Case No. CR-FMISC-2019-0009294
13          **Plaintiff,**                      (SF102738C)

14          **vs.**                      **MOTION FOR EXTENSION OF**
                                         **TIME TO FILE RETURN TO**
15  **PARDEEP SINGH,**                   **ORDER TO SHOW CAUSE**

16
            **Defendant.**
17

18

19

20  TO THE HONORABLE ELIZABETH HUMPHREYS, JUDGE OF THE SUPERIOR

21  COURT OF SAN JOAQUIN COUNTY:

22
            The People respectfully request an extension of time of 60 days to file the Informal
23
24  Response in the above referenced matter.

25                          **STATEMENT OF THE CASE**

26          On July 9, 2019, Pardeep Singh (hereinafter petitioner) filed a petition for writ of

27  habeas corpus alleging one of the witnesses at his trial presented false evidence. The petition

28  included several declarations by individuals purporting to have spoken with the witness in the



TORI VERBER SALAZAR (SBN 213636)
District Attorney of San Joaquin County
Anastasya Uskov
Deputy District Attorney
222 E. Weber Avenue
Stockton, CA 95202
Telephone: (209) 468-2400
Fax: (209)465-0371

Attorneys for the People

## THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SAN JOAQUIN

**THE PEOPLE OF THE STATE OF CALIFORNIA,**

      **Plaintiff,**

      **vs.**

**PARDEEP SINGH,**

      **Defendant.**

Case No. CR-FMISC-2019-0009294
(SF102738C)

**MOTION FOR EXTENSION OF TIME TO FILE RETURN TO ORDER TO SHOW CAUSE**

TO THE HONORABLE ELIZABETH HUMPHREYS, JUDGE OF THE SUPERIOR COURT OF SAN JOAQUIN COUNTY:

The People respectfully request an additional extension of time of 60 days to file the Return in the above referenced matter. This Court granted People's last request for an extension providing the current due date of May 4, 2020. Counsel does not anticipate completing the Return by the current due date due to the COVID-19 emergency shelter-in-place order.

Petitioner's exhibit E.

FILED
SUPERIOR COURT-STOCKTON

2020 JUN 17  PM 1: 36

BRANDON E. RILEY, CLERK
SABRINA GARIBAY
BY_____
DEPUTY

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN

| | |
|---|---|
| In the Matter of the Petition of<br><br>PARDEEP SINGH<br><br>For Writ of Habeas Corpus | Case No. STK-CR-FMISC-2019-9294<br>(Associated Case No. STK-CR-FMISC-2020-2757)<br><br>ORDER ON MOTION<br>REQUESTING THE<br>APPOINTMENT OF COUNSEL |

TO:  PARDEEP SINGH, # G-21899; LOIS KEENAN OF THE OFFICE OF THE PUBLIC DEFENDER FOR SAN JOAQUIN COUNTY; CALIFORNIA ATTORNEY GENERAL; and SAN JOAQUIN COUNTY DISTRICT ATTORNEY:

On May 7, 2020, under case number STK-CR-FMISC-2020-2757, this Court appointed Lois Keenan of The Office of the Public Defender for San Joaquin County to represent Petitioner in this petition for writ of habeas corpus ("Petition"), which he filed originally on July 9, 2019 (under case number STK-CR-FMISC-2019-9294).  As fully explained in this Court's May 7, 2020 order, the Petition was filed originally at case number STK-CR-FMISC-2019-9294, but after the California Court of Appeal, Third Appellate District, issued an order to show cause returnable before this Court, which was filed in this Court on March 6, 2020, this Court assigned a new case number to the Petition, i.e. STK-CR-FMISC-2020-2757.  This Court's May 7, 2020 order instructed that all future filings in the instant writ matter in this Court be filed under case number STK-CR-FMISC-2020-2757.

On June 4, 2020, Petitioner filed a pro se "Motion Requesting for the Appointment of Counsel" under case number STK-CR-FMISC-2019-9294.

Petitioner's pro se Motion Requesting for the Appointment of Counsel is denied because Petitioner is represented by appointed counsel.  "As a general rule, parties who are represented in court by counsel of record are required to proceed in court through their counsel."  (*In re Barnett* (2003) 31 Cal.4th 466, 471.)  "[A] party who is represented by counsel has no right to be

1

Petitioner's

Exhibit F

FILED
SUPERIOR COURT-STOCKTON

JUL 30 2020

BRANDON E. RILEY, CLERK
BY: _____

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN

| | |
|---|---|
| In the Matter of the Petition of | Case No. STK-CR-FMISC-2020-2757 |
| PARDEEP SINGH | ORDER ON MOTION TO BE RELIEVED AS COUNSEL; |
| For Writ of Habeas Corpus | ORDER APPOINTING NEW COUNSEL; AND |
| | ORDER SETTING BRIEFING SCHEDULE |

TO:  PARDEEP SINGH, # G-21899; LOIS KEENAN OF THE OFFICE OF THE PUBLIC DEFENDER FOR SAN JOAQUIN COUNTY; ROGER FLORES; CALIFORNIA ATTORNEY GENERAL; and SAN JOAQUIN COUNTY DISTRICT ATTORNEY ("Respondent"):

On May 7, 2020 this Court appointed Lois Keenan ("Attorney Keenan") of The Office of the Public Defender for San Joaquin County ("Public Defender") to represent Pardeep Singh ("Petitioner") in his petition for writ of habeas corpus ("Petition").  On June 12, 2020, Attorney Keenan filed the instant Motion to be Relieved as Counsel, indicating the Public Defender has a conflict of interest from prior representation of a codefendant of Petitioner (in Case No. SF102738A).

Based on the foregoing, the Court relieves Attorney Keenan as counsel for Petitioner.

Counsel is appointed for Petitioner [Cal. Rules of Court, Rule 4.551(c)(2)] as follows:

Roger Flores
343 E. Main St. # 704
Stockton, CA 95202
(209) 944-9665

1



CORRECTIONAL TRAINING FACILITY
NORTH FACILITY INCOMING LEGAL MAIL

*PLEASE, PRINT, SIGN, AND INCLUDE BADGE NUMBER*

| ID | Name | Institution | City/State | Cell | Date |
|---|---|---|---|---|---|
| G21899 | SINGH | CHIEF, OFFICE OF APPEALS-DEPT. OF CORRECTIONS AND REHABILITATION | SACRAMENTO, CA | RB-227L | 6/6/19 L |
| G21899 | SINGH | COUNTY OF SONOMA-HUMAN SERVICES DEPT. | SANTA ROSA, CA | RB-227L | 6/25/19 C |
| G21899 | SINGH | NOTHERN CA INNOCENCE PROJECT, SANTA CLARA UNIVERSITY | SANTA CLARA, CA | RB-227L | 7/16/19 C |
| G21899 | SINGH | SUPERIOR COURT OF CA, SAN JOAQUIN | STOCKTON, CA | RB-227L | 7/18/19 L |
| G21899 | SINGH | SUPERIOR COURT OF CA-SAN JOAQUIN-CRIMINAL DIVISION | STOCKTON, CA | RB-227L | 8/16/19 L |
| G21899 | SINGH | COURT OF APPEAL-3RD APPELLATE DISTRICT-STATE OF CA | SACRAMENTO, CA | RB-227L | 9/17/19 L |
| G21899 | SINGH | BOARD OF PAROLE HEARINGS | SACRAMENTO, CA | RB-227L | 9/17/19 C |
| G21899 | SINGH | SUPERIOR COURT OF CA-SAN JOAQUIN-CRIMINAL DIVISION | STOCKTON, CA | RB-227L | 9/19/19 L |
| G21899 | SINGH | SUPERIOR COURT OF CA.-SAN JOAQUIN-CRIMINAL DIVISION | STOCKTON, CA | RB-227L | 10/2/19 L |
| G21899 | SINGH | COURT OF APPEAL-THIRD APPELLATE DISTRICT | SAC., CA | RB-227L | 10/2/19 L |
| G21899 | PARDEEP | SUPERIOR COURT OF CA-COUNTY MONTEREY | SALINAS, CA | RB-227L | 10/7/19 L |
| G21899 | SINGH | COURT OF APPEAL- THIRD APPELLATE DISTRICT | SACRAMENTO, CA | RB-277L | 11/19/19 L |
| G21899 | PARDEEP | SUPREME COURT OF THE STATE OF CALIFORNIA | SAN FRANCISCO, CA | RB-227L | 12/5/19 L |
| G21899 | PARDEEP | SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY | SALINAS, CA | RB-227L | 12/9/19 L |
| G21899 | SINGH | SUPREME COURT OF CALIFORNIA | SAN FRANCISCO, CA | RB-227L | 12/30/19 L |
| G21899 | SINGH | SUPREME COURT OF CA | SAN FRANCISCO, CA | RB-227L | 1/27/20 L |
| G21899 | SINGH | SUPREME COURT OF CA | SAN FRANCISCO, CA | RB-227L | 1/27/20 L |
| G21899 | SINGH | DEPT. OF JUSTICE-OFFICE OF THE ATTORNEY GENERAL | SAC., CA | RB-227L | 1/30/20 L |
| G21899 | SINGH | NORTHERN CA. INNOCENCE PROJECT | SANTA CLARA, CA | RB-227L | 1/30/20 C |
| G21899 | SINGH | SUPREME COURT OF CA, CLERK OF THE COURT | SAN FRANCISCO, CA | RB-227L | 2/13/20 L |
| G21899 | SINGH | COURT OF APPEAL- THIRD APPELLATE DISTRICT | SACRAMENTO, CA | RB-227L | 2/24/20 L |
| G21899 | SINGH | OFFICE OF THE CLERK, COURT OF APPEAL | SAN JOSE, CA | RB-227L | 2/25/20 L |

CORRECTIONAL TRAINING FACILITY

NORTH FACILITY INCOMING LEGAL MAIL

*PLEASE, PRINT, SIGN, AND INCLUDE BADGE NUMBER*

| ID | Name | Entity | City | Location | Date |
|---|---|---|---|---|---|
| G21899 | SINGH | LINDA STARR, STATE BAR #118789 | SANTA CLARA, CA | RB-227L | 3/2/20 C |
| G21899 | SINGH | OFFICE OF THE DISTRICT ATTORNEY | STOCKTON, CA | RB-227L | 3/9/20 C |
| G21899 | SINGH | OFFICE OF THE ATTORNEY GENERAL | SAN FRANCISCO, CA | RB-227L | 3/11/20 L |
| G21899 | SINGH | SUPERIOR COURT OF CA- SAN JOAQUIN | STOCKTON, CA | RB-227L | 3/12/20 L |
| G21899 | SINGH | SUPREME COURT OF CA | SAN FRANCISCO, CA | RB-227L | 3/25/20 L |
| G21899 | SINGH | OFFICE OF THE DISTRICT ATTORNEY, SAN JOAQUIN COUNTY | STOCKTON, CA | RB-227L | 5/7/20 C |
| G21899 | SINGH | COURT OF APPEAL, THIRD APPELLATE DISTRICT | SACRAMENTO, CA | RB-227L | 5/11/20 L |
| G21899 | SINGH | SUPERIOR COURT OF CALIFORNIA-SAN JOAQUIN | STOCKTON, CA | RB-227L | 5/8/20 L |
| G21899 | SINGH | COURT OF APPEAL, SIXTH APPELLATE DISTRICT | SAN JOSE, CA | RB-227L | 6/8/20 L |
| G21899 | SINGH | LAW OFFICE OF JENNIFER MOUZIS | SACRAMENTO, CA | RB-227L | 6/15/20 C |
| G21899 | SINGH | PUBLIC DEFENDER OF SAN JOAQUIN COUNTY | STOCKTON, CA | RB-227L | 6/15/20 C |
| G21899 | SINGH | SUPERIOR COURT OF CALIFORNIA- SAN JOAQUIN, CRIMINAL DIVISION | STOCKTON, CA | RB-227L | 6/17/20 L |
| G21899 | SINGH | SUPERIOR COURT OF CALIFORNIA- SAN JOAQUIN, CRIMINAL DIVISION | STOCKTON, CA | RB-227L | 6/22/20 L |
| G21899 | SINGH | OFFICE OF THE DA-SAN JOAQUIN COUNTY-MAIN OFFICE | STOCKTON, CA | RB-227L | 6/26/20 L |
| G21899 | SINGH | SUPERIOR COURT OF CA.-SAN JOAQUIN-CRIMINAL DIVISION | STOCKTON, CA | RB-227L | 6/26/20 L |
| G21899 | SINGH | LAW OFFICE OF JENNIFER MOUZIS | SACRAMENTO, CA | RB-227L | 6/29/20 C |
| G21899 | SINGH | SUPERIOR COURT OF CALIFORNIA-SAN JOAQUIN | STOCKTON, CA | RB-227L | 8/3/20 L |
| G21899 | SINGH | LAW OFFICE OF JENNIFER MOUZIS | SACRAMENTO, CA | RB-227L | 8/19/20 C |
| G21899 | SINGH | DISTRICT ATTORNEY'S OFFICE-SAN JOAQUIN COUNTY | STOCKTON, CA | RB-227L | 8/27/20 L |
| G21899 | SINGH | SAC. CRIMINAL DEFENSE LAWYER | SAC., CA | RB-227L | 9/1/20 C |
| G21899 | SINGH | LAW OFFICES OF JENNIFER MOUZIS | SACRAMENTO, CA | RB-202L | 12/7/20 C |
| G21899 | SINGH | SACRAMENTO CRIMINAL DEFENSE LAWYER: JENNIFER MOUZIS | SACRAMENTO, CA | FD-58L | 12/24/20 C |
| G21899 | SINGH | HEALTH CARE SERVICES-OFFICE OF THIRD LEVEL APPEALS | ELK GROVE, CA | RB-201L | 3/23/21 L |
| G21899 | SINGH | JENNIFER MOUZIS-ATTORNEY AT LAW | SACRAMENTO, CA | RB-201L | 4/19/21 C |

Conflict movie being Filed

Petitioner's Exhibit H.

