**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

PARDEEP SINGH,

        Petitioner,

    v.

WARDEN,

        Respondent.

No.  2:22-CV-1411-KJM-DMC-P

AMENDED FINDINGS AND
RECOMMENDATIONS

Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Pending before the Court is Respondent's motion to dismiss, ECF No. 15.  Respondent argues the petition must be dismissed with prejudice as an improper second or successive petition and as untimely.  Respondent's motion is supported by the state court record, which has been lodged at ECF No. 16.  Petitioner has filed an opposition, ECF No. 19, and Respondent has filed a reply, ECF No. 20.

On June 15, 2023, the undersigned issued findings and recommendations that Respondent's motion to dismiss be granted.  See ECF No. 22.  On August 28, 2023, the District Judge issued an order referring the matter back to the undersigned for further consideration.  See ECF No. 23.  The Court now issues these amended findings and recommendations consistent with the District Judge's order.

/ / /

1

# I. BACKGROUND[1]

A. **Facts of the Case**

The following facts were recited by the state court on direct appeal:

This case involves a nighttime drive-by shooting of several people in a parking lot of a Stockton restaurant on May 14, 2006. The story begins earlier that day, at a kabaddi tournament in Stockton. Kabaddi is a rugby-like game, popular with Punjabi and Sikh cultures.

Defendants Pardeep and Kulwant [FN 1] attended the tournament, and were seen throughout the day disputing the tournament committee's decision to bar a particular player. Defendant Pardeep confronted Satwinder G. (also known as "John"), and defendant Kulwant threatened a committee member, Manjit U., over this issue. Satwinder is a longtime kabaddi supporter and an apparently prominent, wealthy member of the Sikh/Punjabi community.

> [FN 1] Because many of the people involved in this case share the same last names, for clarity we will use first names.

Later in the day, a physical fight broke out at the tournament. On one side of the scuffle were defendants and two of their friends, Sarwan S., who had a knife, and "Happy," who brandished a gun. After the fight, defendant Pardeep told committee member Manjit that "[w]e're not going to let [Satwinder] take the cup [first-place trophy] today no matter what happens." But that is what happened, as the team sponsored by Satwinder won the tournament. Many of the eyewitnesses to this fight were also eyewitnesses and/or victims in the later shooting, and at least two of these eyewitnesses (Gurdev A. and Belhar R.) actually fought against defendants' faction.

At the tournament, it was announced there would be a post-tournament dinner at the Sansar Restaurant in Stockton. And after that dinner ended around 11:15 p.m, Satwinder, along with eight other people who had been at the tournament, walked out to the restaurant's parking lot. At this point, a slow-moving silver BMW drove by and its front and rear passengers discharged a barrage of gunfire at Satwinder's group.

Four of the people in Satwinder's group – Satwinder himself, Gurdeep S., Raghbir S., and Belhar R. – all of whom knew both defendants, positively identified defendants as the shooters. Two others Gurdev A. and Gulwinder S. – identified defendant Kulwant as a shooter.

The defense highlighted inconsistencies between these testimonial identifications and some statements provided to law enforcement. For example, Satwinder initially stated to law enforcement that he did not see what the shooters were wearing, but several hours later described defendant Pardeep's attire; Gurdeep, while being treated at the hospital, did not identify defendants and said he was unable to get a good look at

---

[1]    The Court's summary of state court proceedings is derived from the state court record lodged at ECF No. 16.

the shooters; Raghbir, while also at the hospital being treated, was unable to describe the vehicle involved though he did so at trial; Belhar told officers at one point he did not know the people who were shooting (language comprehension may have been an issue here); and Gurdev gave inconsistent statements as to defendant Pardeep being a shooter. Furthermore, Satwinder was close with all of these eyewitnesses. One other individual Santokh J., who owned the Sansar Restaurant and who was not close with these eyewitnesses, also witnessed the shooting. He was standing near Satwinder, and was shot three times. Although Santokh could not identify the shooters, he heard Satwinder mention the names "Kulwant and Pardeep" right after the bullets flew. Moreover, Santokh had told a police officer that one of the shooters was an Indian male wearing an orange or yellow t-shirt (which matched the description for both defendants).

A "tip" led officers to the silver BMW, and the car was towed to a Department of Justice (DOJ) crime lab on May 16. The car was apparently owned by a friend of defendants and sold about a month after the shooting. [FN 2] A DOJ firearms expert and a DOJ fingerprint expert did not obtain from the car any inculpatory evidence within their respective realms, but both experts noted that the car had been recently cleaned thoroughly.