# MOUZIS
## CRIMINAL DEFENSE

14 April 2021        **JENNIFER MOUZIS, ATTORNEY**
                1819 K STREET, SUITE 200, SACRAMENTO CA 95811

Pardeep Singh, G21899
Post Office Box 705
Soledad, CA 93960

              Re:    Response to Letter Dated April 10, 2021

Mr. Singh,

        I am in receipt of your letter dated April 10, 2021. This letter is intended to address your concerns stated therein.

        The prosecuting attorney, Ms. Uskov, has indicated that she is unavailable for a period of time due to maternity leave. I believe she becomes unavailable in June and will return in early October. During our discussions with the court, the judge was unsure whether she, or another judge, would be assigned to hear our case. We also discussed the necessity for an interpreter for one or more witnesses. Given Ms. Uskov's unavailability, a possible change in judges, and the need for an interpreter, an October hearing date was contemplated.

        We can object to setting the hearing out to October; however, it will ultimately be the judge's decision regarding when to set the hearing. One fact the court will consider is how long it will take a new Deputy District Attorney (DDA) to read the record and become familiar with the case. Given the delays by the court to become familiar with the case, the court will likely decide that a new DDA will require several months to become familiar with the case. The court will also factor in whether a new judge will be assigned as well as the availability of interpreters.

        I understand that this is a frustrating process, and I will object to a prolonged continuance on your behalf. I will make sure to bring up that this is an actual innocence claim that you have been in prison fifteen years already and are anxious to go home, and that you have pre-existing conditions that are profoundly serious. I just want you to understand the factors which will be considered by the court in deciding this issue.

        Please write me back with any further thoughts or concerns.

Sincerely,

Jennifer Mouzis

Petitioners Exhibit I.



**FILED**
SUPERIOR COURT-STOCKTON

MAR 1 8 2021

BRANDON E. RILEY, CLERK
BY _____
DEPUTY

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN

| | |
|---|---|
| In the Matter of the Petition of | Case No. STK-CR-FMISC-2020-2757 |
| **PARDEEP SINGH** | **ORDER** |
| For Writ of Habeas Corpus | |

TO: PARDEEP SINGH, # G-21899 ("Petitioner"), by and through his counsel, JENNIFER MOUZIS; the OFFICE OF THE SAN JOAQUIN COUNTY DISTRICT ATTORNEY, ("Respondent"); and the OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF CALIFORNIA:

Petitioner and a co-defendant were tried and convicted in San Joaquin County in March 2008 on seven counts of premeditated murder and one count of shooting from a vehicle, with enhancements for firearm use and great bodily injury, for their involvement in a drive-by shooting that occurred in May 2006. Four people in the group subjected to the drive-by shooting, who knew Petitioner, "positively identified defendants as the shooters." (*People v. Singh* (Cal. Ct. App., Mar. 8, 2010, No. C058988) 2010 WL 765453 at *1.) These eyewitnesses included Satwinder Gill (a/k/a John Gill), whose testimony is the focus of instant the petition for writ of habeas corpus ("Petition"), and "Gurdeep S., Raghbir S., and Belhar R.[,]" (*Id.*)

Petitioner was sentenced to an aggregate term of 170 years to life plus life with the possibility of parole. On direct appeal, the California Court of Appeal, Third Appellate District ("Third DCA") affirmed Petitioner's judgment of sentence. (*People v. Singh* (Cal. Ct. App., Mar. 8, 2010, No. C058988) 2010 WL 765453.)

Petitioner, proceeding as a self-represented litigant at the time, filed his Petition in this Court (at case number STK-CR-FMISC-2019-9294) on July 9, 2019, with numerous affidavits from people claiming, *inter alia,* it was common knowledge in the community that Petitioner was not the shooter in the incident leading to his conviction and that Petitioner did not have the character to commit these crimes. This Court denied the Petition on August 12, 2019. Petitioner filed a Petition with the Third DCA on September 24, 2019 (at case no. C090404). The Third DCA summarily denied the Petition on November 15, 2019. Petitioner filed a petition for review with the Supreme Court of California ("Supreme Court"). On February 11, 2020, the Supreme Court

granted Petitioner's petition for review and ordered the Third DCA to vacate its summary denial of the Petition dated November 15, 2019. The Supreme Court further instructed the Third DCA to issue an order to show cause ("OSC"), returnable before this Court. As instructed, the Third DCA vacated its summary denial and issued the OSC (filed in this Court on March 6, 2020, at currently assigned case number STK-CR-FMISC-2020-2757) ordering with regard to two of the affidavits attached to the Petition that was filed in this Court as follows:

> You are hereby ordered to show cause before the San Joaquin County Superior Court, to be heard when placed on calendar by that court, why relief should not be granted based on the use of materially probative false evidence as petitioner claims in ground 1, specifically as to the letters of Kuldip Singh and Swaran Singh Khaira (See Pen. Code, § 1473, subds. (a) & (b).) The written return to this order to show cause is to be served and filed by March 12, 2020, or on such other date as determined by the superior court.

(OSC, Third DCA, C090494, filed 3/6/20.) On remand, this Court appointed counsel, and Petitioner later substituted private counsel, Jennifer Mouzis. (Substitution of Counsel, 8/26/20.) Following grants of extension of time to both parties, the Court is now in receipt of Respondent's return to the OSC (filed August 24, 2020) and Petitioner's counseled denial/traverse (filed December 24, 2020). This Court extended its time to issue an order in this case to on or before March 24, 2021. (Order Extending Time to Issue a Ruling, 1/14/21.)

Kuldip Singh (hereinafter "Kuldip") provided the following affidavit, attached as Exhibit C to the July 2019 Petition, indicating Petitioner "has been falsely convicted" and attesting in pertinent part as follows:

> I came to California in the Summer of 2014 for a kabaddi tournament because I am an athlete and well known Kabaddi Player and to visit my brother-in-law's family, Pardeep Singh [Petitioner]. When I came to visit, I met up with Satwinder Singh Gill ([n]ickname John Gill), one of the key eye witnesses in the incident that occurred in May of 2006. Gill confirmed in person that he agrees and knows that Pardeep Singh is innocent and was not behind the shooting that occurred that night. Satwinder Singh Gill (nickname John Gill) stated to me that he knows what happened to [Petitioner] isn't justifiable, but he does not want to be punished for giving a false testimony during the trials. He claimed that he can't help by giving a testimony because that would put him in trouble with the law.
>
> John Gill provided these false testimonies because he did not want his ego, pride, and reputation to be hurt in front of the Northern Punjabi and Sikh community because he is a well-known figure. Gill knows that [Petitioner] did not commit any of the crimes, but gave false testimonies to keep his reputation clean because he wanted to show off how influential and powerful he is. He repeatedly plays the card, that he is not aware of the real shooters, but everyone in the community knows that he is aware of the real shooters.

(Petition 7/9/19 at Exh. C [Kuldip affidavit, notarized 5/2/19].)

Swaran Singh Khaira (hereinafter "Swaran") provided the following affidavit, attached under Exhibit C to the July 2019 Petition, indicating Petitioner was "falsely accused" and attesting in pertinent part as follows:

> In the summer of 2014, my son-in-law, Kuldip Singh, and I went to visit Satwinder Gill, also known as John Gill. John Gill agreed to meet with us one-on-one. During this in person meeting, John Gill established the truth that he is aware that [Petitioner] is innocent and was falsely framed into these accusations and charges. Gill stated that he would want to take back his false testimony that he had given within the trials, but fears if he were to tell the court he lied during the trials he will be punished. Gill is also aware of who the real shooters are, but constantly denies he knows who did the shooting.

> John Gill provided these false testimonies because he is well-known in the Northern California Sikh and Punjabi community. He has a high ego and reputation which he wanted to keep intact and show off to the community that he has the ability to influence and persuade the entire case by providing false testimonies.

(Petition 7/9/19 at Exh. C [Swaran affidavit, notarized 5/7/19].)

These two affidavits differ from the other affidavits Petitioner attached to his July 2019 Petition insofar as these two witnesses claim to have spoken directly to key trial witness, Satwinder Gill, also known as John Gill (hereinafter, at times, "Gill"), who told these witnesses sometime in 2014 that Petitioner was not the shooter but that he was afraid of the consequences of having provided false testimony at trial.

**Judicial Notice**

Respondent requests judicial notice of the transcripts from Petitioner's trial at case number SF103738B/SF102738C. (Return at 5:3-5.) Respondent further requests judicial notice of the Third DCA's unpublished opinion, *People v. Singh, et al.* (2010) C058988. (*Id.* at 5:10-12.) Judicial notice may be taken of records of any court of this state. (Evid. Code, § 452(d)(1).) On this basis, judicial notice of the transcript and Third DCA opinion is granted.

**Return**

Respondent asserts the affidavits submitted by Kuldip and Swaran constitute inadmissible hearsay and that "in order for [P]etitioner to meet his burden of proof, the declarants will need to testify at an evidentiary hearing." (Return at 6:17-18.) Respondent further argues that even if declarants testify, Petitioner "will still be unable to prove by a preponderance of the evidence that Satwinder Gill testified falsely at trial." (*Id.* at 6:19-20.) Respondent asserts its investigator "spoke with Satwinder Gill, who stated he had never recanted his trial testimony, he never told declarants that [P]etitioner was not the shooter, and that he remains firmly confident in his trial identification of [P]etitioner as one of the shooters." (*Id.* at 6:22-23 & Exh. E [investigator's

report].) On this basis, Respondent argues Petitioner "will be unable to carry his burden of proof at an evidentiary hearing" and asks that the Petition be denied summarily or "in the alternative to proceed to an evidentiary hearing to determine the credibility and admissibility of the declarants['] statements." (*Id.* at 6:25-7:1.) Respondent accepts that an evidentiary hearing is necessary to resolve the factual dispute about whether Gill testified falsely at trial about identifying Petitioner as a shooter and whether he admitted, to declarants Kuldip and Swaran, that he testified falsely at trial. (*Id.* at 15:4-5 & 15:22-26.)

## Denial

Petitioner admits that Kuldip's affidavit and Swaran's affidavit constitute inadmissible hearsay, which can be cured through their live testimony at an evidentiary hearing. (Denial at 2:4-9.) Petitioner denies Respondent's denial of the statements made in Kuldip's affidavit and Swaran's affidavit. (*Id.* at 2:15-3:18.) Petitioner argues that Gill's testimony was materially false, and Petitioner points to a number of "significant differences between [Gill's] account of events during the investigation and his descriptions at the preliminary hearing through the trials," (*Id.* at 16:9-10.) For example, Petitioner points to police reports showing Gill could not describe Petitioner's clothing at the time of the incident or the type of gun used (*id.*, Exh. E at 12; Exh. G at 6), but at the preliminary hearing and "after a video surfaced showing Petitioner the day" of the incident, "Gill was able to describe the clothing he 'recalled' seeing in detail (*Id.* at 16:17-19). "Gill also altered his testimony to include details with respect to the weapons used." (*Id.* at 17-19 [citing Exh. F (Preliminary Examination, 10/12/06) at 33:22-34:18].)

As most relevant here, at trial, Gill identified Petitioner as one of the shooters — Gill observed Petitioner in the rear passenger seat of the silver BMW involved in the drive-by shooting, observed Petitioner holding and firing a small handgun from that position, and described the clothing Petitioner was wearing at the time. (*Id.*, Exh. C at 728:9-23.) Petitioner argues that Gill was the prosecution's "lead witness" and the only witness to identify Petitioner as a shooter at the time of the incident. (*Id.* at 18:9-11 [citing Exh. E at 12].) The three other trial witnesses who identified Petitioner as a shooter at trial could not do so during the police investigation, and their testimony was impeached at trial. (*Id.* at 19:19-24.) Thus, Petitioner argues, Gill's testimony "was virtually the only damning evidence against Petitioner" in a case based solely on eyewitness evidence, and Gill's testimony is therefore material for purposes of this Petition. (*Id.* at 20:8-11.)

## Analysis

"A writ of habeas corpus may be prosecuted for ... the following reason[]:...False evidence that is substantially material or probative on the issue of guilt or punishment was introduced against a person at a hearing or trial relating to the person's incarceration." (Pen. Code, § 1473(b)(1).)