> [FN 2] The friend was Jasvir G., who was also
> charged with the crimes. These charges, however,
> were dismissed after the preliminary hearing.

Cell phone records for defendants were introduced. In addition to listing calls made and received, cell phone records can show the approximate location of a cell phone, which links to the nearest cell tower during calls. Defendant Kulwant's records displayed a 7:23 p.m. call on May 14 linked to a tower near the kabaddi tournament, and calls at 10:51 and 10:52 p.m. that night linked to another tower within a half mile of the Sansar Restaurant (these two tower sites are on opposite sides of Stockton – Charter Way and near Hammer Lane, respectively). Defendant Pardeep's records show a flurry of seven calls between his cell phone and one particular phone number between 10:57 p.m. and 11:26 p.m. on May 14. Defendant Pardeep's cell phone received calls from this number again at 11:27, 11:33 and 11:44 p.m. The Sansar Restaurant shooting was first reported in a 911 call at 11:32 p.m.

There was also evidence that defendant Pardeep had changed his appearance after the incident and before his trial – he shaved his long beard and discarded his turban.

The defense theory was that Satwinder G. is a powerful figure in the Sikh community who wanted defendants blamed for the shooting after they had insulted him at the kabaddi tournament, and that the other witnesses felt obliged to support Satwinder because they knew him well. In support of this defense, defendants, as noted, highlighted some inconsistencies between eyewitness testimony and statements to law enforcement. Additionally, defendant Pardeep offered Sarwan S. as an alibi witness (Sarwan effectively testified he was with Pardeep for most of the May 14 night, but this defense was undercut by Sarwan's additional testimony that he did do drop Pardeep off at Pardeep's home earlier that night and by Pardeep's phone records indicating that Pardeep's cell phone called

Sarwan's cell phone at 9:02 p.m.). The defense also questioned the lighting conditions at the site of the shooting, and noted that Satwinder had launched his own investigation into the shooting even though he had positively identified defendants as the shooters to the police.

In rebuttal, Manjit U. testified that Sarwan S. came to the Sansar restaurant after the shooting and told him, "I tried to stop them [i.e. Kulwant, Pardeep and Happy], but they wouldn't stop.

People v. Singh, No. C058988, 2010 WL 765453, at *1-2 (Cal. Ct. App. 3d Dist. Mar. 8, 2010).

**B.**   **Procedural History**

   1.   State Court

Following a jury trial, Petitioner was convicted of seven counts of attempted murder, one enhancement for using a firearm, six enhancements for grave bodily injury, and one additional enhancement for discharging a firearm.  Petitioner was sentenced to 199 years plus seven life sentences on March 13, 2008.  Petitioner appealed to the California Court of Appeal, which affirmed the conviction and sentence on March 8, 2010.  Petitioner did not file a petition for review with the California Supreme Court.

Petitioner filed eleven post-conviction actions:

First Petition                 San Joaquin County Superior Court
                               Filed April 9, 2009
                               Denied June 9, 2009

Second Petition                San Joaquin County Superior Court
                               Filed August 4, 2009
                               Denied August 25, 2009

Third Petition                 California Court of Appeal
                               Filed October 22, 2009
                               Denied November 25, 2009

Fourth Petition                California Supreme Court
                               Filed January 6, 2010
                               Denied July 28, 2010

Fifth Petition                 San Joaquin County Superior Court
                               Filed July 3, 2019
                               Denied August 12, 2019

Sixth Petition                 California Court of Appeal
                               Filed September 23, 2019
                               Denied November 15, 2019

///

4

| | | |
|---|---|---|
| 1 | Seventh Petition | California Supreme Court |
| | | Filed November 25, 2019 |
| 2 | | Granted February 11, 2020 (Order to show cause) |
| | | Denied October 8, 2021 |
| 3 | | |
| | Eighth Petition | San Joaquin County Superior Court |
| 4 | | Filed March 6, 2020 |
| | | Denied October 7, 2021 |
| 5 | | |
| | Ninth Petition | California Court of Appeal |
| 6 | | Appeal of September 23, 2019, decision |
| | | Filed November 3, 2021 |
| 7 | | Denied November 12, 2021 (denied as non-appealable) |
| 8 | | |
| | Tenth Petition | California Court of Appeal |
| 9 | | Filed January 18, 2022 |
| | | Denied March 7, 2022 |
| 10 | | |
| | Eleventh Petition | California Supreme Court |
| 11 | | Filed March 10, 2022 |
| | | Denied May 11, 2022 |