> [O]nce a defendant shows that false evidence was admitted at trial, relief is available under 1473 as long as the false evidence was material. ...[F]alse evidence is material if there is a reasonable probability that, had it not been introduced, the result would have been different. The remedial purpose of the statute is to afford the petitioner relief if the false evidence [was] of such

4

significance that it may have affected the outcome of the trial.... Thus, the crucial question is whether the false evidence was material—not whether, without the false evidence, there was still substantial evidence to support the verdict.

...

...[F]alse evidence is substantially material or probative if it is of such significance that it may have affected the outcome, in the sense that *with reasonable probability* it *could* have affected the outcome.... In other words, false evidence passes the indicated threshold if there is a reasonable probability that, had it not been introduced, the result would have been different. The requisite reasonable probability, we believe, is such as undermines the reviewing court's confidence in the outcome. ...We make such a determination based on the totality of the relevant circumstances.

(*In re Richards* (2016) 63 Cal.4th 291, 312-13 [citations and quotation marks omitted].) We apply these standards "to determine whether the false evidence was substantially material and probative on the issue of petitioner's guilt." (*Id.* at 313.) An evidentiary hearing is required to resolve this issue.

### (f) Evidentiary hearing; when required
Within 30 days after the filing of any denial or, if none is filed, after the expiration of the time for filing a denial, the court must either grant or deny the relief sought by the petition or order an evidentiary hearing. An evidentiary hearing is required if, after considering the verified petition, the return, any denial, any affidavits or declarations under penalty of perjury, and matters of which judicial notice may be taken, the court finds there is a reasonable likelihood that the petitioner may be entitled to relief and the petitioner's entitlement to relief depends on the resolution of an issue of fact. The petitioner must be produced at the evidentiary hearing unless the court, for good cause, directs otherwise.

(Cal. Rules of Court, 4.551(f).) This Court has considered the verified petition, return, denial, affidavits, and matters of which judicial notice has been taken. (*See id.*) The Court finds the Petitioner may be entitled to relief depending on the resolution of an issue of fact – i.e. whether Gill provided materially false evidence at trial implicating Petitioner as one of the shooters – given his trial testimony identifying Petitioner as a shooter versus the alleged statements Gill made to Kuldip and Swaran indicating Petitioner was not one of the shooters. Accordingly, this Court orders an evidentiary hearing in this matter.

## Ineffective assistance of counsel claims

Petitioner further asserts that this Court can review the ineffective assistance of counsel ("IAC") claims that Petitioner raised in his original Petition filed in this Court (at case number STK-CR-FMISC-2019-9294) on July 9, 2019. (Denial at 14:8-13.) This Court rejected those claims. (Order 8/12/19.) Petitioner argues that his "assertion of actual innocence and the claim that Gill's false testimony in conjunction with his counsel's ineffective assistance led to his unlawful conviction[,]" and that the IAC claims were raised in the Petition originally before this Court,

therefore he can "present additional evidence to support" his IAC claims in the instant denial. (Denial at 14:14-18.)

After the Petition was filed in the appellate courts, the only issue in the OSC remanded and made returnable to this Court was whether relief should be granted "based on the use of materially probative false evidence as petitioner claims in ground 1, specifically as to the letters of Kuldip Singh and Swaran Singh Khaira." (OSC, Third DCA, C090494, filed 3/6/20.) "[T]he same rules apply in ascertaining the meaning of a court order or judgment as in ascertaining the meaning of any other writing." (*In re Careaga's Estate* (1964) 61 Cal.2d 471, 475 [citation and quotation marks omitted].) "The language of a [writing] is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ.Code, § 1638.)" The language of the OSC confines the issue to be resolved as to whether relief should be granted based on materially probative false evidence claimed in "ground 1, specifically as to the letters of" Kuldip and Swaran.

Moreover, a habeas corpus proceeding is "limited to the claims which the court initially determined stated a prima facie case for relief." (*In re Clark* (1993) 5 Cal.4th 750, 781, fn. 16, *superseded by statute on other grounds as stated in Briggs v. Brown* (2017) 3 Cal.5th 808.)

> In issuing an order to show cause in such a proceeding, a court makes an implicit preliminary determination as to claims *within the order* that the petitioner has carried his burden of allegation, that is, that he "has made a sufficient prima facie statement of specific facts which, if established, entitle him to ... relief ....In issuing the order to show cause, the court also makes an implicit determination" as to claims *outside the order* that the petitioner has failed to carry his burden of allegation, that is, that he has failed to make a prima facie case .... That determination is not preliminary. It may, of course, be changed. But unless changed, it stands.

(*In re Sassounian* (1995) 9 Cal.4th 535, 547 [citation and quotation marks omitted].)

Petitioner cites *In re Lawley* (2008) 42 Cal.4th 1231, 1248, for the proposition that he can allege additional facts in his denial to support his previously rejected IAC claims, "so long as it does not expand his claims beyond those alleged in the petition." (Denial at 14:12-13.) In *Lawley*, the petitioner asserted claims of actual innocence and violation of due process for the prosecution's failure to disclose material exculpatory evidence to the defense. (42 Cal.4th at 1237.) The state Supreme Court issued an OSC limited to those two claims. The petitioner further argued in his denial that the prosecution engaged in misconduct by concealing evidence of a third party's involvement in the crime and then arguing to the jury that no one else besides petitioner had reason to commit the crime. (*Id.* at 1248.) However, that issue was rejected in petitioner's direct appeal and "was not within the scope of" the OSC. (*Id.*) In an effort to include the issue in the scope of the OSC, the petitioner argued the prosecution violated *Brady v. Maryland*, 373 U.S. 83, by failing to disclose evidence of a third party's involvement. (*Id.*) Still, the Court concluded the petitioner could not "expand his claims beyond those alleged in the petition *and made the basis of [the] court's order to show cause.*" (*Id.* [emphasis added].) The

IAC claims herein were not made a basis of the Supreme Court's OSC. Accordingly, *Lawley* is unavailing.

However, the rule in *Lawley* allowing for additional evidence on claims contained in the OSC does apply with regard to two additional affidavits provided to this Court, following return of the OSC, that implicate the issue of false evidence provided through Gill's trial testimony. One affidavit is provided by Gurmeet Singh, notarized October 6, 2020, and attached to the Denial herein as Exhibit P, filed January 28, 2021. Gurmeet Singh's affidavit, like that of Kuldip and Swaran, indicates Gill told Gurmeet Singh "that he knows" Petitioner "is innocent." (Denial, Exh. P.) The other additional affidavit is provided by Ajit Grewal, notarized October 8, 2020, and attached to the Denial herein as Exhibit Q, filed January 28, 2021. Ajit Grewal's affidavit is also similar to the affidavits of Kuldip and Swaran insofar as Ajit Grewal attests that Gill "stated that he did not actually know who fired the gun[.]" (Denial, Exh. Q.)

Accordingly, for the foregoing reasons:

**IT IS HEREBY ORDERED** that the Court grants an evidentiary hearing in this matter on the issue of whether Satwinder Gill's trial testimony constituted substantially material or probative false evidence as Petitioner claimed in ground 1 of his Petition based on the affidavits provided by Kuldip Singh and Swaran Singh Khaira and the additional, similar affidavits provided by Gurmeet Singh and Ajit Grewal.

Counsel for the parties shall appear for a coordination hearing on Monday, April 5, 2021, at 1:30 p.m., in Department 11A to discuss further scheduling and any proposed evidentiary hearing dates in this matter.

DATED: 3/18/21

JUDGE OF THE SUPERIOR COURT

Petitioner's Transcript Exhibit

1   that was substantially material or probative was introduced

2   at your trial back in 2008 and even though it's not a claim

3   of actual innocence, in effect you're saying I'm innocent.  I

4   didn't do this.  And certainly if that were the case, I would

5   not want you to spend another second in custody.

6       From the respondent's side, their perspective is there

7   was a trial.  The jury made a decision after hearing all of

8   the evidence from all of the witnesses and considering

9   inconsistencies, conflicts in the evidence, that six people

10  were shot, an additional person was shot at, that Mr. Singh

11  was convicted of seven counts of premeditated attempted

12  murder, and that there's been a sentence and their

13  perspective is the conviction is accurate and that justice

14  was done with respect to the victims that were wronged.

15      I'm looking at under California Penal Code section

16  1473(b)(1) whether it was false evidence that was presented

17  with a substantially material and probative on the issue of

18  guilt was that introduced in Mr. Singh's trial relating to

19  his current incarceration.

20      We'll go into this further here in a few minutes, but

21  material means there is a reasonable probability that if the

22  false evidence had not been introduced, that the result would

23  have been different.  The false evidence was of such

24  significance that it may have affected the outcome of the

25  trial.  That's In re:  Richards 63 Cal.4th 291.

26      As I consider the witnesses and the main thing that the

27  California Supreme Court granted an evidentiary hearing was

28  to have a judicial officer evaluate witness credibility.

1   That's not something that the California Supreme Court can

2   do.  It's not something the Third District Court of Appeals

3   can do and that's, frankly, why I would never want to be an

4   appellate judge because I enjoy hearings and witnesses and

5   hearing from people.  Certainly, this is very serious as far

6   as what all the witnesses have said.

7       I have considered CALCRIM 302 as far as considering not

8   only the number of witnesses, the Court has to decide what,

9   if any, evidence to believe.  Do not simply count the number

10  of witnesses who agree or disagree on a point and accept the

11  testimony of the greater number of witnesses.  On the other

12  hand, do not disregard the testimony of any witness without a

13  reason or because of prejudice or a desire to favor one side

14  or the other.  What is important is whether the testimony or

15  any other evidence convinces you, not just the number of

16  witnesses who testify about a certain point.

17      We heard from a number of witnesses during this hearing.

18  Counsel has gone back over their testimony in great detail.

19  I'm not going to go back into it in as much detail, but

20  certainly I considered your arguments, the inconsistencies

21  that you did establish.  I've considered the testimony of

22  Kuldip Singh Aujla.  I would disagree.  I do believe that he

23  has a horse in the race because he's related to Mr. Singh.

24  It's his brother-in-law.  And so yes, he does have a bias.

25  Does that mean he's absolutely not telling the truth?  It

26  could mean that.  But he does have a bias.

27      He is the brother-in-law of Mr. Singh.  He stated that

28  John Gill told him that he -- that John Gill gave false

1 the case, the crucial question is not whether without the

2 false evidence there was still substantial evidence to

3 support the verdict, but rather whether the false evidence is

4 of such significance that with reasonable probability it may

5 have affected the outcome of the trial." And they cite

6 In re: Wright, 78 Cal.App.3d 788, "There must be a

7 reasonable probability that had the false evidence not been

8 introduced, the result of the trial would have been

9 different."

10 Now, the Court has taken judicial notice of the entire

11 file. I've read the trial transcripts. I've read the

12 additional witnesses, which the Court of Appeals case, the

13 Third District Court of Appeals cites those other

14 eyewitnesses. I've also read the motive evidence that was

15 provided by the People concerning the events that took place

16 at the kabaddi tournament. I've also read the evidence

17 concerning the cell phone records. Certainly the cell phone

18 evidence was stronger as to Mr. Singh's co-defendant than it

19 was as to him, but also, as respondent points out, the

20 petitioner's alibi witness was impeached and further

21 impeached with the cell phone evidence.

22 Pursuant to 1473(b)(1), the Court does not find that the

23 petitioner has met their burden in establishing by a

24 preponderance of the evidence that false evidence was

25 introduced at the trial. Even if the Court, this Court or a

26 higher Court, were to find that false evidence was presented,

27 this petition would continue to fail because there was not

28 proof by a preponderance of the evidence at this hearing that

1   it would have been the type of evidence that would have been
2   material or probative on the issue of guilt against Mr. Singh
3   in that it would not have affected the outcome of the trial.

4       The Court does not find that it was substantial material
5   or probative in that it would not have affected the outcome
6   of the trial in that there were at least three other
7   witnesses that identified Mr. Singh as the shooter,
8   additional witnesses who identified the co-defendant as the
9   shooter.   There was a link established to them by cell phone
10  evidence and other evidence as well as a link established at
11  trial by Mr. Singh to the owner of that vehicle.   So at this
12  point the petition will be denied.

13      Thank you so much to both sides for presenting your
14  case.   Good luck to you, sir.

15              (Matter was adjourned at 11:51 a.m.)

16

17

18

19

20

21

22

23

24

25

26

27

28

1   involved in the case.  They were involved in their nephew

2   having been arrested, charged with a crime.  Mr. Gill I

3   believe contended that they were involved with hiding the

4   BMW.  But as far as their testimony, there's also bias.

5       Gurmeet Singh indicated he met at a Target warehouse.

6   He testified 2007.  Mr. Gill testified he believed it was

7   more recently.  He said that Pardeep Singh, or excuse me,

8   Mr. Gurmeet Singh said that John Gill had said that Pardeep

9   Singh and Kulwant Gadri were innocent.  Again, did not notify

10  anyone back at the time that that took place, if in fact it

11  took place in 2007.

12      Mr. Satwinder John Gill, certainly not a perfect witness

13  either.  There were inconsistencies in his testimony.