2.    Federal Court

Petitioner filed a prior federal habeas petition challenging the same conviction, see Singh v. Lopez, case no. 2:11-CV-0944-TJB (Singh I), which was denied on the merits on April 9, 2012.  See ECF No. 14 in Singh I.  In that petition, Petitioner raised two claims.  See id.  First, Petitioner asserted that his constitutional rights to due process and a fair trial under the Fifth and Fourteenth Amendments were violated when the state court denied his request for a new trial based on newly discovered evidence.  See id. at 1.  Second, Petitioner asserted that his trial counsel was ineffective.  See id. at 1-2.  Petitioner appealed and the Ninth Circuit Court of Appeals denied a certificate of appealability on March 19, 2013.  See ECF No. 23 in Singh I.

Petitioner filed the current federal petition at issue (Singh II) on August 8, 2022.  See ECF No. 1.

## II.  DISCUSSION

In his motion to dismiss, Respondent argues that Petitioner is improperly attempting to bring new claims while challenging the same conviction by way of a second or successive petition filed without prior approval from the Ninth Circuit Court of Appeals.  Respondent also argues that Petitioner's claims are untimely as almost nine years have passed

between petitions and the one-year statute of limitations has run.

A.      **Second or Successive Petition**

Under 28 U.S.C. § 2244(b)(1), "[a] claim presented in a second or successive habeas corpus application . . . that was presented in a prior application shall be dismissed." Under § 2244(b)(2), "[a] claim presented in a second or successive habeas corpus application . . . that was not presented in a prior application shall be dismissed. . . ." unless one of two circumstances exist: Either the newly raised claim must rely on a new rule of constitutional law, or the factual predicate of the new claim could not have been discovered earlier through the exercise of due diligence and the new claim, if proven, establishes actual innocence. See id. This determination is made by the Court of Appeals on an application for leave to file a second of successive petition in the district court. See 28 U.S.C. § 2244(b)(3)(C). Before a second or successive petition can be filed in the district court, however, the petitioner must first obtain leave of the Court of Appeals. See 28 U.S.C. § 2244(b)(3)(A). In the absence of proper authorization from the Court of Appeals, the district court lacks jurisdiction to consider a second or successive petition and must dismiss it. See Cooper v. Calderon, 274 F.3d 1270 (9th Cir. 2001) (per curiam).

A second petition can only be successive of a prior petition which has been decided on the merits. See Woods v. Carey, 525 F.3d 886, 888 (9th Cir. 2008). A decision on the merits occurs if the district court either considers and rejects the claims or determines that the claims will not be considered by a federal court. See Howard v. Lewis, 905 F.2d 1318, 1322-23 (9th Cir. 1990). The mere fact that a petitioner has previously filed a habeas petition relating to the same conviction does not necessarily render a subsequent petition "second or successive." Hill v. Alaska, 297 F.3d 895, 898 (9th Cir. 2002). A habeas petition is second or successive only if it raises claims that were or could have been adjudicated on the merits in an earlier petition. See McNabb v. Yates, 576 F.3d 1028, 1029 (9th Cir. 2009); see also Cooper, 274 F.3d at 1273.

/ / /

/ / /

Petitioner raises six claims in the pending petition: (1) actual innocence; (2) ineffective assistance of counsel; (3) significantly enhanced sentence; (4) denied cross-section of the county; (5) excessive restitution without a hearing; and (6) insufficient evidence.  See ECF No. 1.  These current claims all relate to the March 2008 conviction and sentence, as did Petitioner's prior habeas case, Singh I.  Consistent with the District Judge's August 28, 2023, order, the issue before the Court is whether the claims asserted in Singh II were or could have been asserted and adjudicated on the merits in Singh I.  If so, then the current petition in Sing II is successive of the petition in Singh I and must be dismissed absent prior authorization from the Ninth Circuit Court of Appeals.

As explained below, upon further evaluation consistent with the District Judge's directive in light of Petitioner's assertion of actual innocence, the Court's finding is mixed. Specifically, the Court finds that all of the claims asserted in the current petition (Singh II) – with the exception of Petitioner's actual innocence claim and arguably Petitioner's related ineffective-assistance-of-counsel claims – could have been raised in Singh I.  The facts supporting Petitioner's current claims regarding his sentence, sufficiency of the evidence, and denial of a fair jury would have been known to Petitioner at the time of his trial and sentencing and, thus, could have been raised in the prior petition.  These claims are successive and presented without prior authorization by the Ninth Circuit.  See Cooper, 274 F.3d 1270.