14  Whether or not he was changing his testimony to fit

15  objections, I don't know if that was taking place or not.

16  Certainly he had more animosity towards Ms. Mouzis.  That's

17  something you frequently see when people are cross-examined.

18  Does it mean he had an axe to grind?  I don't know that.  But

19  certainly there were inconsistencies in his testimony as well

20  and there were the same issues that there were times where --

21  he testified that there was times that he was threatened or

22  different things that happened and he did not notify law

23  enforcement.

24      That could be explained in a lot of ways.

25  Unfortunately, this is a situation, and I'm not making

26  any -- I'm not criticizing any culture or community, but

27  frequently the Court has seen, whether it be migrant farm

28  workers who don't speak English, whether it be the Punjabi

1   Q.   In context this text message is saying, (as read) "I'm

2   trying, this weekend there's a religious event in Stockton,

3   two witnesses from the 2006 shooting will be there.  I'll try

4   again.  And I'm working on it, big man," right?

5   A.   Right.

6   Q.   That's a friendly message to Mr. Aujla, correct?

7   A.   We always been friendly.

8   Q.   Yes.  And the only thing, according to your testimony,

9   he had been calling you about is correcting your testimony;

10  is that right?

11  A.   Well, he wanted my testimony to may be Pardeep.

12  Q.   And your response in this text message was saying the

13  witnesses to the 2006 shooting will be there and I'm working

14  on it, right?

15  A.   Well, I don't even remember this, if this is mine or

16  not, but I may have.

17  Q.   His response was, "Thank you, Bhaji," B-H-A-J-I, which

18  means brother, right?

19  A.   Bhaji means brother, yes.

20  Q.   "Please keep it try thanks again," right?

21  A.   Right.

22  Q.   Why did you tell him you would keep trying if you had

23  clearly told him --

24              MS. USKOV:  Objection, Your Honor.  This is

25  speculation and there's no message before this to provide a

26  foundation for these questions.

27              MS. MOUZIS:  Your Honor, he's indicated he did

28  write.

1                THE WITNESS:  No, I didn't say that.  I said

2  may have.

3                THE COURT:  Don't say anything at this point.

4  It's cross-examination.

5           Overruled.  You can answer.

6                MS. MOUZIS:  Q.  Why would you say that you're

7  going to an event with other witnesses from the 2006 shooting

8  and you're still trying --

9  A.  Ma'am, I don't even remember this text, so I don't even

10  know if this is my text or not.

11  Q.  But according to your testimony you said that you had no

12  pending business with Mr. Aujla, correct?

13  A.  Yes.

14  Q.  So there would be no reason for you to tell him you're

15  still trying, right?

16  A.  Well, I don't even know, you know, if this is mine or

17  not.

18  Q.  I'm just saying, your testimony is --

19  A.  Yes.

20  Q.  -- you had no pending business, right?

21  A.  Yes.  Yes.

22  Q.  So there would be no reason to say you're still trying,

23  correct?

24  A.  Yes.

25                 MS. USKOV:  Your Honor, this witness just said

26  he doesn't even know if this is his text message or not.

27                 THE COURT:  Understood.  Overruled.

28                 MS. MOUZIS:  Q.  There would be no reason for

1  you to specifically mention to other witnesses from the

2  shooting, right?

3  A.   Whoever write this, yeah, according to this, yes, but

4  this is not mine, I think.

5  Q.   Didn't you just acknowledge that you may have and you

6  probably did write this?

7  A.   No.  As far as I remember, I'm going back, I don't think

8  this is mine.

9  Q.   But you acknowledged this is your phone number, correct?

10  A.   Yeah, this is my phone number, yes.

11  Q.   And that's your name at the top, right?

12  A.   Yes.

13  Q.   Did anybody steal your phone during that time frame?

14  A.   No.

15  Q.   Anybody else write text messages from your phone?

16  A.   No.

17  Q.   Did you ask anybody to write Mr. Aujla a text message?

18  A.   Do you know there's technology you can put anybody's

19  number in phone number and do this?

20  Q.   But let's just say, this is in Mr. Aujla's phone, no way

21  that somebody else would be writing this text message from

22  your phone to his, right?

23  A.   I'm asking you, do you know there's technology you can

24  do that?

25  Q.   Mr. Gill, I don't answer questions.  I ask them.

26      There's no reason anybody else would have gotten on your

27  phone and written this text message, correct?

28  A.   Well, people who wants to put Pardeep off, they can do

1   Okay.  All right.

2                   MS. MOUZIS:  And he said that he had met with

3   investigators several times and that clearly was not

4   referenced in that statement.  So no, I did receive that,

5   that statement.

6                   THE COURT:  Okay.  Go ahead, please.

7                   FURTHER CLOSING ARGUMENT BY MS. MOUZIS

8                   MS. MOUZIS:  Yes, Your Honor.

9       First, my last argument to the Court was understandably

10  not well received.  I should not have brought up that

11  information gained in the pendency of the hearing from the

12  prosecution during my argument and I withdraw it and wish to

13  move on.

14                  THE COURT:  I don't remember what it was.  I'm

15  sorry.

16                  MS. MOUZIS:  The record will reflect what it

17  was.  And I do wish to withdraw it.

18                  THE COURT:  Understood.

19                  MS. MOUZIS:  My point is that the issue of

20  John Gill's credibility from day one was at issue.  It's

21  always been an issue.  Unlike any other witness in the case,

22  it's always been at issue.  The respondent's repeated

23  arguments during the pendency of this hearing has been that's

24  already been decided by the jury.  It's already been decided.

25  They heard that and it's been decided.

26      That was the smoke.  Everybody has always challenged

27  John Gill's version of events, his credibility, and what he

28  did in this case.  That did occur during the trial.  What did

1 | not -- that was the smoke.  These five witnesses who have no
2 | horse in the game, that's the fire.  That was not decided by
3 | the jurors.

4 | No one -- everyone questioned his credibility before,
5 | but they were unaware of these statements and what John Gill
6 | did outside the courtroom where he admitted to five
7 | individual people.  Several of them do not know each other,
8 | do not live in the community, have nothing to do with this,
9 | have nothing to gain, that he in fact did not see who shot.
10 | He did not see who was involved and then he knows my client
11 | and Mr. Gadri are innocent.

12 | Mr. Gill did indeed testify three times.  The Court is
13 | correct there were two trials.  There was another trial that
14 | was mistried, but he testified at the preliminary hearing.
15 | He testified at the first trial, which hung nine to three,
16 | and then Mr. Childs' sworn declaration and as an officer of
17 | the court, he represented he spoke with the jurors.  The
18 | jurors told him that they hung in the first trial nine to
19 | three, nine for not guilty, three to guilty, and they
20 | specifically told him that they did not believe Mr. Gill.

21 | By the third trial, and the third time that he had
22 | testified, Mr. Gill had perfected his testimony and even
23 | think the jury repeatedly asked for the statements and the
24 | statements of others who had spoken to Mr. Gill.  I believe
25 | every juror questioned, and there were several, I believe
26 | there were five or six, all referenced Mr. Gill in one way or
27 | another.

28 | In order to believe that Mr. Gill's statements to these

1   five witnesses are untrue, the Court would have to believe

2   that these five witnesses conspired together to fabricate a

3   case against Mr. Gill for the benefit of Mr. Singh, that five

4   people, two of whom really don't know Mr. Singh at all, not

5   at all -- they don't live in the area.  As Mr. Gill

6   testified, they are quite wealthy.  They live somewhere else.

7   They don't socialize.  They are not bound by any concerns of

8   reputation or loss of business or anything else -- would risk

9   going to jail or prison behind a perjury charge all in order

10  to say that Mr. Gill told them that Pardeep Singh is innocent

11  and he didn't see anything.  They have absolutely nothing to

12  gain.

13      The Court would have to believe that the five witnesses

14  serendipitously each named meetings that they had with

15  Mr. Gill that Mr. Gill did not ever admit to having until he

16  took the stand yesterday.  Mr. Gill, as the Court knows

17  because the Court has his statement, he admitted in that

18  statement to one meeting in 2014 with Aujla and Khaira.  He

19  never said he had a 2009 meeting.  I'm sorry, a 2012 meeting.

20  He never said he had a 2006 meeting with the Grewals.  He

21  never said he met with Gurmeet in a truck in a Target parking

22  lot.  He never said that until testimony yesterday.  But

23  these five people came in separately and all serendipitously

24  recounted meetings that Mr. Gill admits they had.

25      And serendipitously, each of those five people also

26  recounted conversations Mr. Gill said they had.  And these

27  five people, who again do not all know each other,

28  serendipitously all reference things about he said he had to

1   talk to his attorney.  Again, the Grewals do not know
2   Mr. Gill.  Not close, not personally, not at all.  And yet
3   they knew that he said, I have to go talk to my attorney.
4   And we know from Mr. Gill's testimony, immediately upon being
5   a victim in this case, he retained the services of an
6   attorney.  How would they know that?  How would anyone know
7   that?  But we know that's true.  They didn't know why he had
8   to do that, but they knew he had to do it because he told
9   them.

10      The only one saying otherwise is John Gill.  And yet
11   nothing he did thereafter indicated that what he said was
12   true, that the Grewals told him about these brutal murders in
13   India, indicating and implying that's what was going to
14   happen to him.  Nothing he did indicated that was true.  He's
15   been here since he's a teenager.  He knows that's a crime.
16   He didn't call the police.  He didn't refuse to meet with
17   anyone thereafter.  He didn't bring security.  He clearly has
18   plenty of money.  He didn't do anything consistent with that.
19   He kept meeting with people he knew would question him about
20   this.  And he wouldn't do that if he had already clearly told
21   them he's not going to change his story.

22      This is not a conspiracy between Gurmeet Singh who was
23   Mr. Gill's friend until Mr. Gill did something so
24   unconscionable and Ajit Grewal and Kuldip Grewal who don't
25   even know Mr. Gill.  I can understand arguments more if it
26   was simply family members of Mr. Singh.  I can understand
27   more if the -- if the Court were just to say it's just bias.
28   They are desperate.  They need their family member out.

1    Mr. Khaira feels sorry for his daughter.  Mr. Aujla feels

2    sorry for his sister-in-law.  But I fail to see how anyone

3    can question the credibility of two men who are entirely

4    independent in every way, who both independently say this is

5    what he told me and the minute somebody came up to me and

6    asked me about it, I don't know how they found out, but I

7    told him and I'm here because it's the right thing to do.

8    They had to travel to get here.

9          There was a lot of questioning of each of the witnesses

10   of why they didn't go and -- I think the suggestion was call

11   the police.  I objected to those questions.  That was such an

12   unfair characterization of what they should do.  They are

13   immigrants.  Even people born here in the United States I

14   think would have a hard time figuring out what to do with

15   out-of-court statements about a crime, particularly the ones

16   made after a conviction occurred, but even before that.  Many

17   people think, well, that's just hearsay, we heard John Gill

18   say that.  No, I didn't go report that, that's just hearsay.

19         Whether you live here or not, if you're not trained

20   legally, it is difficult to impossible to understand what you

21   would do with an out-of-court statement about a case.  You

22   certainly wouldn't go to the police and any questions to that

23   effect is misleading.  Would you hire an attorney?  That

24   presumes somebody knows, has the money to do that, and thinks

25   that it would be helpful.  That's an unfair question.

26   There's no indication they knew that that would be helpful or

27   that they could.

28         But what there was an indication of, as soon as they

1    were asked about it, they made a statement and they came to

2    court and they told the Court exactly what happened and they

3    did it in a demeanor that was entirely at odds with John

4    Gill's.  They were calm, they were confident and they, you

5    know, were willing to answer any question that was given to

6    them.

7        Those five witnesses did not engage in a conspiracy to

8    frame John Gill for perjury.  They don't -- none of them know

9    what the testimony was at trial.  They don't know how

10   controverted his evidence was constantly.  They don't know

11   all the questions that had been raised from day one.  All

12   they know is that when they met with John Gill and they

13   talked to him, John Gill told them that he didn't see what

14   happened and that my client and Mr. Gadri are innocent.  And

15   that he didn't want to -- John Gill didn't want to take it

16   back or couldn't take it back because he didn't want to get

17   in trouble or that he had to go talk to his attorney about

18   taking it back.

19       The petitioner requests that this Court look at all of

20   the inconsistencies of John Gill and compare that to all of

21   the consistencies of those five witnesses.  The petitioner

22   asks the Court to compare the motivation of John Gill to not

23   get in trouble for perjury and then compare the motivations

24   of those five witnesses who have literally no horse in the

25   race.  They had no reason they had to come.  They were not

26   required to make declarations or give statements.  They have

27   no motive to lie.  And the petitioner respectfully requests

28   that the Court find not only that Mr. Gill did provide

Case 2:22-cv-01411-DMC   Document 1   Filed 08/08/22   Page 128 of 165

1   materially false -- false information at the third trial, but

2   also find that it was material and that without it, a

3   different verdict would have been rendered.