Petitioner asserts in this case, and for the first time in federal court, that he is actually innocent.  He also alleges related claims that his trial and appellate counsel were ineffective in failing to pursue the actual innocence claim.  These claims, as presented here, rely largely on affidavits from 2019 and 2020 which were not available at the time Singh I was decided (these are discussed in more detail below).  These actual innocence and related claims could not have been raised in Singh I to the extent they are based on this previously unavailable evidence.

/ / /

/ / /

/ / /

7

In the current petition, Petitioner claims that he has always asserted his actual innocence.  See ECF No. 1, pg. 6.  Petitioner adds that several witnesses were ready at the time of his trial to testify to his innocence.  See id. at 7.  In his opposition to the pending motion to dismiss, Petitioner adds that his actual innocence claim is "based on false testimony" that was apparently introduced against him. ECF No. 19, pgs. 1-2.  In support of the prior petition in Singh I, Petitioner filed various declarations in April 2011 in support of his claim that the trial court erred by denying a new trial based on new evidence.  See ECF No. 6 in Singh I. According to Petitioner, declarations from Appar Singh, Nimar Kaur, Harmeet Kaur Sandu, and Sarwan Singh constitute "new evidence calling into doubt the identifications made" at the trial. See id.

In state court habeas proceedings initiated after Singh I was decided, the California Court of Appeal issued an order to show cause on February 20, 2020.  See ECF No. 16-20.  The order to show cause directed the respondent to show cause why relief should not be granted based on use of materially false evidence at trial.  See id.  In the context of another post-Singh I state habeas petition, on March 18, 2021, the San Joaquin County Superior Court issued an order setting an evidentiary hearing "on the issue of whether Satwinder Gill's trial testimony constituted substantially material or probative false evidence. . . based on the affidavits provided . . . ." ECF No. 16-20.  Ultimately, both state court habeas petitions were denied on the merits.

The gravamen of Petitioner's actual innocence claim is that Satwinder Gill provided false testimony at the time of Petitioner's state court criminal trial and that Petitioner was convicted based on that false testimony.  As the summary of the facts of the case outlined above reveals, the defense thoroughly explored this theory.  Gill testified.  The jury chose not to accept the defense theory of the case.  In any event, many years after the trial, the Court of Appeal issued an order to show cause on the false testimony issue and the trial court later held an evidentiary hearing specifically related to Satwinder Gill's allegedly false trial testimony.  The testimony at the evidentiary hearing is itself new testimony which could not have been referenced in Singh I to support the current actual innocence claims.  Moreover, this Court accepts the state courts' determinations that the declarations provided by Petitioner post-Singh I

8

support the finding that this claim, as asserted in the state court and here, could not have been raised in the prior federal habeas petition which pre-dated these state court proceedings.  As such, they are not successive and prior authorization is not required.  See Hill, 297 F.3d at 898.

### B.    Statute of Limitations

Federal habeas corpus petitions must be filed within one year from the later of: (1) the date the state court judgment became final; (2) the date on which an impediment to filing created by state action is removed; (3) the date on which a constitutional right is newly-recognized and made retroactive on collateral review; or (4) the date on which the factual predicate of the claim could have been discovered through the exercise of due diligence.  See 28 U.S.C. § 2244(d).  Typically, the statute of limitations will begin to run when the state court judgment becomes final by the conclusion of direct review or expiration of the time to seek direct review.  See 28 U.S.C. § 2244(d)(1).

Where a petition for review by the California Supreme Court is filed and no petition for certiorari is filed in the United States Supreme Court, the one-year limitations period begins running the day after expiration of the 90-day time within which to seek review by the United States Supreme Court.  See Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001).  Where no petition for review by the California Supreme Court is filed, the conviction becomes final 40 days following the Court of Appeal's decision, and the limitations period begins running the following day.  See Smith v. Duncan, 297 F.3d 809 (9th Cir. 2002).  If no appeal is filed in the Court of Appeal, the conviction becomes final 60 days after conclusion of proceedings in the state trial court, and the limitations period begins running the following day.  See Cal. Rule of Court 8.308(a).  If the conviction became final before April 24, 1996 – the effective date of the statute of limitations – the one-year period begins to run the day after the effective date, or April 25, 1996.  See Miles v. Prunty, 187 F.3d 1104, 1105 (9th Cir. 1999).