4        The jury clearly, clearly relied on his information.

5   That is his testimony is really the only testimony they cared

6   about as evidenced by all of their jury questions to the

7   Court.  If they weren't directly asking for his testimony,

8   they were asking about somebody else's testimony as it

9   related to his.  With that, the petitioner submits.

10                  THE COURT:  Ms. Uskof.

11                  MS. USKOF:  Your Honor, you're not going to

12   ask any questions in between or --

13                  THE COURT:  I had already asked a couple of

14   questions that I had.

15                  MS. USKOV:  Okay.  I understand.  I thought it

16   was about documents.

17                  THE COURT:  Go ahead.

18                  CLOSING ARGUMENT BY MS. USKOV

19                  MS. USKOV:  Good morning, Your Honor.  So

20   today I'm going to briefly touch on the applicable law in

21   this hearing.  I'm going to review the crime itself.  I'm

22   going to review the testimony with the witnesses.

23        In summary, the evidence presented at this hearing was

24   not sufficient for petitioner to carry his burden, and his

25   petition must be denied.  Section 1473 authorizes a person

26   imprisoned or restrained to prosecute a writ of habeas corpus

27   a false evidence that is substantially material on the issue

28   of guilt or punishment was introduced against a person at a

CLOSING ARGUMENT BY MS. MOUZIS

1

2  MS. MOUZIS: Yes, Your Honor. Mr. Gill

3  agreed that he met with every one -- every one of the

4  petitioner's witnesses. He never denied that those meetings

5  existed. However, Mr. Gill at every turn would deny only

6  that which he felt would harm him in much the same way as he

7  denied that which he believed that Gurmeet Singh would say

8  that would harm him.

9  If the Court recalls, Mr. Gill testified that he met

10  with Gurmeet Singh and his friend Gurmeet Singh said that he

11  was going to -- Mr. Gill said Gurmeet Singh was going to

12  implicate himself or his family in a serious crime and

13  Mr. Gill told him to shut up so that he would not have to

14  turn him in intentionally. He knew of a violent crime and he

15  intentionally did something to obstruct justice in that case.

16  In this case he did the same thing. He admitted to the

17  meetings, but he would deny it at every turn the actual

18  statements made during the meetings. And he would turn

19  around and during his testimony he would say, "If you have

20  any evidence otherwise, I'll change." And he did repeatedly

21  through his testimony. He would change his testimony.

22  For instance, he said that he met with Mr. Khaira in

23  2008. That was impossible because Mr. Khaira was in India in

24  2008. And when he was confronted with that, even though he

25  had already testified very adamantly that he had met with him

26  in 2008, that my client's wife and the daughter met with him

27  and attempted to dissuade him as a witness. After he

28  realized that he said something false, that could be proven

1   to be false, then he said, oh, well, maybe it was somebody

2   else.  He clearly really had no true memory of that event or

3   was not testifying truthfully about that event and had no

4   issue changing it to make himself look like he was not lying

5   when he in fact was.

6        He spoke to Kuldip Singh Aujla.  He testified that

7   immediately after this shooting and thereafter he and his

8   family were barraged with threats both to his wife, his

9   daughter, his son.  They had to change his son's educational

10  pattern.  His house was shot up twice endangering the lives

11  of his wife and his daughter who were out front emptying

12  groceries, among other serious threats.  Yet he said that he

13  repeatedly, at least on three occasions, met with Mr. Khaira:

14  Once in his home, once in the temple, and once in his office.

15  And all it took was a phone call and Mr. Gill gave his

16  address and met with them.

17       Now, if he had, in fact, been threatened in the ways

18  that he described, it defies common sense that he would meet

19  Mr. Khaira three separate times and also meet with Mr. Aujla

20  in 2014.  The only explanation for those meetings is that he

21  was not in fact threatened by my client or anybody related to

22  my client.

23       In fact, at one point he said that my client called him

24  when the Court knows that every call is recorded and my

25  client was tried three times and his co-defendant was held on

26  six million dollars bail.  This was a case the DA's office

27  took quite seriously and had that occurred, no doubt my

28  client would have been prosecuted for that.

1    Mr. Gill also claims he spoke repeatedly to the DA's

2    investigators, something contradicted directly by the

3    district attorneys sitting at the desk next to me who said

4    they never took statements from Mr. Gill explaining why they

5    had not given the petitioner's statements.  So either

6    Mr. Gill is not telling the truth or the prosecution is not

7    telling the truth.

8    Mr. Gill acted entirely and consistently with the idea

9    that he had been threatened by my client or people on his

10   behalf.  It is the petitioner's belief that those actions are

11   improperly attributed to my client and his family or his

12   friends that actually the blame for those lies elsewhere,

13   with his friend Mr. Dhami who was federally indicted for

14   international drug dealing and was a short time later

15   executed in his home and his wife was shot.  But Mr. Gill

16   persists in saying these things to try to justify why he has

17   testified against my client now four times stating he was the

18   shooter in the 2006 Sansar shooting, when in fact he has told

19   five people that my client did not do it.

20   So look at the individuals who are now saying that John

21   Gill recanted the testimony.  We have Kuldip Singh Aujla.

22   Now, the Court can say, well, Mr. Aujla is a family member so

23   maybe he is motivated to say something on behalf of

24   Mr. Pardeep Singh and Mr. Aujla did appear to have difficulty

25   testifying, whether it was from the first interpreter or the

26   second.  Quite frankly, I think it was his testimony and

27   difficulty stemmed more from his lack of aptitude than any

28   kind of deceit.  I don't think based on his testimony he's

1   capable of deceit and yet he was quite clear what John Gill

2   said and what he said was that Pardeep Singh did not commit

3   this crime, which explains why when his sister-in-law called

4   him in 2019 and said the case was going to be reopened, he

5   then called John Gill and said, "This is your time to tell

6   the truth because the case is being reopened." And John Gill

7   responded, "I'm trying. I'm going to be in Stockton. The

8   Neki and Bhinda will be there." And nothing about why are

9   you asking me this again. I told you no the first time.

10  That text message does not indicate somebody, A, who is

11  afraid of Mr. Aujla or his family or friends or somebody who

12  he has told adamantly that he would not change his testimony.

13  In fact, that text message indicates somebody who says, yes,

14  I am going to help you. I'm so sorry for the delay. That

15  text message is physical proof and evidence that however

16  simple Mr. Aujla may be in his testimony, that testimony was

17  truthful.

18      Now, Mr. Aujla, unlike the question asked by the

19  prosecution of him, never said he never talked to Mr. Gill

20  after the 2014. That was not in evidence. And Mr. Gill said

21  they in fact did talk after 2014, so they did continue to

22  have conversations.

23      Now, one must wonder why Mr. Gill would continue to

24  speak to people about this subject if he very clearly told

25  him that he was telling the truth and that it will never

26  happen again. One must also wonder why he would hire an

27  attorney for no reason. He can't explain why he would do

28  that and that that attorney would hire an investigator. They

1    would assist in the prosecution by at the very least

2    procuring a gun and giving it to the prosecution.

3         In 25 years of practice I can name one case where a

4    witness victim has hired an investigator to investigate the

5    case and that is this one.  That is bizarre behavior for

6    somebody who says they are simply a victim in the case.

7         Now, it is interesting that there are six people who

8    were actually shot and not a single one of them has had to

9    hire an investigator, received threats, can't go to community

10   meetings because they are constantly questioned.  And some of

11   those did do identification.  Some of those did testify.

12                THE COURT:  Those are all facts that are not

13   in evidence at this hearing and we didn't hear from those six

14   individuals.  We don't know if they were threatened or not

15   threatened.

16                MS. MOUZIS:  However, it is telling that they

17   are not here.  There's no allegation against them that they

18   fabricated their testimony.

19                MS. USKOV:  Objection, Your Honor, there is no

20   allegation here, so there's no reason for them to be here.

21   This is completely irrelevant to this hearing.

22                THE COURT:  I understand.

23                MS. MOUZIS:  My point is there is no

24   allegation against the other witnesses and yet according to

25   John Gill himself, first he said he had to decline his social

26   activities as a result of the actions of my client and the

27   people around him.  And then he testified under the

28   prosecution's questioning that either every weekend or every

1   other weekend he still went out into the community and yet

2   every time he goes into the community he is questioned on

3   this subject.

4       One must wonder if he did nothing wrong, if he didn't

5   tell these five witnesses that he didn't see what happened,

6   why over 15 years he would be questioned where he goes, which

7   is his testimony in this hearing.

8       Then we have the testimony of Swaran Singh Khaira.  He

9   is also family.  However, I think the Court can judge the

10  demeanor of individuals, which I will say to a person in

11  petitioner's witnesses, was calm, collected, certain, and did

12  not show any signs of deceit at all.  If they were wrong,

13  they changed their statements and admitted it.  But they did

14  not show the same kind of combativeness and attempts to speak

15  over the questionnaire, that Mr. Gill did repeatedly during

16  his testimony.

17      Mr. Khaira got up there and he testified about a 2012

18  meeting that Mr. Gill acknowledges.  In fact, Mr. Gill

19  acknowledges even one more meeting with Mr. Khaira.  And he

20  testified about 2014 meeting with Mr. Khaira and Mr. Aujla

21  where Mr. Gill called the meeting.  They went to Mr. Gill's

22  office that clearly Mr. Gill did not have to let them in.

23  And any testimony that his culture requires that they meet no

24  matter what, it is undermined by the fact that he did not

25  take the meeting with Swaran.

26      Now, his explanation is, well, within days Swaran -- we

27  thought Swaran was perpetrator potentially.  Well, there's

28  absolutely no evidence that Mr. Gill went and made a

1  statement to anybody about that.  There is no reason to
2  believe that -- actually, there's no evidence that up until
3  now Mr. Gill has ever said that or thought that.  But more
4  importantly, how is that any different than meeting with
5  Mr. Khaira and Mr. Aujla after Mr. Gill believes that they
6  were behind two drive-by shootings at his home.  One where
7  his daughter and wife were outside and directly put in front
8  by the bullets.

9  How -- he testifies that he still could not take their
10 meeting despite that, but did refuse Swaran's meeting or did
11 not meet with Swaran because he was a potential suspect in
12 the case makes no sense.

13 What does make sense is that he did meet with them,
14 because he did want to discuss it with them and tell them,
15 well, I need to talk to my attorney, but, yes, I'll think
16 about doing this because I didn't see them and I know they
17 are innocent.  Otherwise, meeting with them once, let alone
18 repeatedly, makes no sense at all telling them repeatedly
19 after being very self-assured about the fact he clearly told
20 them, I'm not changing my testimony.  I did see them.  Why
21 would he then meet them multiple times?  We know he could
22 refuse meetings culturally and yet he did not.

23 Then we have the two brothers, Guldip and Ajit Grewal.
24 There is nothing to indicate that he did not want to take
25 that meeting.  Yet, he also said before that meeting that he
26 had been threatened.  And yet, he goes -- and these are two
27 people that don't live around here.  They don't associate
28 with my client.  They certainly aren't implicated in any

1   attempts to threaten Mr. Gill, but except for Mr. Gill says,

2   oh, yeah, but they did during our meeting, and of course

3   nobody can prove that or disprove that, but that's what he

4   says.  Why would these men have nothing to do with Mr. Gill,

5   they don't live in this area, they don't socialize with them,

6   why would they say he admitted he didn't see who did it if in

7   fact he didn't?

8       It didn't help their nephew.  Their nephew still went to

9   preliminary hearing and still his case was dismissed as a

10  matter of a decision apparently by the district attorney, not

11  because of John Gill, so that statement did not benefit them.

12  It did end up benefitting Jasvir Grewal so why would they say

13  it.  Particularly why would they say it 15 years later on

14  behalf of somebody they don't know.  On behalf of family they

15  don't know.

16      There would be no point in doing that and why their

17  demeanor and their rendition of what happened just made

18  sense.  They said, what do you have?  What did you see?  He

19  said, well, I didn't see you did it, but I have these phone

20  records which the Court knows from the record that there were

21  phone records used to tie individuals to this crime, in

22  particular Mr. Singh.  How would the Grewals know that if it

23  were not for Mr. Gill who was very involved in the

24  investigation in the prosecution of this case who claims that

25  he met with the investigators multiple times.

26      And then we have Mr. Gurmeet Singh and Gurmeet was a

27  friend, although John Gill did try to distance himself from

28  his friendship with Gurmeet.  He admitted to bringing him

1   warm milk and lunch.  That is not something you do for an

2   enemy and it's not something you do for anyone.  We certainly

3   know he wouldn't do it for Swaran.  And yet he meets him in a

4   parking lot.  And when asked why would he do that if all

5   these people friend him.  Oh, I had a bunch of people there.

6   No, he got into a truck with Gurmeet.  He didn't have a bunch

7   of people there to protect him.  He got into a truck in a

8   parking lot with him.  And he said there are restaurants

9   across the street and all these ridiculous things that would

10  make absolutely no difference if Gurmeet was actually a

11  threat to him.