The limitations period is tolled, however, for the time a properly filed application for post-conviction relief is pending in the state court.  See 28 U.S.C. § 2244(d)(2).  To be "properly filed," the application must be authorized by, and in compliance with, state law.  See Artuz v. Bennett, 531 U.S. 4 (2000); see also Allen v. Siebert, 128 S.Ct. 2 (2007); Pace v.

<u>DiGuglielmo,</u> 544 U.S. 408 (2005) (holding that, regardless of whether there are exceptions to a state's timeliness bar, time limits for filing a state post-conviction petition are filing conditions and the failure to comply with those time limits precludes a finding that the state petition is properly filed).  A state court application for post-conviction relief is "pending" during all the time the petitioner is attempting, through proper use of state court procedures, to present his claims.  <u>See</u> <u>Nino v. Galaza,</u> 183 F.3d 1003, 1006 (9th Cir. 1999).  It is not, however, considered "pending" after the state post-conviction process is concluded.  <u>See</u> <u>Lawrence v. Florida,</u> 549 U.S. 327 (2007) (holding that federal habeas petition not tolled for time during which certiorari petition to the Supreme Court was pending).

There is no tolling for the interval of time between post-conviction applications where the petitioner is not moving to the next higher appellate level of review.  <u>See</u> <u>Nino,</u> 183 F.3d at 1006-07; <u>see also</u> <u>Dils v. Small,</u> 260 F.3d 984, 986 (9th Cir. 2001).  There is also no tolling for the period between different sets of post-conviction applications.  <u>See</u> <u>Biggs v. Duncan,</u> 339 F.3d 1045 (9th Cir. 2003).

After being convicted, Petitioner filed a direct appeal to the California Court of Appeal.  The Court of Appeal affirmed the judgment on March 8, 2010.  <u>See</u> ECF No. 16-26 pgs. 2, 1708.  Following the decision, Petitioner had 40 days to seek direct review in the California Supreme Court.  <u>See</u> Cal.  Rules of Court, Rule 8.500(e)(1).  The 40-day period ended on April 17, 2010, and Petitioner did not seek direct review.  Thus, the one-year period commenced on April 18, 2010, and ended, absent statutory tolling, on April 18, 2011.

Petitioner was required to file all petitions by April 18, 2011, to be within the one-year time limitation period.  Petitioner filed four habeas corpus petitions before the commencement of the limitation period.  The fourth habeas petition was filed on January 6, 2010, and was pending until July 28, 2010, after the commencement of the one-year time limitation period on April 17, 2010.  The time from April 17, 2010, to July 28, 2010, did not count towards the one-year time limitation because the petition was pending.  The one-year time limitation began on July 29, 2010, and ended one year later on July 29, 2011.

/ / /

1  / / /

2          Petitioner made no additional filings until July 3, 2019, almost eight years after

3  the time limitation period had ended.  Petitioner filed the current petition on August 8, 2022,

4  over ten years after the time limitation ended.  Therefore, the current petition is untimely.[2]

5          Consistent with the District Judge's August 28, 2023, order, the undersigned

6  considers whether Petitioner has overcome untimeliness by way of his claim of actual innocence.

7  See ECF No. 23, pg. 2 (citing Vosgien v. Persson, 742 F.3d 1131, 1134 (9th Cir. 2014) ("A

8  federal habeas petitioner can overcome a procedural default, including a failure to comply with

9  the statute of limitations, by demonstrating actual innocence of the crime underlying his

10  conviction.") and McQuiggen v Perkins, 569 U.S. 383, 386 (2013) (requiring a "convincing

11  showing of actual innocence.")).

12          In Vosgien v. Persson, the Ninth Circuit concluded that untimeliness can be

13  overcome by demonstrating actual innocence consistent with the standard outlined in Schlup v.

14  Delo, 513 U.S. 298 (1995).  See 742 F.3d at 1134.  "Actual innocence" is not itself a claim, but

15  instead is a gateway through which Petitioner must pass in order to have an otherwise barred

16  claim considered.  See id. (citing Schlup, 513 U.S. at 315).  One way to carry this burden is for

17  the petitioner to present evidence of innocence "so strong that a court cannot have confidence in

18  the outcome of the trial. . . ."  Id.  Another way is to show that, in light of subsequent case law,

19  the petitioner cannot, as a legal matter, have committed the crime.  See id.  The Ninth Circuit in

20  Vosgien determined that the petitioner could not have legally committed the crime of compelling

21  prostitution as that crime was defined under Oregon law.  See id. at 1135.