12      And Gurmeet who again had no horse in the race, he was

13  friends with all of them, also said that Pardeep (sic)

14  admitted to him that -- Pardeep Singh and Mr. Gadri were

15  innocent.  Why would Gurmeet say that.  He was equally

16  friends with everyone so why -- why alienate the most

17  powerful man of them all.  Mr. Gill made very clear that

18  he -- I asked something.  I said, well, you said your

19  reputation went down.  He said -- I did not say my reputation

20  went down.  He also said he was an important or prominent

21  person in their community and that he socializes with people

22  every other weekend or every other weekend.

23      It is clear that Mr. Gill holds a position of honor and

24  privilege in their family.  The record is replete with

25  references about how much money he has.  How much money he's

26  donated to kabaddi tournaments.

27          MS. USKOV:  Objection, Your Honor, I don't

28  believe there's anything in the record about how much money

1  he has or how much he has donated to kabaddi tournaments.

2          MS. MOUZIS:  That's incorrect.  He said he was

3  the chief guest and the chief sponsor at this particular

4  kabaddi tournament as well as every other kabaddi tournament

5  he's ever been to.  He's been to the UN, France, all over

6  Europe.

7          THE COURT:  Hold up.  The record speaks for

8  itself.

9          MS. MOUZIS:  Why would somebody like Gurmeet,

10  a simple truck driver, alienate a very prominent man in their

11  community if in fact he wasn't telling the truth.

12      He claimed to not know my client's father-in-law.  He

13  kept acting like he didn't know his name.  Oh, is that his

14  name?  Oh, do you mean his father-in-law?  He met with them

15  three times.  How does he not in a small community to which

16  he testified to, we have a very small close-knit community.

17  We all know each other.  It's fairly small.  And, yet, he

18  tried to distance himself and claimed to not know his name

19  and yet he met with him three times.  That makes no sense.

20  Why would he be dishonest about that other than the fact he

21  did meet with him and he does not want to admit the purpose

22  of those meetings was to say, oh, yes, I'm sorry, I testified

23  wrongly.  I will not take it back now because I'll get in

24  trouble with the law or I need to ask my attorney.  There is

25  no other reason for him to deny knowing him when he clearly

26  does.

27      Then he testified about his involvement with the

28  community and again for reasons completely -- that make no

1    sense other than the fact that he felt somehow it benefited

2    him as a witness.  He -- well, first he said I've been

3    threatened so many times if I was in danger and I had to

4    reduce my activity in the community because he wanted the

5    Court to believe that he really was threatened all these

6    times and it was all because of my client and his goons.

7         And yet, when asked about it later, he said that his

8    reputation was not harmed and then he told the prosecution,

9    oh, yeah, I do things in my community all the time.  Every

10   weekend, if not every other weekend I do it.  And all every

11   time this issue comes up.  But that he could not move up.  He

12   couldn't move up in the community because of this.  And yet,

13   he denies that the reason it comes up all the time at

14   weddings, at the temple, and everywhere else he goes is

15   because it is a small tight-knit community and he told five

16   people that Mr. Singh is innocent and yet he is allowing the

17   testimony to stand that he testified he is guilty.

18        And when given the opportunity in 2019, that text

19   message is in 2019 when this petition was being filed in

20   pro per by my client, he was given the opportunity to do what

21   he said he would do for the last five years, which is take it

22   back.  I'll just go talk to my attorney and I'll take it

23   back.  Aujla contacted him and his response is "I'm coming to

24   Stockton."  Bhinda will be there, Harnek will be there.  I'm

25   sorry that took so long and yet he didn't do it.

26        This is why when he goes into the community it's brought

27   up every time because that community knows.  They know he

28   lied.  They know he could have taken it back.  They know he

1 didn't.

2    This witness repeatedly testified that the threats were
3 attributable to my client or his family despite the fact that
4 there's absolutely no evidence. He even admits there's no
5 evidence of that. There's no evidence that the two shootings
6 at his house were related to my family. There's no evidence
7 that when he goes into these community events that being
8 confronted is related to my client's family, other than the
9 fact that he lied about my client and people in his community
10 were mad that one of their community members were sentenced
11 to 170 years to life for something he did not do.

12    There is evidence, however, that Mr. Gill -- Gill's
13 friend was indicted with seven other people for international
14 drug dealing using a trucking company and then that resulted
15 in his close friend Mr. Dhami being executed in his home by
16 shooting and his wife being shot as well. So it is not
17 beyond the imagination that perhaps because Mr. Gill keeps
18 those friends that may be why his house was shot up twice.

19    Again, all Mr. Pardeep Singh's calls, letters, they are
20 all recorded. None of it was attributable to him. So one
21 must wonder who it is attributable to. It is not my client
22 nor is it his family. Yet, Mr. Gill persists in saying that,
23 not only here, but in the community. Why does he say it? He
24 says it to justify the unjustifiable.

25    He claims to have not gone to the police because they
26 said it wouldn't matter. I can't even imagine a police
27 officer saying that they should not report intimidation of a
28 witness and that if you don't have solid evidence that you

1  can't do it. Solid evidence is his statement saying I was in
2  a place and this happened. I'm a witness in a trial and they
3  told me they murder people as they are also asking me to
4  change my testimony. That's solid evidence. And yet he knew
5  how to contact police. He has a neighbor who's a police
6  officer and he said he never did that.

7      One interpretation is he didn't know how. That's
8  unreasonable in light of the fact that he said he does know
9  how. He has a neighbor who is a police officer and he said
10  he talked to the DA's investigators multiple times. And we
11  have no reports from those investigators saying that he
12  actually did that. The other interpretation is he never
13  talked to DA's investigators. He never talked to a neighbor
14  and he never contemplated calling officers at all because it
15  never happened and he knew that those two drive-by shootings
16  were not related.

17      In fact, he said, they were thoroughly investigated and
18  they were close to arresting someone, but it wasn't my client
19  or anybody related to my client. Yet, he persisted in this
20  courtroom in trying to tell this Court that it was. Again,
21  to make himself out to be a victim and to deflect from the
22  fact that he had committed perjury four times as of today.

23      The petitioner is aware that this Court will go through
24  the record before making its ruling. The petitioner requests
25  that the Court look through Mr. Gill's testimony and look at
26  all of the inconsistencies that he testified to. Everything
27  from the community meetings to when he first met with
28  Mr. Khaira. He repeatedly testified to one thing. Then he

1    testified to another.  As soon as he heard an objection, and

2    the way the Court ruled, he would modify his statements so

3    first he says, those aren't my text messages.  Then he says

4    maybe they are.  Then he goes, yeah, they probably are.  And

5    then when the prosecution starts objecting saying foundation,

6    no, I don't think so.  Then he's like, no, never mind, those

7    are not my text messages.  Yeah, I wouldn't say that.

8         Even after testifying, as I say, yes, I would write

9    that.  Bhalwaan Ji, yeah, I would write that, too.  As soon

10   as he heard the objections and how the Court was going, then

11   he denied it altogether.

12        Those are the actions of somebody who commits perjury.

13   Somebody whose ethics are transactional.  Somebody who

14   doesn't respect this Court, doesn't respect the system, and

15   doesn't care what happens as a result of his actions.

16        That same conduct was not found with Mr. Aujla.  It was

17   not found with Mr. Khaira.  It was not found with either of

18   the Grewals or Gurmeet Singh.  None of that behavior existed

19   in any of their testimonies.

20        There are five people, three of whom are not related to

21   my client in any way, who all say that Mr. Gill said my

22   client is innocent.  He did not see my client commit this

23   crime, which absolutely means that at the preliminary

24   hearing, at the first trial and at the third trial, and here

25   today, he committed perjury.  It makes a hundred percent

26   sense when those witnesses came in and said, yeah, he told me

27   he had to go talk to his attorney.  I don't know why.  I

28   don't know why he said that, but he had to go talk to his

Case 2:22-cv-01411-DMC   Document 1   Filed 08/08/22   Page 143 of 165

1  attorney.  And that is -- for somebody who committed perjury,

2  who got an attorney from the very beginning, that makes

3  sense.  They don't know why it makes sense, but the Court

4  knows why, petitioner knows why, and even the respondent

5  knows why.  He has to go talk to his attorney because he has

6  to see what his liability is for committing perjury.  Can he

7  in fact take back his testimony without being thrown in jail?

8      I ask the Court to look at all of those inconsistencies

9  and look at the five witnesses, again, three of whom have

10  nothing to do with my client and consider why all five would

11  jeopardize putting themselves in custody in person for

12  perjury or whether in fact they came in here and told the

13  truth about what Mr. Gill told them.

14      As to materiality, the petitioner is aware that in order

15  to prevail on this petition, they must show that it would

16  have made a difference had that testimony not been introduced

17  into the trial.  The petitioner submits that Mr. Gill was the

18  first one as the prosecution pointed out or the respondent

19  pointed out to identify my client and Mr. Gadri.  Other

20  witnesses indicated and confirmed that Mr. Gill at the scene

21  yelled out who it was and told them.  Other witnesses went

22  from not being able to identify anybody to being able to

23  identify somebody during the course of the case when they

24  could not before.  Mr. Gill went from not being able to

25  identify clothing to being able to identify clothing, not

26  being able to identify a gun to being able to identify a gun.

27      The point is -- and Mr. Gill hired an investigator who

28  assisted the police by gathering evidence, taking statements.

1   Without his testimony there would not have been a conviction

2   of Mr. Singh and we know that because I've asked the Court to

3   make -- the Court has taken notice of the entire record.  If

4   the Court looks at the declaration of Mr. Childs, it

5   indicates that he personally spoke -- there's a written

6   declaration signed in there that he spoke with the jurors in

7   the first trial.  It hung nine for not guilty, three for

8   guilty.  And the issue was they did not believe John Gill's

9   testimony.

10          Even if the Court does not credit that declaration, we

11   know from the third trial that every single jury question

12   referenced John Gill's testimony, often asking for the entire

13   testimony or parts of the testimony.

14          If the Court looks at all of the testimony in the trial,

15   it is clear that John Gill's testimony was important, but

16   that is undeniably true when the Court considers that the

17   jury in every communication with the Court asked about John

18   Gill's testimony and asked to see it.  The closing argument

19   of the district attorney relied heavily on Mr. Gill's

20   statements and testimony and that the jury picked it up and

21   that is what they relied on.  Had Mr. Gill not testified,

22   Mr. Singh would not be convicted in the third trial.

23          The respondent indicated in one of our motions that all

24   she does is habeas petitions.  That's all she does.  It is

25   nearly unbelievable to me that there are that many habeas

26   petitions in one county.  It's disturbing.  I come from a

27   county with many more people --

28          MS. USKOV:  Objection, Your Honor, what's the

1   relevance?

2              THE COURT:   That's not relevant.   Sustained.

3              MS. MOUZIS:   It concerns me that Mr. Singh was

4   tried three times with --

5              THE COURT:   He was tried twice.   The second

6   trial was a mistrial declared prior to any testimony due to a

7   conflict of interest by Mr. Casenave, so two trials.

8              MS. MOUZIS:   Mr. Gill's testimony and his

9   involvement in this case had issues from the very beginning.

10  The jury picked up on that.   Both in the first case and in

11  the third case, which is the most --

12             THE COURT:   One minute.   You can come back to

13  it tomorrow if you want.

14             MS. MOUZIS:   That's all I have.

15             THE COURT:   We need to break for the today.

16  We've got to have -- got to be done by 4:15 at the latest.

17             THE BAILIFF:   Yes, they are calling me.

18             MS. USKOV:   Tomorrow morning I'll do my

19  closing argument and then we'll reply?

20             THE COURT:   Yes.

21             MS. USKOV:   Just so I can let Mr. Gill know he

22  needs to be here on Friday.   Does the Court anticipate

23  needing another full day in order to review the evidence and

24  issue a ruling or could we expect something tomorrow

25  afternoon?

26             THE COURT:   At this point evidence is

27  complete, so Mr. Gill's released.

28             MS. USKOV:   Okay, I understand.

1   irrelevant.

2           THE COURT:   Well, it's interesting how the

3   rules have reversed.   Typically it would be an objection as

4   to burden shifting by the defense against the DA.   I think

5   you can certainly argue that both sides could have called

6   other witnesses, but certainly you have the burden of proof.

7           MS. MOUZIS:   I have the burden of proof.

8           THE COURT:   Objection noted.   Go ahead.

9           MS. MOUZIS:   However, the respondent -- unlike

10  in a criminal case, that in a criminal case the defense has

11  no obligation at all and that's where burden shifting comes

12  up.   In this instance the respondent can call a case, did

13  call a case, and a criminal, once they call a case, then you

14  can comment on their failure to call witnesses.

15          In this case I believe it's clear the respondent failed

16  to call witnesses they could have and should have called.   If

17  they wanted to corroborate Mr. Gill's and his insistence that

18  he has always claimed to everyone that Mr. Gill, Pardeep

19  Singh is guilty and he saw the shooter and they did not do

20  that.   Yet, they clearly had the ability to.

21          These individuals were not serendipitously asked to

22  prepare a declaration as if somebody just came to them and

23  said we need you to lie, can you write something down.

24  Again, their argument relies on the fact that Mr. Singh knew

25  what to do with these statements.   He did not.   At some point

26  he got his cellmate who did and you see the filing written in

27  pencil and paper and went to the appellate court and got

28  denied, but it went to the Supreme Court and it was granted.