22          In McQuiggen v. Perkins, the Supreme Court further elaborated on the Shlup

23  threshold based on new evidence.  See 569 U.S. at 387-88.  Quoting Schlup, the Court stated:

24  "[A] petitioner does not meet the threshold requirement unless he persuades the district court

25  that, in light of the new evidence, no juror, acting reasonably, would have voted to find him

26  guilty beyond a reasonable doubt."  Id. (quoting 513 U.S. at 329).  The Schlup standard is

---

27        [2]    This serves as a sufficient reason to dismiss the petition independent of the Court's
findings above regarding whether the claims presented in this case should be dismissed as second

28  or successive.

demanding and seldom met.  <u>See</u> <u>id.</u>

   In the current petition, Petitioner once again refers to various affidavits and attaches them.  <u>See</u> <u>generally</u> ECF No. 1.  According to these affidavits, the witnesses state that Petitioner is innocent.  <u>See</u> <u>id.</u> at 8.  Attached to the petition at Exhibit C are affidavits from the following individuals:

   Balvinder Singh Johal (notarized on January 21, 2022).

   Kuldip Singh (notarized on May 2, 2019).

   Mandeep Kaur Bains (notarized on May 2, 2019).

   Ramandeep Kaur (notarized on May 7, 2019).

   Swaran Singh Khaira (notarized on May 7, 2019).

   Narinder Kaur (notarized on May 7, 2019).

   Amarjit Singh (notarized on May 16, 2019).

   Manjit Kaur Hothi (notarized on May 6, 2019).

   Kiranjit Kaur Hothi (notarized on May 6, 2019).

   Bhupinder Singh (notarized on May 8, 2019).

   Mandip Kaur (notarized on May 8, 2019).

   Amrit Kaur Sanghera (notarized on May 7, 2019).

   Sukhjit Kaur (notarized on May 10, 2019).

   Jaljit Singh (notarized on May 9, 2019).

   Parminder Kaur (notarized on May 15, 2019).

   Rajinderpal Singh (notarized on May 15, 2019).

   Satwinder Kaur (notarized on May 15, 2019).

   Jot Jupinder Singh (notarized on May 18, 2019).

   Taljit Singh (notarized on May 22, 2019).

   Jasdeep Hothi (notarized on June 3, 2019).

   Karanvir Hothi (undated).

   Harvir Kaur Hothi (undated).

   Narinder Singh (notarized on May 5, 2019).

1    Gurbinder Mangat (notarized on January 11, 2020).

2    Davinder Singh (notarized but undated).

3    See ECF No. 1, pgs. 20-61.

4    To a person, these declarations indicate that they are in disbelief that Petitioner

5    was convicted.  Most are character references.  Some relate hearsay suggesting that Gill lied on

6    the stand at Petitioner's trial.  None relates first-hand knowledge of the facts.  As explained,

7    Petitioner's burden at overcoming the Schlup threshold is high, and relief is rare.  Here,

8    Petitioner has failed to meet this burden by presenting a compelling case which convinces the

9    undersigned that Petitioner's trial was unfair.  Petitioner had ample opportunity at trial to present

10   his theory that Gill was lying and that he was not responsible.  In fact, his trial counsel explored

11   such a theory, which the jury rejected.  Though the state court granted an evidentiary hearing,

12   relief was denied and Petitioner has not presented here any evidence which is non-cumulative of

13   what the state courts have already considered.

14   The Court finds that Petitioner has not overcome the Schlup threshold to excuse

15   the untimeliness of the current petition, which should be dismissed.

16

17   **III.  CONCLUSION**

18   Based on the foregoing, the undersigned recommends that Respondent's motion to

19   dismiss, ECF No. 15, be granted.

20   These amended findings and recommendations are submitted to the United States

21   District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14

22   days after being served with these amended findings and recommendations, any party may file

23   written objections with the court.  Responses to objections shall be filed within 14 days after

24   service of objections.  Failure to file objections within the specified time may waive the right to

25   appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

26   Dated:  September 5, 2023

27   _____
     DENNIS M. COTA

28   UNITED STATES MAGISTRATE JUDGE

13