1   There was no serendipity about it.

2       In 2019 it got traction and suddenly these statements,
3   these things that they knew that were out there needed to be
4   written down.  That's when after John Gill said in 2014 I'm
5   going to -- I'll help you.  I know he's innocent and that's
6   when Aujla goes back and says -- calls him and says, okay,
7   here's the time and the case is opening.  He writes back,
8   "I'm working on it, brother.  I'm working on it.  I'm going
9   to Stockton with two people who were also witnesses in 2006.
10  I'm going."  Yeah, Aujla doesn't know who they are.  But
11  Mr. Gill definitely knows who they are.  "I'm going with two
12  witnesses.  I'm working on it, brother, sorry for the delay.
13  I'll keep trying."

14      That last statement, by the way, John Gill denied that
15  last text knowing what it meant, but Mr. Aujla had no problem
16  interpreting it.

17      Mr. Gill also admitted yes, that first, no, it's not me.
18  Well, yeah, that might be me.  Yeah, yeah, it's probably me.
19  And then after objections and thought it might not come in,
20  oh, yeah, no, I would have written that different.  Even
21  though when we went word by word, yeah, I would use that
22  word.  Yeah, I would use that word.

23      That text is physical proof that confirms what Aujla and
24  Khaira said.  Yeah, he said he would help and then they came
25  to him in 2019 and said now's your chance.  Oh, yes, brother,
26  big man, I'm going to Stockton.  Those witnesses will be
27  there.  And then Aujla responds back, "Did you talk to them?
28  What did they say?"

Text Message

Page 1 of 2

**10:07**

From **John Gill U S A** To KULDEEP SINGH AWLA

iMessage
Mar 11, 2019, 2:37 PM

"Ssa"
an acronym for
"Sat sri akal";
a formal punjabi
sikh greeting

"Ji"
a sign of respect
when speaking to
one another in
punjabi

"bhalwaan"
a strong built
man, wrestler

"akhand path
Sahib"
a religious program

Ssa Bhalwaan Ji,I am trying,this weekend there is Akhand Path Sahib in stockton Neki and Bhinda having,everyone gonna be there I will try again,sorry for delayed response

"Neki"
also known as
Hanek Atwal

"Bhinda"
also known as
Gulwinder Gakhal

I am working on it Bhalwaan Ji

Mar 11, 2019, 3:38 PM



Subject

Text Message

‹

**John Gill U S A** ›

gonna be there I will try again, sorry for delayed response

I am working on it Bhalwaan Ji

Mar 11, 2019, 3:38 PM

Thanks Bhaji please keep it try thanks again.

→ "bhaji" a respectful way to say brother

Mar 19, 2019, 1:48 PM

"hanje" a respectful way to say yes

"pajee" a respectful way to say brother

Hanje pajee  Kete gal ke khea je sare a ne

→ "Kete gal" did you talk

→ "ke" what

→ "sare a ne" everyone

"Khea je" was said

↳ complete translation: "yes brother, did you talk, what did everyone say/discuss."

Delivered

Subject

Text Message

Case 2:22-cv-01411-DMC  Document 1  Filed 08/08/22  Page 150 of 165

PERJURED TESTIMONY, UNDERMINING THE
1.                     FUNDAMENTAL FAIR-NESS OF PETITIONERS
                        EVIDENTIARY HEARING:

2.

3. Petitioner contends that not only did Jonh Gill, provide false

4. testimony at Petitioners criminal trial, with no reprecusions,

5. Mr.Gill gave prejured testimony at Petitioners evidentiary

6. hearing, which only helped to undermine the fundamental fair-

7. ness of Petitioners evidentiary hearing. Petitioner contends

8. that, where false evidence or testimony, that is substantially

9. material or probative, on the issue of guilt or punishment, is

10. introduced against a person at a hearing or trial,(Penal Code,

11. section 1473, Subd.(b)(1). A defendant needs only prove facts

12. that establish a basis for relief on heabes corpus.(In re Rogers

13. Cal.5th 817,833(2019). Petitioner further pointsout that 1473

14. makes it clear, that once a defendant shows (1) that false

15. evidence was admitted at a hearing or trial and, (2) the

16. evidence was material, he or she is entitled to relief.Id at

17. 848. Petitioner contends that, this case boils down to "Credibility"

18. between John Gill and Petitioners four defense witnesses

19. testimony's. If a defendant establishes by a preponerance of

20. evidence, that a false statement was introduced into a hearing or

21. trial, by a witness knowingly and intentionally, or with reckless

22. disregard for the truth, as just what Mr.Gill did during his

23. testimony during Petitioners evidentiary hearing, concerning a

24. vital text message, between Mr.Gill and one of the defense witnesses,

25. which Mr.Gill did not plan on this text message coming to light.

26. And the false statement was necessary to help eastablish one's

27. "Crediblity", then the "Whole Tree of Fruit is Poisioned".

28. (United States Vs. Dring, 930 F.2d 687).Petitioner contends that

1. ones "Credibility" can not be determined by ones race,religious
2. beliefs, sex or, what their migrant statue may or may not be.
3. Furthermore, ones "Credibility" can not be determined by how
4. long one waits, to finally comefourth with information concerning
5. anyones criminal case, nor can ones "Credibility" be determined by
6. ones ability, to know how or how not, the criminal justice system
7. works in the United Statets. "Aspecially" if your an imagrant not
8. born in the United States. The Honorable Supreme Court has held
9. that a State Courts resolution of a "Credibilty Contest" between
10. Law Enforcement Officer, was unreasonable determination of fact,
11. where the evidence in the record, "As here in Petitioners case",
12. is consistent with the Defendants allegations.(Earp Vs. Ornoski,
13. 431 F.3rd 1158,1169-70&n.8(9th Cir.2005). Petitoner contends that
14. the State Courts performance analysis was unreasonable and it
15. clearly prejudice Petitioner. Petitioner further contends that,
16. it's not Pinholster that compels an evidentiary hearing but,
17. rather the Facts, Evidence and Testimony, that is relevant to
18. the "Merits" of Petitioners claims.(United States Vs. Ridgway,
19. 300 F3rd 1153). Petitioner contends that the five defense
20. witness, whom three of the defense witnesses, "Did Not Even Know
21. Petitioner nor his family members", clearly can not be said they
22. had anything to gain for their testimony's and "Must" be given the
23. benifit of the doubt and, simply can not be discredited no matter
24. how loud the prosecution yells. Petitioner contends that this case
25. boils down to an "Innocent Man" that was wrongly convicted, of a
26. crime in which he took no part in and, the fact that five different
27. individuals simply wanting to speakout concerning the truth about this
28. matter, their testimonys can not simply just be swep under the carpet.
   how could any witness who is willing to speak up from

1. either side of the fence be faulted for wanting to tell the truth?.

2. Petitioner contends that "All" five of the defense witnesses used

3. at Petitioners hearing, are All law biding Citizens, very liked

4. and respected in their communitys, all wealthy individuals and, all

5. who have never had anykind of run in with law enforcement, not

6. even a simple traffic ticket.("Credibility"). On the otherhand,

7. one "Must" look at Mr.Gills "Credibilty", not just in this case

8. but, also in his community. Mr.Gill not only gave false testimony

9. to the police the night of the shooting, he also at Petitioners

10. criminal trial, fudged his testimony in order to minimize or

11. explain significant differences between his account of events

12. during the investigation and his discriptions at the preliminary

13. hearing throughout the trials. Specifically, Mr.Gill was unable

14. to describe the clothing worn by either supect in his first "Two"

15. interviews with the police and, he also made it clear that he "Did

16.  not see the gun" or certain aspects of the vehical used that night,

17.  given the quickness of the incident taking place. It was not until

18. a video surfaced showing Petitioner the day of the tournament, Mr.

19. Gill "Altered his Testimony" to describe the clothing he "Recalled"

20. seeing in "Detail" and he "Atered his Testimony", to include

21. "Details" with respects to the weapons used that night. None of

22. the (18) witnesses or other victims, the night of the shooting,

23. said it was Petitioner except, Mr.Gill. Than at Petitioners

24. evidentiary hearing, once again Mr.Gill gave inconsistant

25. statements concerning different events taking place surrounding

26. Mr.Gill, including two other people getting shot one deied.(See

27. Transcripts from 2021 hearing). Mr.Gill even got caught at the

28. hearing lying about a 2019 text message conversation with "Kuldip

1. Singh", a defense witness that the Supreme Court based their "OSC"

2. around, concerning Petitioners "Innocence" and what Mr.Gill might

3. beable to do to help Petitioner.(See Transcripts from 2021 hearing).

4. This newly discovered evidence, text message between Mr.Gill and

5. Kuldip Singh, came to light during Petitioners hearing, which

6. Kuldip Singh forgot that he saved this text message on his phone.

7. Petitioner contends that when Mr.Gill was questioned about this

8. text message and the conversation he had with Kuldip Singh, discussing

9. what Mr.Gill might beable to do to help Petitioner and Petitioners

10. case, Mr.Gill denied ever writting the text message or discussing

11. to help Petitioner with Kuldip Singh but, when Mr.Gill was shown

12. on the stand during these proceedings the text message on Kuldip

13. Singh Phone and a Picture of the text, Mr.Gill finally admitted to

14. writting the text message and having that conversation.(See Trans-

15. cript from 2021 hearing). Moreover, this entire case is based on

16. "Credibility" and Mr.Gill just gave perjured testimony in open

17. court with no consequences. Furthermore, Petitioner contends that

18. "Credibility" the aggravating evidence of the other "Three" witnesses

19. who testified against Petitioner, who "Claimed" to have seen

20. and identified Petitioner as a shooter, their trial testimonys

21. were directly contrasted by their "initial" statements to the

22. police the night of the shooting, "All Three Witnesses" were

23. "Impeached". Their repeated inconsistencies through their test-

24. imonys only served to discredit them as reliable witnesses.

25. Penal code.Section 1473(b)(1) makes it clear; that "Once a

26. defendant shows"(1) false evidence was admitted at a hearing or

27. trial, and (2) the evidence was material, he or she is entitled

28. to relief.(Id.at 848).At this critical stage of this hearing,

1. When Petitioners "Innocence" is on the line and the "Credibility"
2. of "Witnesses" is the disputed factor and no were in the record
3. or evidence that "Discredits" Petitioner or Petitioners defense
4. witnesses testimony, they "Must" be given the benefit of doubt,
5. (Williams Vs. Calderon) 48 F.Supp.2nd 979,989(C.D.Cal.1998)(noting
6. in the context of a habeas corpus claim"[t]he Court is not to
7. determine issues of credibility on a motion for summary judgment;
8. instead, the truth of each party's affidavits is assumed"),affd
9. Williams,384 F.3d at 628). On the other hand, Mr.Gill clearly
10. "Poisioned his Credibility" prior to and at Petitioners criminal
11. trial and, once again, at Petitioners 2021 evidentiary hearing,
12. when Mr.Gill, under oath sitting on the witness stand, Knowingly
13. and intentionally, with reckless disregard for the "Truth", was
14. allowed to provide perjured testimony with no consequences, clearly
15. undermining the fundamental fairness of Petitioners evidentiary
16. hearing.(Medina Vs. Barnes) 71 F.3d 363;(1995)U.S.App.LEXIS 33765.
17. Petitioners due process rights were clearly violated at Petitioners
18. hearing and if the facts are proven true from Petitioners evidentiary
19. hearing, Petitioner is entitled to relief.(Phillips,267 F.3d at 973).
20. Therefore, Petitioner Respectfully request the Honorable Justice's
21. in this Honorable Courthouse, to grant Petitioner the appropriate
22. relief for this matter thats once again at hand. Thank You
23.
24.
25.
26.
27.
28.

1. Petitioner contends that his evidentiary hearing counsel was
2. ineffective prior to the start of petitioners 2021, evidentiary
3. hearing, for failing to talk to, interview, or produce at
4. Petitioners hearing, Mr.Amrit Pal Singh, a "Vital and crucial"
5. defense witness, who not only witnessed the alleged shootings, he
6. was the only witness who actually seen the real shooters face, the
7. night the shootings took place, and a "Vital" witness for the
8. defense, who got on the witness stand at Petitioners prelimanary
9. hearing, and testified that the real shooter was not Petitioner.
10. (See court record). Here, it can not be said beyoud a reasonable
11. doubt, had counsel produced this "vital" witness at Petitioners
12. evidentiary hearing, allowing him to testifiy, Petitioner would
13. not be sitting at home right now. Petitioner is clearly entitled
14. to an effective assistant of counsel, under the Sixth Amendment
15. to the United States Constitution and Article I,section 15 of the
16. California Constitution. Petitioner contends that, this ultimate
17. purpose of this right is to protect Petitioner's fundamental right
18. to a trial that is both fair in its conduct and reliable in its
19. results. This right entitles Petitioner, not just some bare
20. assistance but, rather to effetive assistance.(People Vs. Ledesma)
21. 43 Cal.3d 171,215(1987) Petitioner further contends that, the
22. Honorable Justice's in the California Supreme Court, ruled that
23. Petitioner presented a "Prima Facie Case" for relief, on
24. Petitioner I.A.C. claim agaisnt his 2008 trial counsel, who also
25. failed to produce this same witness, at Petitioners 2008,
26. criminal trial.(See court record) Petitioner contends that counsels
27. deficient representation prior to the start of Petitioners
28. hearing, during the investigation/interview period, when counsels

1. private investigator was out interviewing Petitioners defense

2. witnesses for Petitioners hearing,  "Prejudiced" Petitioner,i.e..,

3. there is a reasonable probability, that for counsel failing to

4. interview and produce Mr.Amrit Singh,the results in this case

5. would have been more favorable to Petitioner.(Strickland Vs. Washington)

6. 466 U.S.668,685(1984) Petitioner contends that, when a case as this

7. one boils down to a "Credibility Contest", when a "star witness"

8. as what Mr.Amrit Singh, has always been,from the very begganing,

9. and who not only did the "Police" the night of the shooting, obtain

10. the majority of "All" the information for this case, including

11. a "real" discription of the shooter, and who's "Testimony" or

12. "Credibility" has never change or was found not to be "true",and

13. who has clearly said in open court, that the Petitioner was not

14. the shooter, not to produce this "vital and crucial" witness at

15. Petitioners hearing, is "I.A.C. Prejudice is shown when there is

16. a reasonable probability that, but for counsel's unprofessional

17. errors, the result of Petitioners proceedings would have been

18. different. A reasonable probility is a probility sufficient to

19. undermine confidence in the outcome.(Strickland)466 U.S.at 694.

20. Petitioner contends that, "That probability is something less

21. than more likely that not".Id.at 693. Thus, Petitioner really

22. only needs to show a reasonable probability that absent the

23. errors, the trial Justice, would have entertained a reasonable

24. doubt about Petitioners guilt, resulting in the granting of

25. relief.Id.at 694-95. Petitioner further contends that, in this

26. Honorable Courts determation, the court "must consider the totality

27. of Petitioners trial evidence".Id. at 695. Petiotioner contends

28. that "Prejudice" is presumed where counsel's performance prevents

( 2 )

1. the prosecution's case from being subject to meaningful adver-

2. saril testing of the evidence and charges.(United States Vs.Chronic)(1984)

3. 466 U.S.648,656;(Peolpe Vs. Lanphear)26 Cal.3d at 828-29. Petitioner

4. contends that, in (Harris Vs. Reed)95 F.2d 1214(7th Cir.1990),

5. overruled on other grounds, Petitioner contends that case presented

6. an analogous situation to Petitioners case, where defense counsel

7. was found ineffective for failing to call witnesses who could have

8. raised reasonable dou.bt regarding the identification of defendant

9. Harris, as the shooter in a murder.Id..at 89.Therefore, as to the

10. resulting prejudice from Petitioners evidentiary hearing counsel,

11. for failing to interview or once again, produce Mr.Amrit Singh,

12. at Petitioners 2021, hearing, "Petitioner" has met his burden and

13. Petitioner has shown that the testimony of Mr.Amrit Singh, would

14. have greatly aided Petitioners case.Id.at 879. Finally, Petitioner

15. Respectfully request the Honorable justice's of this Honorable

16. Courthouse, to grant Petitioner the apprpriate releif for the

17. matter thats once again at hand. Thank You

18.

19.

20.

21.

22.

23.

24.

25.

26.

27.

28.

(PETITIONERS PRAYER LETTER TO HONORABLE JUSTICE)

---

IN PETITIONERS OWN WORDS, TO THE HONORABLE JUSTICE OF THE COURT.
My name is Pardeep Singh, and I am a Innocent man convicted and,
sentenced to (199)years with multiple life in State Prison for
a crime I did not do. It is very important to my family and me
that I take a moment to let this court know a little bit about
who I truly am and, not just a "Case Number or a CDC Number".
I was born in Punjab India, in a family who does Agriculture for
living. My father was past away when I was (10)years old kid.
Raised by single home stay mom. I and my brother start working in
our Ranch very young for survive. We work hard and I went to
college and got B.A. degree. Came to U.S. with no money and work
hard establish my own Trucking Company, Married to wife bought a
house, cars and, have (3) kid. I came to U.S. por better future,
which I was a family man that time. Went to watch tournament that
day and did talk to Mr. John Gill, the whom we support from many
years, about few player, but he feels disrespected and he just
put our name as shooter. Later he find out who really did shoot-
ing, and who is behind it. Now he cant change his statement and
want to compromise with us but, co-defendant was not agree and
acting up even in court judge warn him many time to behave
against Mr. John Gill. John Gill feels offended and push his
statement and influence other to follow him to get us convicted.
I want speak but my attorney wont let me. I may not be perfect,
but I did not and can not shoot anybody for any reason. I am not
criminal. My all Sikh Community knows that I did not committ this
crime and, Religious I believe and born in, we believe in work
hard, share and, be a best humanbeing. Its very sad that those
Innocent people were shot whom I known for many years and were
close friend and some like uncle Raghvir Shergill. I live in his
house when I work for him (1995-96) and respect him like father
figure. "I am Praying and Pleading" to the court for justice. I
having (3) different trials help show that better chance locked
up an"Innocent Man", then if it took (1) trial. The real shooter
still roaming free on the street and still threat to others
innocent people. Most importantly, statement from Amritpal Sher-
gill is very critical and he testifyed in front of Honorable
trial judge Richard Mallet that I was not the shooter and, He
give description of suspect which was Sukhwinder Singh (AKA)
Bobby who have the motive. My attorney not check his story or
his alibi. Thank You.....

---

Finally, with the aid of another inmate, Petitioner prays for
this Honorable Courthouse, to take in consideration, all of the
facts and evidence from all (3) of Petitioners trials,including,
Petitioners newly submitted "Affidavits", and come to the same
conclusion, that there is a greater and higher probability that
an "INNOCENT", man has been convicted, in this present matter
thats now before this Honorable Courthouse. Furthermore, Petit-
ioner prays that this Honorable Justice, will at the very least
grant Petitioner, an Evidentry Hearing on Petitioners Actual
Innocent claim, and Appointment of Counsel. To continue to deny
Petitioner postconviction relief would be a miscarriage of
justice. Thank You Honorable Justice.

SINCERELY,___

Pardeep -                (1)

1. Petitioner would like to "Respectfully" close his Petition in a
2. little different way, because Petitioner contends that this is
3. not a normal case. Petitioner contends that, this case is concerning
4. a "Innocent Man" that has been "Wrongly Convicted" and that "Man"
5. has spent the last (16) years in State Prison, for something "Horrible"
6. Petitioner did not do. "Bold As Lions", is what the Honorable
7. California Supreme Court Justice's did, when they chose to "Stand-Up"
8. granting Petitioners "Order To Show Cause", in this case, rather
9. than simply denying it. Petitioner did "Suffer Constitutional Harm",
10. and "Witnesses" can not be "Discredited" because why "They" choose
11. to take "Years At Times" to finally speakout concerning what "They"
12. may or may not know or, what "They" may have seen or not seen. Just
13. as a "Witness" can not be "Discredited" becasue he or she, doesn't
14. know how the "Criminal Justice System" may or may not work. The only
15. thing Petitioner contends is "Positively" known about The United
16. States, "Criminal Law Procedure" and the way it "Works", is it has
17. "Broke" well "Educated and Professional Trained" attorneys. Thus,
18. to "Discredited" a "Witness", that "Was Not Born" in the United
19. States, has "Never" even had a parking ticket, or doesn't know
20. what to do when "Faced" with the same situation, that Petitioners
21. "Witnesses" were faced with, is more than a "Miscaariage of
22. Justice, its completely wrong and, it can not be said beyond a
23. reasonable doubt, is not one of the reasons, that "Witnesses"
24. choose "Not" to ever speakout, concerning someone's "Innocence".
25. "Bold As Lions", the wicked flee when no one pursues but, the
26. "righteous" are "Bold As Lions". Petitioner contends that, We are
27. called to live our lives "Bold and Confident". You do not have to
28. live under a burden of "Fear" when you are "Trully Innocent".

1. You do not have to live with "Anxiety, Fear, Worry or, Uncertaintys

2. because they are beneath you. Petitioner further contends that,

3. When you rise up in "Faith", knowing that "GOD", is always with

4. you and for you, all "Fear and Doubt", have no other choice but to

5. leave your life. "Love, Faith, Hope and, Family is what has helped

6. Petitioners family and him, continuing to stay strong and to help

7. continue the "Fight", over these past ("16") years, to "Prove"

8. that Petitioner "Was Wrongly Convicted" for a crime, that Petitioner

9. took "No Part In". Therefore, Petitioner "Prays" that the "Honorable

10. Justices, of this Honorable Courthouse, will also "Stand-Up"

11. "Bold As LIons" as what the Honorable California Supreme Court,

12. did back in February 2020, Thank You.

13.

14.

15.

16.                                    Sincerely, Pardeep Singh,

17.                                    x Pardeep Singh

18.                                    (PETITIONER IN PRO-PER)

19. DATE:  08-04-2022

20.

21.

22.

23.

24.

25.

26.

27.

28.

AO 241
(Rev. 01/15)

13.    Please answer these additional questions about the petition you are filing:

(a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court

having jurisdiction?    ☒ Yes        ☐   No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not

presenting them:    _____

_____

_____

_____

(b)    Is there any ground in this petition that has not been presented in some state or federal court?  If so, which

ground or grounds have not been presented, and state your reasons for not presenting them:

N / A _____

_____

_____

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction

that you challenge in this petition?    ☒ Yes        ☐   No

If "Yes," state the name and  location of the court, the docket or case number, the type of proceeding, the issues

raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy

of any court opinion or order, if available.    SAME  AS  ABOVE _____

_____

_____

_____

_____

_____

_____

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for

the judgment you are challenging?        ☐   Yes        ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues

raised.    _____

_____

_____

_____

_____

_____

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:   SAN JOAQUIN COUNTY

(b) At arraignment and plea:   SAME AS ABOVE

(c) At trial:   (PLEASE SEE ATTACHED WRIT)

(d) At sentencing:   SAME AS ABOVE

(e) On appeal:   N/A

(f) In any post-conviction proceeding:   In Pro-Per

(g) On appeal from any ruling against you in a post-conviction proceeding:   SAME AS ABOVE

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?   ☐ Yes   ☒ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?   ☐ Yes   ☒ No

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

Petitioner was granted an evidentiary hearing back in Jan 2020, hearing was not until Oct 2021, refiled in third appellate court Jan 2022, than in califonia supreme court for petition for review in March 2022, denied May 11,2022

_____

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in

part that:

(1)   A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in
       custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

       (A)   the date on which the judgment became final by the conclusion of direct review or the expiration
               of the time for seeking such review;

       (B)   the date on which the impediment to filing an application created by State action in violation of
               the Constitution or laws of the United States is removed, if the applicant was prevented from
               filing by such state action;

       (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court,
               if the right has been newly recognized by the Supreme Court and made retroactively applicable to
               cases on collateral review; or

       (D)   the date on which the factual predicate of the claim or claims presented could have been
               discovered through the exercise of due diligence.

AO 241
(Rev 01/15)                                                                                                          Page 16

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:     ANY RELIEF THAT THIS

HONORABLE COURTHOUSE DEEMS APPROPRIATE FOR THIS MATTER

or any other relief to which petitioner may be entitled.

_____N/a_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on    08-04-2022   (month, date, year).

Executed (signed) on     08-04-2022    (date).

_____Purdeep Singh_____

Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

_____

_____

_____

_____

**PROOF OF SERVICE**
**BY PERSON IN STATE CUSTODY**

(C.C.P §§ 1013 (A), 2015.5; F.R.C.P.5; 28 U.S.C. § 1746)

I, ___PARDEEP   SINGH___, declare:

I am over 18 years of age, and am a party to this action. I am a resident of the Correctional Training Facility Prison in the County of Monterey, State of California. My prison Address is:

   CDCR #: ___G-21899___

   **Correctional Training Facility**
   **P.O. Box 705,        Cell # : ___R.B. 227___**
   **Soledad, Ca. 93960-0705**

On ___08- 04- 2022___, I served the Attached:

___writ of Habeas Corpus with exhibits___

___Request for counsel motion___

_____

_____

On the parties herein by placing true, and correct copies thereof, enclosed in a sealed envelope, with postage thereon fully paid, **verified by, and given to prison staff \*,** for deposit in the United States Mail provided at the above-named Correctional Institution in which I am presently confined.

The envelope was addressed as follows:

___Eastern  District  Court  of  Appeals___

___Attorney  Generals  office  of  California___

_____

_____

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true, and correct.

Executed on: ___08- 04- 2022___          *Pardeep Singh*
                                                            (Declarant's Signature)

* Please, note that according to the prison mail box rule, the document(s) mentioned herein is considered filed the day it is handed over to prison authorities for mailing to the court. See **Huizar v. Carey** (9th Cir. 2001) 273 F. 3d 1220, 1221; **Moore v. Twomey** (2004) 120 Cal. App. 4th 910, 913-918.